IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| MANN CONSTRUCTION, INC.<br>PO Box 609<br>Harrison, MI 48625-0609<br><br>and<br><br>BROOK WOOD and KIMBERLY WOOD<br>1380 Byfield Dr.<br>PO Box 657<br>Harrison, MI 48625<br><br>and<br><br>LEE COUGHLIN and DEBBIE<br>COUGHLIN<br>400 E. M-61<br>Harrison, MI 48625<br><br>       Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA<br>c/o Matthew Schneider, U.S. Attorney<br>101 First St., Suite 200<br>Bay City, MI 48708<br><br>and<br><br>c/o William Barr, Attorney General<br>Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington D.C. 205530<br><br>and | CASE NO.:<br><br>JUDGE:<br><br><br><br><br><br><br><br>**<u>COMPLAINT</u>**<br><br>**<u>(Jury Demand Endorsed Hereon)</u>** |

c/o Charles P. Rettig, Commissioner )
of Internal Revenue Service )
Internal Revenue Service )
1111 Constitution Ave., N.W. )
Washington D.C. 20224 )
)
Defendants.

Now come Plaintiffs, Mann Construction, Inc., Brook and Kimberly Wood, Lee and Debbie Coughlin (collectively hereinafter the "Plaintiffs"), and for their Complaint, hereby state as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Mann Construction, Inc. ("Mann") is a duly authorized corporation in Michigan, with its principal address as stated in the caption of this Complaint.

2.      Brook Wood ("Brook") and Kimberly Wood ("Kimberly") are married individuals living at the address stated in the caption of this Complaint.

3.      Lee Coughlin ("Lee") and Debbie Coughlin ("Debbie") are married individuals living at the address stated in the caption of this Complaint.

4.      The Defendant is the United States of America.

5.      The Internal Revenue Service ("IRS") is a bureau of the Treasury Department, an administrative agency of the United States of America.

6.      On or about November 18, 2019, the IRS sent to Mann a Notice of Penalty Charge imposing a penalty under Internal Revenue Code ("IRC") Section 6707A in Tax Year 2013 in the amount of $10,000.00.  The IRS sent similar Notices for each of the years 2014-2017 imposing penalties in each subsequent year in the amount of $10,000.00. Mann paid the penalty for Tax Year 2013 on or about November 26, 2019.

7.     On or about November 18, 2019, 2019, the IRS sent to Brook a Notice of Penalty Charge imposing a penalty under Section 6707A in Tax Year 2013 in the amount of $8,642.25. The IRS sent similar Notices imposing penalties of $10,624.50 in 2014, $9,528.75 in 2015, $9,243.00 in 2016 and $23,787.00 in 2017. Brook paid the penalty for Tax Year 2013 on or about November 26, 2019.

8.     On or about November 18, 2019, the IRS sent to Lee a Notice of Penalty Charge imposing a penalty under Section 6707A in Tax Year 2013 in the amount of $7,794.00.  The IRS sent similar Notices imposing penalties of $10,946.25 in 2014, $9,187.50 in 2015 and $9,187.50 in 2016.  Lee paid the penalty for Tax Year 2013 on or about November 26, 2019.

9.     On or about November 26, 2019, each of Mann, Brook and Lee filed Form 843 requesting a refund of the IRC 6707A penalty for Tax Year 2013.  As of the date of filing this Complaint, six months have elapsed since requesting a refund.

10.     Plaintiffs assert: (i) that Notice 2007-83 (the "Notice"), the alleged authority giving rise to the imposition of these penalties, goes beyond the scope of authority granted to the IRS to identify potentially abusive transactions requiring disclosure in accordance with § 6011 of the IRC; (ii) the Notice fails to specifically identify the transactions subject to the Notice through use of vague words, such as "purported," and unclear elements, the government's current interpretation of which was not known until after the IRS proposed the § 6707A penalty; (iii) even if the Notice is lawful, the transaction engaged in by Mann, Brook and Lee is not the same as or substantially similar to transactions identified in the Notice such that the § 6707A penalty was unlawfully imposed; and (iv) because the transaction engaged in by Mann, Brook and Lee was fully and adequately disclosed on a Form 8275 attached to the timely filed Form 1120S in Tax Year 2013, the imposition of the § 6707A for 2013 is barred by the applicable statute of limitations.

11.     This is an action to set aside final agency action, namely Notice 2007-83, in accordance with the Administrative Procedures Act, and to obtain a refund pursuant IRC § 7422.

12.     The jurisdiction of this Court is based upon the provisions of 28 U.S.C. § 1346(a)(1) and 5 U.S.C. § 702.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(a)(1).

## BACKGROUND AND FACTS

14.     This is a suit to enjoin the enforcement of the reporting requirement promulgated by the Notice and to set aside the Notice that is the purported authority to impose the 6707A penalty on the Plaintiffs.

15.     The bases for the lawsuit are threefold with respect to the Notice being unlawful. *First*, the IRS unlawfully issued the Notice, which qualifies as a "legislative-type rule," without first complying with the mandatory notice-and-comment provisions of the Administrative Procedure Act ("APA", 5 U.S.C. § 553). *Second*, the Notice is arbitrary and capricious and *ultra vires* in nature, lacking underlying authority and the reasoned-analysis footing required by the APA (5 U.S.C. § 706(2)(A)). *Third*, the Notice cannot "take effect" based upon the failure of the IRS to comply with the APA's notice-and-comment requirements.  Plaintiffs challenge the validity of the Notice so that a reasoned decision can be made about whether to engage in a potential future transaction that could result in the imposition of penalties and possibly taxation under the Notice. Absent a lawfully issued notice, the Notice cannot serve as the basis for imposing a § 6707A penalty on these Plaintiffs

16.     Additionally, the transaction engaged in by Mann, Brook and Lee (the "Taxpayers") is not the same as or substantially similar to those transactions identified in the Notice, as required by T. Reg. §1.6011-4(b)(2) for such penalty to be imposed.

17.     Finally, if the Notice is found to be lawful and the transaction engaged in by the Taxpayers is the same as or substantially similar to those described in the Notice, the imposition of the penalty for Tax Year 2013 is in any event barred by the applicable statute of limitations.

18.     With respect to the Notice, the Court should determine the following issues:

      a.   Whether the IRS exceeded its authority when issuing the Notice as such Notice is unconstitutionally vague such that the true meaning of certain elements therein, and the "purported" welfare benefit funds to which it applies, as currently interpreted by the government, was only known after the assessment of penalties under IRC § 6707A?

      b.   Whether the IRS exceeded its authority when issuing the Notice by re-defining the term "qualified cost" in a way that is inconsistent with express provisions of the IRC § 419, T. Reg. 1.409A-1(5), and applicable case law?

      c.   Whether the transaction engaged in by the Plaintiffs is the same as or substantially similar, as defined in T. Reg. §1.6011-4(b)(2), to those transactions identified in the Notice?

      d.   Whether the disclosure of the transaction on a Form 8275 by the Plaintiffs on Mann's Form 1120S for Tax Year 2013 is sufficient to commence the running of the statute of limitations such that an assessment of the 6707A penalty in 2019 is untimely?

**A.  Notice 2007-83**

19.     On or about November 5, 2007, the IRS issued the Notice entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare

Benefits." In pertinent part, the Notice sets forth four (4) essential elements (the "Elements") as follows:

> Any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as "listed transactions" for purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112, effective October 17, 2007, the date this notice is released to the public.
>
> (1) The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.
>
> (2) For determining the portion of its contributions to the trust or other fund that are currently deductible the employer does not rely on the exception in § 419A(f)(5)(A) (regarding collectively bargained plans).
>
> (3) The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated either:
>
>> (a) within the policy (for example, a cash value life insurance policy); or
>>
>> (b) outside the policy (for example, in a side fund or through an agreement outside the policy allowing the policy to be converted to or exchanged for a policy which will, at some point in time, have accumulated value based on the purported premiums paid on the original policy).
>
> (4) The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts:
>
>> (a) With respect to any uninsured benefits provided under the plan,
>>
>>> (i) an amount equal to claims that were both incurred and paid during the taxable year; plus
>>>
>>> (ii) the limited reserves allowable under § 419A(c)(1) or (c)(3), as applicable; plus
>>>
>>> (iii) amounts paid during the taxable year to satisfy claims incurred in a prior taxable year (but only to the extent that no deduction was taken for such amounts in a prior year); plus
>>>
>>> (iv) amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to uninsured benefits and that

are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(b) With respect to any insured benefits provided under the plan,

(i) insurance premiums paid during the taxable year that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(ii) insurance premiums paid in prior taxable years that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(iii) amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to insured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(c) For taxable years ending prior to November 5, 2007, with respect to life insurance benefits provided through policies described in (3)(a) and (b) above, the greater of the following amounts:

(i) in the case of an employer with a taxable year that is the calendar year, the aggregate amounts reported by the employer as the cost of insurance with respect to such policies on the employees' Forms W-2 (or Forms 1099) for that year, plus an amount equal to the amounts that would have been reportable on the employees' Forms W-2 for that year, but for the exclusion under section 79 (relating to the cost of up to $50,000 of coverage); or, in the case of an employer with a taxable year other than the calendar year, the portions of the aggregate amounts reported by the employer on the Forms W-2 (or Forms 1099) as described in (i), above, (or that would have been reported absent the exclusion under § 79) that are properly allocable to the employer's taxable year; and

(ii) with respect to each employee insured under a cash value life insurance policy, the aggregate cost of insurance charged under the policy or policies with respect to the amount of current life insurance coverage provided to the employee under the plan (but limited to the product of the current life insurance coverage under the plan multiplied by the current year's mortality rate provided in the higher of the 1980 or 2001 CSO Table).

20.     In addition to the alleged elements of the transaction, the Notice further describes intended tax consequences of the transactions engaged in by taxpayers that are targeted by the Notice.

21.     In the Notice, the IRS further proclaims: "This Notice informs taxpayers and their representatives that the tax benefits claimed for these arrangements are **not** allowable for federal tax purposes." (Emphasis added).

22.     The IRS issued the Notice pursuant to the authority granted to the Treasury Secretary, in IRC § 6707(c)(2), to specifically identify "Listed Transactions."

23.     After the Secretary specifically identifies a transaction as a Listed Transaction, the IRC provides that all parties participating in a transaction that is the same as or substantially similar to the transactions described in the Notice are required to report or disclose their participation in such transaction.  The Secretary has issued Regulations stating that such disclosure is to be made by filing a Form 8886.

24.     The failure to file the Form 8886 results in penalties under § 6707A.  For individuals, this penalty is 75% of the decrease in tax shown on the return as a result of engaging in the transaction. For S corporations, though not specifically applicable based on the language of the statute, the IRS imposes a $10,000 penalty.

25.     If the § 6707A penalty is imposed, the taxpayer must pay the penalty prior to asserting a challenge in Federal Court on the basis that the transaction engaged in is not "the same as or substantially similar" to the transactions which are supposed to be specifically identified in the Notice.

26.     A transaction is "substantially similar," as set forth in T. Reg. 1.6011-(4), if: (a) it is expected to obtain the same or similar types of tax consequences; and (b) is either factually similar or based on the same or similar type of tax strategy.

27.     When issuing notices under IRC § 6707A, the IRS is obligated to *specifically identify* the transactions described in the Notice so that "a person of ordinary intelligence" can determine which transactions are substantially similar to the listed transaction identified in the Notice.

28.     The Notice is vague and fails to specifically identify transactions subject to the Notice. As a result, taxpayers may unnecessarily file a Form 8886, disclosing participation in an alleged abusive tax scheme, when the particular transaction is not "the same as or substantially similar" to the transactions described in the Notice, or may suffer a penalty when it is not clear that the transaction is specifically identified in the Notice.

29.     In the past, the IRS revised and re-issued Notices for being vague. *See, e.g*., Notice 2015-47 being superseded by Notice 2015-73.

30.     The Notice further goes beyond the authority granted to the IRS to specifically identify transactions requiring disclosure, changing and narrowing terms defined in the IRC (*e.g*., "qualified cost"), and sets forth unclear and inconsistent interpretations of IRC provisions, namely § 419, not just causing confusion, but administratively legislating in the process.

31.     The IRS's efforts to use Notice 2007-83 to establish new law is evident in the assessment of the 6707A penalty on these Plaintiffs wherein the assessment stated in relevant part in Section VI (Taxpayer has participated in a listed transaction) of the Form 886A (Explanation of Items) that: "…taxpayers…have reported passthrough income in an amount reduced by deducted contributions to RPT, subject to the *limitations set forth in Notice 2007-83*." (Emphasis added).

32.     Further, the Notice defines the term "qualified cost" in such a manner that it nullifies T. Reg. 1.409A-1(a)(5) for purposes of single employer welfare benefit funds providing a death benefit.   T. Reg. 1.409A-1(a)(5) specifically excludes from the definition of "deferred compensation" a "portion of a plan" that provides a "bona fide … death benefit."   Through its enforcement of the Notice, the IRS essentially determined that if a cash value life insurance product is used to fund a death benefit, then "no portion" of the plan is a "bona fide death benefit" and the IRS may consider it deferred compensation.

33.     By its terms, the Notice only seeks to prohibit transactions "purporting" to provide welfare benefits.

34.     Based on the cases litigated by the IRS subsequent to the issuance of the Notice, Plaintiffs reasonably understood that the "purported" welfare benefit funds were ones where the business owner or employee could obtain or have the right to obtain money that accumulated inside a cash value life insurance policy.  The policies in these prior cases were variable or universal life policies — which are essentially term insurance policies with an investment component. The current cost of the benefit in those cases was the term premium, yet employers deducted substantially excess amounts that were contributed to the "purported" welfare benefit fund.  The owner or employee, however, did not pay tax on the accumulated cash he/she could obtain or had the right to obtain.

35.     In 2013, while all of these prior plans were being litigated, certain other taxpayers were participating in a Death Benefit Trust/Restricted Property Trust ("DBT/RPT"), identical to the Mann Construction, Inc. Benefits Trust described below. At all times, these taxpayers were advised and, most always did attach a detailed Form 8275 (Disclosure Statement) to their timely filed corporate return (the return on which the deduction was reported).

36.     The Form 8275 stated with specificity and detail, the facts, the structure, the intended tax consequences (current and future), the substantial risk of forfeiture, the independent trustee administering the trusts, the amount of and line on which the deduction appears, the IRC Sections relied on to support the deduction (including the definition of qualified cost set forth in IRC § 419 and as has been interpreted by numerous federal courts), the absence of any contributions to the welfare benefit fund in excess of the qualified cost, the absence of the employee having a current or future right to assets in the Restricted Property Trust ("RPT") thus the absence of funds accumulating in a welfare benefit fund, the taxable event if the substantial risk of forfeiture does not occur, the designation of charitable beneficiaries in the event of forfeiture, and finally, a one and one-half page analysis as to why the Notice does not impact the deductions reported by the Plaintiffs and why such Notice does not apply to the DBT/RPT. Attached as Exhibit A is true and accurate copy of the Mann Form 8275 for Tax Year 2013.

37.     One unrelated but similarly situated taxpayer making this Form 8275 disclosure in 2013 was audited by the IRS.  The IRS concluded the audit with no changes to the deductions reported on the Form 8275.  Moreover, the IRS did not determine that the subject transaction must be reported on the Form 8886.

38.     While the previously audited taxpayer, referenced above, did vest, and paid tax on the assets following the expiration of the substantial risk of forfeiture, that taxpayer is now being investigated as to whether the Form 8886 should have been filed in tax years 2014-2017.  To reach this conclusion, either or both of the following applies: (1) the Notice is so vague and unclear that an agent auditing a plan with full disclosure on a Form 8725 (which Form 8275 talked at length about the Notice) was unaware the Notice applied to the subject plan; or, (2) the IRS is merely changing its interpretation of the meaning of vague terms used in the Notice to enforce against

these Plaintiffs and other similarly situated taxpayers who have implemented identical DBT/RPT benefit plans.

39.     The IRS inconsistently and frequently changes its interpretation of plans subject to the Notice.  In upholding the § 6707A penalty assessed on these Plaintiffs, the Technical Advisor (which assisted the Appeals Officer) stated the reasons the Notice applies to the Plaintiffs' DBT/RPT are "proprietary," and he refused to discuss the matter any further.

40.     Based on the conclusions reached by the Appeals Officer and Technical Advisor, these Plaintiffs were subjected to substantial penalties in 2013-2017 for "proprietary" reasons.  The IRC does not authorize the IRS to penalize Taxpayers for "proprietary" reasons.

41.     The definition of transactions that are the same as or substantially similar to transactions identified in the Notice does not include any transaction that the IRS determines – for "proprietary" reasons – should be subject to the Notice.

42.     Notwithstanding the determination on appeal, at the exam level the IRS Agent that originally proposed the § 6707A penalty stated in support of the IRS's determination to impose the penalty that "the effect of the parenthetical phrase is that **premiums paid to policies that accumulate cash value within or outside the policy *are not treated as insurance premiums paid for purposes of measuring the amount of the deduction* for purposes of element four**."

43.     As alleged in ¶ 31 of this Complaint, in Section VI of the Form 886A (Explanation of Items) the IRS refers to such amount of permissible deductions as those within the "limitation[s] set forth in Notice 2007-83."

44.     Thus, it is clear that the Notice does not specifically describe transactions subject to the Notice's reporting obligations as it was only after the 6707A penalty was assessed in the

transaction described above that the IRS specifically clarified its original intent as to Element Four in the Notice.

45.    The preceding statement goes beyond the provisions of the Notice itself. The Notice references the concurrently issued Rev. Rul. 2007-65, which states "for purposes of deductions allowable to an employer under § 419, a welfare benefit fund's qualified direct cost does not include premium amounts for cash value life insurance policies paid by the fund, *whenever the fund is directly or indirectly a beneficiary under the policy within the meaning of § 264(a).*"

46.    The IRS is now auditing a number of similarly situated taxpayers engaging in identical DBT/RPT transactions, and the agents handling those audits have repeatedly said they do not care about the facts of the plan, and that the IRS simply does not like whole life insurance. This is consistent with the above new interpretation of the Notice stated for the first time in a proposed assessment of the § 6707A penalty.

47.    Clearly, the use of a cash value insurance policy to fund a welfare benefit fund (*i.e.,* the DBT/RPT) is the sole concern of the IRS.  This is despite the fact that the only benefit provided through the DBT is an actual welfare benefit.

48.    Prior to this audit, the IRS has audited over a dozen identical DBT/RPT plans, each containing the detailed Form 8275.  In the years prior to the audits, not once did the IRS determine or indicate that the Form 8886 was required.

49.    In addition to the Notice being vague, as shown by the fact that even IRS employees could not "understand" it in relation to the DBT/RPT; the IRS is attempting to use the Notice as the authority for disallowing deductions which are otherwise allowed by the Code.

50.     In evaluating the Plaintiffs' transaction, the IRS Agent, Appeals Officer, and Technical Advisor ignored the facts of the DBT/RPT Specifically, they ignored:  (i) the two trust

design consisting of a Death Benefit Trust and Restricted Property Trust; (ii) the independent institutional trustee; (iii) the charitable beneficiary of the Restricted Property Trust; and (iv) the substantial risk of forfeiture, within the meaning of IRC Section 83, to which all assets in the Restricted Property Trust are subject (the "Risk of Forfeiture").

51.     The Risk of Forfeiture is significant in that the Notice does not anticipate, or contemplate any transactions for which the assets are subject to a substantial risk of forfeiture and the anticipated tax benefits/detriments resulting therefrom.

52.     The IRS Agent coordinating audits of the DBT/RPT, Pam Ciccotelli, together with Office of Chief Counsel Attorney Brian Derdowski, deposed the independent trustee, John Shaffer of Aligned Partners Trust Company, on or about March 14, 2019 (the "Shaffer Deposition"). Shaffer testified that the Risk of Forfeiture was enforced and regularly occurred.

53.     Knowing the Risk of Forfeiture was detrimental to Derdowski and Ciccotelli's desired imposition of the § 6707A penalty and tax assessments with respect to the DBT/RPT, Derdowski and Ciccotelli, kept the existence of the Shaffer Deposition secret and did not produce it to anyone despite Plaintiffs requesting same.

54.     Instead, Derdowski and Ciccotelli provided the Agent a Form 886A analysis replete with misrepresentations and omissions of the DBT/RPT

55.     Derdowski and Ciccotelli's plan to hide the truth and simply penalize taxpayers carried forward to the Plaintiffs' appeal, at which the Technical Specialist stated the reason the 6707A penalty applied was "proprietary."  But for Derdowski and Ciccotelli withholding evidence and misrepresenting the Benefits Trust, the Plaintiffs would not have been assessed the 6707A penalty.

### B.  Mann Construction, Inc. Benefits Trust

56.     Mann is a general contractor that also provides construction management and design-build services. Mann is taxed as an "S" corporation for federal income tax purposes in accordance with subchapter S of the Internal Revenue Code of 1986, as amended.

57.     In 2013, Mann was owned as follows:

> Brook Wood- 50%
> Lee Coughlin- 50%

58.     Brook and Lee are unrelated.

59.     Both Brook and Lee were actively involved and critical to Mann's business operations.

60.     As is common in businesses owned 50/50 with unrelated owners, continuity of ownership and management is of concern. As is liquidity for unpredictable events, together with employee retention and complications resulting from deadlock are all business conditions. Each of these considerations are potential threats to the business and must be addressed.

**61.**     In the interest of addressing each of these business conditions, Mann adopted the Mann Construction, Inc. Death Benefit Trust and Restricted Property Trust[1] (the "Mann DBT/RPT") in 2013.  The terms of the Mann DBT/RPT are set forth in the Benefits Trust, executed by Mann and the independent trustee, Aligned Partners Trust Company.  The Benefits Trust sets forth the terms and conditions of the two separate sub trusts, the Death Benefit Trust and the Restricted Property Trust.  The Death Benefit Trust and the Restricted Property Trust are each irrevocable trusts.

---

[1] The terms of the Mann DBT/RPT are the same as the terms of every other RPT/DBT referenced herein.

62.     In 2013, Mann provided benefits to Brook, a key employee and owner, and Lee, a key employee and owner.  Collectively, Brook and Lee, who each received benefits through the Benefits Trust are called "Participants."

63.     The Trustee of the Mann DBT/RPT is Aligned Partners Trust Company, Inc., an independent trust company based out of Pittsburgh, Pennsylvania (the "Trustee"). The Trustee has no affiliation to Mann, or any of the individual Plaintiffs. The Trustee received an arms-length reasonable fee for the services it provided.

64.     The Trustee serves as the independent trustee of other RPT/DBT's referenced herein.

65.     The Trustee has the sole, exclusive authority and obligation to enforce the Risk of Forfeiture set forth in the Restricted Property Trust.  The Trustee has enforced the Risk of Forfeiture on numerous occasions.  On one occasion, the Trustee filed a lawsuit in the Allegheny County Orphans Court in order to enforce the Risk of Forfeiture. The result was a charitable beneficiary received any assets owned by the Restricted Property Trust.

66.     The Mann DBT/RPT provided two separate and distinct benefits to each Participant as an employee of Mann.

67.     The first benefit was a current year death benefit. This current year death benefit was funded with the current cost of the death benefit, plus all administrative charges and expenses. The preceding funding amount was defined in the Flexible Premium Whole Life insurance contract (the "Policy") provided by Penn Mutual Life Insurance Company ("Penn Mutual") as the base portion premium ("Base Portion Premium").

16

68.     Penn Mutual established the annual Base Portion Premium for each Policy.  The annual Base Portion Premium must be paid in every year of the Policy, including all years following vesting, if vesting occurs, or by its terms, the Policy will lapse.

69.     With respect to each Participant, each Policy was an off-the-shelf pure whole life insurance policy issued by Penn Mutual and acquired by the Trustee of the Death Benefit Trust to fund the death benefit.

70.     Mann deemed the Policy necessary and appropriate because of the permanent need for continuing death benefits and the impact changing health conditions could have on an individual's ability to obtain cost-effective life insurance, if the insured was even then insurable. If such temporary insurance could even be obtained at that time, the cost of the benefit would likely far exceed the Base Portion Premium of the policies obtained by the Mann DBT/RPT.

71.     Pursuant to each Policy, the failure to pay the Base Portion Premium in any year automatically resulted in the Policy lapsing. The lapsing of the Policy was unavoidable under the terms of the Mann DBT/RPT as there was no money accumulating within the Mann DBT/RPT that was available to pay the subsequent year's contractually required Base Portion Premium.

72.     At the time each Participant commenced participating in the Death Benefit Trust, Mann and such Participant entered into a certain Death Benefit Agreement pursuant to which Mann agreed to fund the Death Benefit Trust and the Participant agreed to include in income the value of the economic benefit resulting from the current life insurance protection. One year of current life insurance protection was the only benefit to which the Participant had any right, present or future.

73.     The second benefit provided to each Participant by Mann was restricted compensation payable to the Participant only in accordance with the terms of the Restricted Property Trust.

74.     All money contributed to, and assets owned by, the Restricted Property Trust were subject to the Risk of Forfeiture.  This means that none of Mann, the Trustee, any Participant, any of the charitable beneficiaries, or any other person or entity had any current or future rights, title, or interest in the restricted compensation until such time that the risk of forfeiture occurred or lapsed pursuant to the terms of the Restricted Property Trust.

75.     The Risk of Forfeiture continued for the period set forth in the Restricted Property Agreement executed between Mann and each Participant at the time such Participant commenced participation.  The Risk of Forfeiture was for a period of five (5) years.

76.     Pursuant to the terms of the Restricted Property Agreement, despite the money contributed to the Restricted Property Trust being subject to a substantial risk of forfeiture in accordance with the provisions of IRC § 83, the Participant agreed to and did include such money in income, in accordance with IRC § 83(b), when contributed by Mann to the Restricted Property Trust.

77.     The IRS does not dispute the Participants included the contributions to the Restricted Property Trust in income each year. The contributions to the Restricted Property Trust do not constitute premiums under the Policy.

78.     If a Participant vests, the assets owned by the Restricted Property Trust are distributed to the Participant and the Participant receives a Form 1099 stating the amount of taxable income reportable by the employee upon a distribution of the assets from the Restricted Property Trust at that time.

79.     The taxable income is an amount equal to the entire value of the Policy less any amounts the Participant included in income, despite the Risk of Forfeiture, in accordance with IRC § 83(b).

80.     In the event that a Participant does not vest in the restricted compensatory benefit, all of the assets associated with that restricted compensation are forfeited by the Trustee of the Restricted Property Trust to a charity.

81.     Pursuant to the terms of the Restricted Property Trust, the assets subject to forfeiture equaled all of the cash value of the lapsed Policy.

82.      Each Participant selected the charity to which the restricted compensation would be distributed, directly by the Trustee, in the event of forfeiture, and the charity was provided notice of this designation.

83.     The Trustee had a fiduciary obligation to the Restricted Property Trust beneficiaries and was mandated by the Mann DBT/RPT, and applicable trust laws, to enforce the Risk of Forfeiture should events giving rise to forfeiture occur.

84.     Prior to adopting the Mann DBT/RPT, Brook and Lee were informed of and discussed each of its component parts with their advisors, including but not limited to:

- the business purpose for which Mann was funding the death benefit and the restricted compensation;

- the fact that the only benefit to which a Participant was entitled to in a given year was a death benefit if the Base Portion Premium was continually and timely contributed to the Death Benefit Trust up to and including in the year of the Participant's untimely death;

- the fact that all assets owned by the Restricted Property Trust were subject to the Rsk of Forfeiture;

- types of events giving rise to forfeiture;

- the obligation of the Participant to include in taxable income the current economic value of the current life insurance protection provided under the Death Benefit Trust, computed in accordance with IRS tables;

- the purpose of including contributions to the Restricted Property Trust in income currently, notwithstanding the Risk of Forfeiture, to which such assets were subject unless and until the Risk of Forfeiture expired; and

- the taxable event to each Participant that would occur if his/her beneficial interest in the Restricted Property Trust vested.

85. Based on the foregoing, the expected tax consequences of the Mann DBT/RPT were that in each year: (i) the Participant was required to include in income the value of the economic benefit of the current death benefit based on the current cost of such death benefit; (ii) the entirety of the contribution to the Restricted Property Trust even though the employee had no current or future right to such money as it was subject to a Risk of Forfeiture which would result in a charity receiving all such assets; (iii) if the Risk of Forfeiture expired, the Trustee would send a Form 1099 to the employee reporting the entire value of the Policy as taxable; and (iv) Mann was entitled to a deduction in accordance with the express provisions of IRC §§ 61 and 419 for contributions to the DBT and in accordance with the express provisions of IRC §§ 162 and 83(h) for contributions to the RPT.

86. The expected tax consequences of the Mann DBT/RPT are not the same as or substantially similar to the expected tax consequences of transactions described in the Notice.

87. The Death Benefit Trust was established upon the initial contribution of the Base Portion Premium, in accordance with Article III of the Mann DBT/RPT.

88. The initial contribution to the Death Benefit Trust provided one benefit, a death benefit, for a duration of one year.

89.     In order to provide life insurance protection in year 2 under the Death Benefit Trust, Mann was required to make a timely contribution to the Death Benefit Trust of the Base Portion Premium. The same timely contribution was required through vesting, lest forfeiture would occur.

90.     Mann, each Participant and the Trustee were further advised that no Policy had, and could not have, an automatic loan to pay premium feature.

91.     The elimination of an automatic loan to pay premium feature required affirmative election by the Trustee. Said election was necessary, as all cash value of the Policy constituted potential assets payable to the designated charitable beneficiary. Stated differently, the cash value of the Policy could not be diverted for the benefit of the insured, or anyone else, to keep the Policy in force by paying the Base Portion Premium if Mann failed for any reason to make the required timely contribution to the Death Benefit Trust.

92.     Prior to the expiration of the Risk of Forfeiture, no Participant had any rights, title, or interest in any of the assets in the Restricted Property Trust.  The Participants could **not** pledge, transfer, assign, borrow against, or in any way access the funds in the Restricted Property Trust prior to expiration of the Risk of Forfeiture.

93.     Enforcement of the Risk of Forfeiture vested solely and exclusively in the Trustee.

94.     The Notice is clear that the targeted transactions, *i.e*., the purported welfare benefit plans, were promoted "to small businesses…as a way to provide cash and other property to the owners of the business on a tax favored basis."

95.     While only Lee and Brook participated in the Benefits Trust, no Participant had any current or future right to assets in the Restricted Property Trust despite the obligation of such Participant to pay tax on such amounts if Mann deducted the contributions.  All Brook and Lee

were entitled to in any given year was one year of a death benefit for which they paid tax on the economic value of such benefit.

96.     Thus, the "cash and other property" was never provided to the owners or anyone else on a tax favored basis or otherwise.

C.     **Assessment of 6707A Penalty**

97.     Despite the foregoing, on or about May 9, 2019, the IRS issued a proposed adjustment to the Mann Form 1120S disallowing deductions for contributions to an "employee benefit program."  The disallowed deductions related to the contributions Mann made to the Death Benefit Trust in each year 2013-2017.  These assessments were re-issued on August 8, 2019.

98.     The proposed disallowed deductions on the Form 1120S resulted in an increase in income (and tax) to both Brook and Lee.  This alleged increase in tax was the basis by which the § 6707A penalty was computed for Brook and Lee.

99.     Brook, Lee and Mann each timely appealed the proposed income tax changes, which appeal has been pending with the IRS since June 2019, then September 2019 based on the re-issued adjustments.

100.     Despite that, it is not presently known if Mann improperly deducted contributions to the "employee benefits program," the IRS issued proposed assessments of a § 6707A penalty on May 16, 2018 for tax years 2015/2016 and on February 17, 2019 for tax years 2013-2014, 2017.

101.     The proposed assessments of the § 6707A penalty were timely appealed, and ultimately upheld on appeal in June, 2019 for "proprietary" reasons as alleged above.

102.     The IRS claims that Plaintiffs were required to, but failed to, file Form 8886 for Tax Years 2013-2017 and has assessed 6707A penalties.

103.    The Plaintiffs paid the 6707A penalty for 2013 on or about November 26, 2019 and filed a Form 843 requesting a refund of such amount.  The IRS has not processed the refund claim.

104.    Without regard to whether the Mann DBT/RPT is subject to the Notice, the IRS's imposition of the § 6707A penalty for Tax Year 2013 is time-barred by 26 U.S.C. § 6501(c)(10)(A). Because Plaintiffs filed a detailed a Form 8275, the statute of limitations started running the day IRS received Plaintiffs' Form 8275 for Tax Year 2013.

105.    On or about August 21, 2019, the Plaintiffs submitted qualified offers in accordance with 26 U.S.C. § 7430, that were acknowledged as received by Appeals Officer Erich Harrison, but to which the IRS never responded.

## COUNT 1
## UNAUTHORIZED AGENCY ACTION IN VIOLATION OF THE APA

106.    Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

107.    The Notice is an "agency action" within the meaning of 5 U.S.C. § 702.

108.    The APA forbids agency action "in excess of statutory jurisdiction, authority, or limitations." *See,* 5 U.S.C. § 706(2)(c).

109.    Section 6707A authorizes the Secretary to identify listed transactions, but such listed transactions must be specifically identified.

110.    The Notice describes certain transactions promoted to small businesses as a way to provide "cash and other property" to the owners of the business on a tax-favored basis.  The Notice generally describes the claimed tax benefits of such transactions.  Further, the Notice identifies four elements of the purported listed transactions, as referenced in paragraph 16 above.

111.    Neither the claimed tax benefits nor elements of the transactions are described with the requisite specificity.  The effect of not clearly specifying the transactions subject to the Notice is that taxpayers who may be engaging in legitimate, lawful transactions (like the Plaintiffs herein),

not abusive tax-avoidance transactions, will be forced to make disclosures required by the Notice lest they subject themselves to substantial penalties under § 6707A.

112.    Moreover, by not specifically identifying the transactions subject to the Notice, the IRS is provided the opportunity to later define transactions in its opinion that are covered by the Notice (which it has done with regard to the DBT/RPT).

113.    With the respect to Plaintiffs, not until after imposing a § 6707A penalty did the IRS attempt to specifically describe Element Four.  In support of its imposition of a § 6707A penalty, the IRS stated "the effect of the parenthetical phrase is that premiums paid to policies that accumulate cash value within or outside the policy are not treated as insurance premiums paid for purposes of measuring the amount of the deduction for purposes of element four."  In effect, this is the IRS legislating or regulating without following the requirements of the APA.

114.    In Section VI of the Form 886A provided in support of the imposition of the § 6707A penalty, the IRS provided further clarity that the Notice sets forth limitations on deductions.

115.    Notwithstanding the IRS's statutory obligation to specifically identify listed transactions, basic notions of due process require the IRS to specifically identify transactions that could result in penalties if the disclosure requirements arising from the Notice are not complied with.

116.    Not even a taxpayer's obligation to interpret the "broad disclosure requirements" as set forth in Treas. Reg., 1.6011-4(c)(4) can be complied with when the IRS has the ability to establish then change, or fail to establish then later define, the specific transactions subject to the Notice.

117.    Plaintiffs have each been adversely affected or aggrieved by this agency action.

118.    The disclosure requirement adopted by the IRS in the Notice arbitrarily, unreasonably and unlawfully changes the definition of "qualified cost" and, using unnecessarily vague wording, requires taxpayers to file a Form 8886.

119.    Further, it recasts as "abusive trust arrangements…purportedly to provide welfare benefits" transactions that otherwise are compliant with T. Reg. 1.409A-1(a)(5).

120.    The agency action in question is final. Among other things, it operates as a substantive rule binding both the IRS and taxpayers, produces legal consequences, and creates taxpayer obligations.

121.    If not set aside, the Notice will continue to cause undue confusion and improperly and unnecessarily require Plaintiffs and other taxpayers to bear the substantial burden of filing a Form 8886, and, as a result, subject themselves to an audit for providing employee benefits going forward of the type available through the DBT/RPT.

122.    Plaintiffs have sustained actual damages that are concrete and particularized in nature and are entitled to a refund of the § 6707A penalties paid for 2013 in the amount of $8,642.25 with respect to Brook, $7,794.00 with respect to Lee and $10,000 with respect to Mann. Further, penalties for 2014-2017 should be abated on the basis that the Notice is unlawful.

**COUNT 2**
**ARBITRARY AND CAPRICIOUS ACTION IN VIOLATION OF THE APA**

123.    Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

124.    The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

125.    This provision of the APA requires federal agencies to give adequate reasons for their decisions and regulations. If an agency fails to provide a reasoned explanation for its action, that action is arbitrary and capricious and must be set aside.

126.    The IRS's conduct in promulgating the Notice was arbitrary, capricious, unsupported by a reasoned basis, and contrary to law. The IRS did not provide adequate reasons for why it was issuing the Notice.

127.    The Notice was not a good-faith interpretation of the IRC or effort to establish general regulatory guidance, but a gerrymandered effort to target all transactions utilizing cash value life insurance without regard to the facts of the transaction. It therefore constituted an arbitrary and capricious abuse of discretion.

128.    The IRS's current interpretation of the Notice with regard to the DBT/RPT and these taxpayers is arbitrary and capricious in that it is wholly inconsistent with prior agency interpretation and cannot be supported by the language of the Notice or the law.

129.    The Notice also fails to follow the statutory command of I.R.C. § 6707A(c)(2) in that it fails to specifically identify the DBT/RPT as a "Listed Transaction" causing confusion and uncertainty for these taxpayers and others.

130.    The Notice must therefore be set aside.

131.    Plaintiffs have sustained actual damages that are concrete and particularized in nature, namely the penalties assessed for Tax Years 2013-2017, for which a refund has been requested for the 2013 penalties previously paid by Plaintiffs.

132.    Further, Plaintiffs are deprived of the right to provide employee benefits of this type if the Notice is not set aside as unlawful lest the Plaintiffs comply with a burdensome yet inapplicable reporting obligation.

133.    Defendants' action in promulgating the Notice has harmed and will continue to harm Plaintiffs and other similarly situated taxpayers.

## COUNT 3
## FAILURE TO PROVIDE NOTICE AND OPPOURTUNITY FOR COMMENT IN VIOLATION OF THE APA

134.    Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

135.    The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702.

136.    The APA further empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. §706(2)(D).

137.    Pursuant to the APA, certain "rules" promulgated by an agency must be published in accordance with notice-and-comment procedures. 5 U.S.C. §553. An agency's failure to comply with notice-and-comment procedures is grounds for invalidating the rule.

138.    The Notice is a "rule" within the meaning of the APA, defined as the "whole or part of an agency statement of general or particular applicability and future effect designated to implement, interpret, or prescribe law or policy." *See,* 26 U.S.C. §551(4).

139.    The IRS is an "agency" within the meaning of the APA.  *See,* 5 U.S.C. §§ 551(1) and 552(f)(1).

140.    The Notice qualifies as a "substantive" or "legislative-type" agency rule, which is the type that, prior to its promulgation, must be subjected to the APA's notice-and-comment regime as a matter of law.  *See,* 5 U.S.C. §553.

141.    Before a substantive rule such as the Notice may take effect, the APA requires the agency to issue a notice of proposed rulemaking that includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved" in order to "give interested

persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b)(3) & (c).

142.    In issuing the Notice, the IRS failed to comply with the APA's notice-and-comment requirements.

143.    No potential exceptions to the notice-and-comment requirements apply to the Notice as it is neither an "interpretive rule" under 5 U.S.C.§§ 553(b)(A), nor was there any finding of good cause to bypass such procedural requirements in accordance with 5 U.S.C. §§ 553(b)(B), (d)(3).

144.    Having failed to comply with the notice-and-comment rulemaking requirements, the Notice was promulgated unlawfully and Plaintiffs have been and will continue to be adversely affected by Defendants' unlawful conduct, which is reviewable by this Court under the APA, 5 U.S.C. § 706.

145.    The IRS acted unlawfully in promulgating the Notice and the Department of the Treasury participated in such unlawful action by the delegation of its authorities and otherwise.

146.    Plaintiffs have sustained actual damages that are concrete and particularized in nature, namely the penalties assessed for Tax Years 2013-2017, for which a refund has been requested for the 2013 penalties previously paid by Plaintiffs.

147.    Further, Plaintiffs are deprived of the right to provide employee benefits of this type if the Notice is not set aside as unlawful lest the Plaintiffs comply with a burdensome yet inapplicable reporting obligation.

**COUNT 4**
**Refund of § 6707A Penalty for 2013**

148.    Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

149.     Based on the totality of all distinguishing features of the DBT/RPT and the transactions described in the Notice, the Mann DBT/RPT is not the same as or substantially similar to the transactions described in the Notice.

150.     As such, the Plaintiffs were not required to disclose participating in the Mann DBT/RPT on a Form 8886.

151.     Nonetheless, the IRS assessed, collected, and refused to refund the § 6707A penalty for Tax Year 2013.

152.     Plaintiffs have sustained actual damages that are concrete and particularized in nature.

153.     Plaintiffs are entitled to a refund of the 6707A penalty for Tax Year 2013.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a)  An order and judgment setting aside Notice 2007-83;

b)  An order and judgment declaring that Notice 2007-83 is unlawful;

c)  An order declaring that Notice 2007-83 is inapplicable to the Mann DBT/RPT;

d)  An order requiring the Defendants to issue a refund to each Plaintiff respectively, for the 6707A penalties paid for 2013;

e)  An order requiring the Defendants to rescind the 6707A penalties imposed on Plaintiffs in each of the years 2014-2017 on the basis that Notice 2007-83 is unlawful and/or that the Mann DBT/RPT is not subject to Notice 2007-83; and

f)  All other relief to which Plaintiffs may be entitled, including an award of attorneys' fees in accordance with 26 U.S.C. § 7430.

Respectfully submitted,


*/s/ Matthew C. Miller*
Matthew C. Miller (Ohio Bar No. 0084977)
**WESTON HURD LLP**
1301 E. 9th Street, Suite 1900
Cleveland, Ohio 44114
Phone:  216-241-6602; Fax:  216-641-8369
E-mail: MMiller@westonhurd.com

*Counsel for Plaintiffs*


## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

*/s/ Matthew C. Miller*
Matthew C. Miller (Ohio Bar No. 0084977)