UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——————————————————————— X

MANN CONSTRUCTION, BROOK
WOOD, KIMBERLY WOOD, LEE               Case no. 1:20-cv-11307-TLL-PTM
COUGHLIN, and DEBBIE COUGHLIN,

     *Plaintiffs,*

     v.

UNITED STATES OF AMERICA,

     *Defendant.*

——————————————————————— X

## DEFENDANT UNITED STATES OF AMERICA'S
## <u>MOTION TO DISMISS</u>

The United States of America respectfully moves this Court to dismiss the

Complaint in the above-captioned case.  The Complaint alleges that Plaintiffs were

assessed penalties for failing to report their participation in the "DBT/RPT" tax

scheme, as required by the Internal Revenue Code and the applicable Treasury

regulations.  Counts 1, 2, and 3 seek a refund on the ground that Notice 2007-83,

2007-2 C.B. 960, which identifies transactions such as the DBT/RPT as abusive

tax avoidance transactions, was issued in violation of the Administrative Procedure

Act.  But these counts fail to state a claim.  Notice 2007-83 is not vague; it is not

arbitrary and capricious; and it was not required to be issued through notice-and-

comment rulemaking.

Count 4 of the Complaint seeks a tax refund on the ground that Plaintiffs' DBT/RPT transaction does not fall within the terms of Notice 2007-83. But the facts alleged by the Complaint demonstrate that Plaintiffs' transaction has all of the elements of the transaction described in the Notice. This Count thus also fails to state a claim.

In addition, the Complaint could be read to seek an injunction and declaratory relief in addition to the tax refund. The United States moves to dismiss these claims on the ground that Plaintiffs have no standing to seek this relief and that there is no waiver of sovereign immunity for this relief in accordance with the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The parties conferred on August 17, 2020 regarding this motion. Plaintiffs agreed that their Complaint was not intended to seek an injunction against the IRS or a declaratory judgment that would bind the IRS as to other taxpayers. Accordingly, Plaintiffs concur in this motion to the extent that it moves to dismiss any claim for injunctive or declaratory relief. Plaintiffs do not concur with the motion to the extent that it moves to dismiss their claim for monetary relief on the basis that the transaction at issue is not substantially similar to the transactions targeted by Notice 2007-83 or on the basis that the Notice is unlawful.

For the reasons stated above, the United States moves this Court to dismiss the Complaint with prejudice.  A memorandum of law in support of this motion is attached.


Dated: August 20, 2020                    Respectfully submitted,

                                          */s/ Arie M. Rubenstein*
                                          ARIE M. RUBENSTEIN
                                          Trial Attorney, Tax Division
                                          U.S. Department of Justice
                                          P.O. Box 55, Washington, D.C.  20044
                                          202-307-6588 (t) / 202-514-5238 (f)
                                          Arie.M.Rubenstein@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————————————————— X

MANN CONSTRUCTION, BROOK
WOOD, KIMBERLY WOOD, LEE
COUGHLIN, and DEBBIE COUGHLIN,

     *Plaintiffs,*

     v.

UNITED STATES OF AMERICA,

     *Defendant.*

———————————————————————— X

Case no. 1:20-cv-11307-TLL-PTM

**DEFENDANT UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS</u>**

## **Table of Contents**

I.   **Background** ...................................................................................................1

  A.   Congress and the Treasury's tax shelter reporting regime.............................2

  B.   Abusive "welfare benefit fund" transactions .................................................4

  C.   The DBT/RPT tax scheme and Plaintiffs' claims............................................7

II.  **Plaintiffs fail to state meritorious APA claims**.................................................9

  A.   Notice 2007-83 is not unreasonably vague. ...................................................9

    1.   Notice 2007-83 identifies the transactions at issue such that a reasonable person can understand them....................................................................9

    2.   Plaintiffs' claim that their transaction is not abusive is irrelevant to whether the Notice is vague. .....................................................................11

  B.   Notice 2007-83 contains a thorough explanation for why it was issued. ....13

  C.   The IRS was not required to use notice-and-comment rulemaking to issue Notice 2007-83. ............................................................................................17

    1.   The listed transaction rules and consequences arise from the statute and from regulations, not Notice 2007-83........................................................17

    2.   The regulations permit Treasury to identify listed transactions by notice. ....................................................................................................................18

    3.   Listing transactions by notice is consistent with Congressional intent. ...19

    4.   Subsequent statutory developments confirm that Congress intended for Treasury to identify listed transactions by notice. ...................................24

III. **The Complaint does not state a claim for refund of the listed transaction penalties because Plaintiffs admit engaging in conduct that is subject to the penalty.** ...................................................................................................27

  A.   The DBT/RPT satisfies each element of Notice 2007-83.............................27

  B.   Because the elements are satisfied, Plaintiffs' arguments as to the intent of the Notice are irrelevant. .............................................................................30

  C.   Plaintiffs admit that they did not report the transaction as required............32

  D.   Plaintiffs' improper disclosure did not prevent tolling of the statute of limitations.....................................................................................................32

IV.  **There is no jurisdiction for injunctive or declaratory relief.** .....................34

## <u>Concise Statement of the Issues Presented</u>

1.  Is Notice 2007-83 vague such that a reasonable person cannot understand with reasonable specificity the transactions it identifies?

2.  Did the IRS supply a reasoned basis for issuing Notice 2007-83 sufficient to withstand arbitrary and capricious review?

3.  Was Notice 2007-83 required to have been issued using notice-and-comment procedures?

4.  Does the transaction described in the Complaint satisfy the elements of Notice 2007-83?

5.  Was the statute of limitations held open by 26 U.S.C. § 6501(c)(10), which holds the statute open until a taxpayer properly reports a listed transaction?

## <u>Controlling Authority for Relief Sought</u>

1.      *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1108 (6th Cir. 1995), discusses evaluation of whether a rule is unconstitutionally vague.

2.      *Kentucky Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 407 (6th Cir. 2013), discusses evaluation of whether an agency action is arbitrary and capricious.

3.      26 C.F.R. § 1.6011-4 provides that the IRS may identify listed transactions by notice.

4.      26 C.F.R. § 1.6011-4 provides that a listed transaction is a transaction the same as or substantially similar to a transaction determined by the IRS to be a tax avoidance transaction.  Notice 2007-83 states the elements of the listed transaction at issue.

5.      26 U.S.C. § 6501(c)(10) holds the statute of limitations open for a taxpayer that fails to report a listed transaction in accordance with the regulations under Section 6011.  26 C.F.R. § 301.6501(c)-1(g) provides the procedure by which a taxpayer that failed to report a listed transaction may restart the statute of limitations.

## I.    Background

Brook Wood and Lee Coughlin and their wholly owned company, Mann Construction (the "Company"), entered into a tax scheme they call the "DBT/RPT."  The DBT/RPT is a "listed transaction," meaning that taxpayers who participate in the scheme are required to notify the IRS Office of Tax Shelter Analysis.  Plaintiffs did not do so.

The IRS audited the Company and proposed denying the deductions it claimed for contributions to the DBT/RPT.  The IRS also assessed penalties against Plaintiffs for failing to disclose their participation in the scheme.  Plaintiffs paid the penalties and filed this suit.

Plaintiffs' Complaint launches a volley of meritless attacks at the Notice, the IRS's activities, and the anti-tax shelter regime generally.  Counts 1, 2, and 3 of Plaintiffs' Complaint allege that Notice 2007-83 (attached as ex. 1) was improperly issued; that it is vague, arbitrary and capricious; and, in effect, that Treasury's decades-old anti-tax shelter program violates the Administrative Procedure Act on the ground that the notices that identify listed transactions are invalid because they are not issued via notice-and-comment procedures.  Plaintiffs contend that they are entitled to a tax refund on these grounds.

Plaintiffs' APA arguments are meritless.  A facial review of Notice 2007-83 demonstrates that it is specific and is not arbitrary or capricious.  Further, listed

transaction notices (including Notice 2007-83) contain no independent reporting requirements or penalties themselves; the only reporting requirements arise from a regulation, 26 C.F.R. § 1.6011-4, which was promulgated through notice-and-comment rulemaking, and the penalties are statutory, 26 U.S.C. § 6707A.  The listed transaction reporting regime existed for four years before Congress added penalties to enforce the reporting; the argument that Congress intended Treasury to proceed by regulation rather than notice cannot be squared with this timeline.

Count 4's allegation that the DBT/RPT is not a listed transaction fails to state a claim.  The facts alleged by the Complaint demonstrate that the DBT/RPT satisfies the elements of Notice 2007-83 and is therefore a listed transaction.

### A.      Congress and the Treasury's tax shelter reporting regime

The provisions at issue here, pertaining to "listed transactions," stem from Congress' and the Treasury's efforts to address abusive tax shelters.  The listed transaction reporting regime follows decades of Congressional attempts to address the "growing phenomenon of abusive tax shelters."  *See* S. Rep. No. 97-494 at 266, 268 (1982).  Legislation to close loopholes, statutory authorization for the Secretary to make adjustments to reflect economic realities, and an attempt to define tax shelters and require their registration all proved inadequate.  Bright lines only led to new exploitation by creative promoters, and legislation failed to stay ahead of the proliferation of new shelters.  With the emergence of the modern

mass-marketed tax-shelter industry in the late 1990s, tax-avoidance schemes expanded to pose a significant threat to the public fisc. *See* Ben Wang, Note, *Supplying the Tax Shelter Industry: Contingent Fee Compensation for Accountants Spurs Production*, 76 So. Cal. L. Rev. 1237, 1237 (2003) (discussing estimated losses to the Treasury of between $7 billion and $30 billion annually).

Following repeated Congressional and administrative efforts to target specific shelters, Treasury concluded that "tax shelters appear in the guises of Proteus, taking many different forms and utilizing many different structures," and so piecemeal legislation to address each new shelter proved unworkable. Department of the Treasury, The Problem of Corporate Tax Shelters at 11, 99*, available at* https://www.treasury.gov/resource-center/tax-policy/Documents/Report-Corporate-Tax-Shelters-1999.pdf (July 1999) (internal quotation marks omitted). Congress and Treasury thus created the current regime. Built on the insight that "the best way to combat tax shelters is to be aware of them," H.R. Rep. 108-548 at 261 (2004), the regime requires taxpayers to report transactions identified by the Treasury through administrative guidance.

Under current law, taxpayers must report participation in a "reportable transaction," defined as a transaction "as determined under regulations prescribed under section 6011 . . . of a type which the Secretary determines as having a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). The regulations

specify criteria (such as a condition of confidentiality) that make a transaction a reportable transaction.  26 C.F.R. § 1.6011-4(b).

Congress also endorsed a sub-category of reportable transactions, called "listed transactions," defined as transactions "the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011."  26 U.S.C. § 6707A(c)(2).  The regulations define a "listed transaction" as a transaction that is the same as or substantially similar to a transaction that the IRS has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance.  26 C.F.R. § 1.6011-4(b)(2).  A taxpayer that participates in a listed transaction must file Form 8886, *Reportable Transaction Disclosure Statement*, with the Office of Tax Shelter Analysis and must attach the form to its tax return.  26 C.F.R. § 1.6011-4(d), (e).  Penalties apply to a failure to report a listed transaction.  26 U.S.C. § 6707A(a).

### B.    Abusive "welfare benefit fund" transactions

Tax shelter promoters have been designing transactions that abuse the employee benefit provisions of the Internal Revenue Code for more than twenty-five years.  The Code permits employers to deduct contributions to a fund to provide welfare benefits to employees if certain requirements are met.  26 U.S.C. § 419.  In 1995, the IRS issued Notice 95-34, 1995-1 C.B. 309, which alerted

taxpayers that promoters were marketing abusive shelters that purported to be ten-or-more-employer benefit plans (which are eligible for special treatment under the Internal Revenue Code).  These shelters typically involved a trust that would hold cash-value life insurance policies for employees of multiple separate companies. The trust would generally use accounting methods to ensure that the employers did not actually pool costs or expenses.  The cash value of the insurance policies was typically made available to the employees at some point.  The purpose of the transaction was to permit an employer to claim deductions for amounts paid to the trust while the employees deferred recognizing income on those payments.  Notice 2000-15, 2000-1 C.B. 826 identifies these transactions as listed transactions.  *See, e.g., Curcio v. Commissioner*, 689 F.3d 217 (2d Cir. 2012) (affirming denial of deductions for abusive multiple-employer plan transaction); *Prosser v. Commissioner*, 777 F.3d 582 (2d Cir. 2015) (affirming listed transaction penalty for failure to disclose participation in that transaction); *see generally Neonatology Assocs. v. Commissioner*, 299 F.3d 221 (3d Cir. 2002) (affirming negligence penalties for participation in abusive multiple employer plan).

Following the IRS's identification of these transactions as listed transactions, promoters morphed the schemes into "single employer" plans that also made use of cash-value life insurance and purported to provide employers with current deductions while employees deferred income recognition.  *See, e.g.,*

*Cadwell v. Commissioner*, 483 F. App'x 847, 850 (4th Cir. 2012) (discussing conversion of multiple-employer plan to single-employer plans to avoid listed transaction treatment); *Vorst v. Bruskotter*, No. 3:15-cv-1613, 2015 WL 6756150, at *1 (N.D. Ohio Nov. 4, 2015) (addressing fraud and negligence suit involving multiple employer plan; plaintiffs were advised to convert to single-employer plan). Under these new plans, a company would cause a trust to purchase a cash-value life insurance policy for the employees it wanted to compensate – generally, owners of the business. The company would pay the premiums on the life insurance policy (through the trust) for some period of time and then transfer the life insurance policy to the employee. The company would claim deductions on the payments to the trust, while the employee would defer recognizing income. *See, e.g., Our Country Home Enterp. v. Commissioner*, 145 T.C. 1, 36 (2015).

In 2007, the IRS issued Notice 2007-83, *Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits*, 2007-2 C.B. 960 (attached as ex. 1), which identifies these single-employer plans as listed transactions. Notice 2007-83 provides background information, states the IRS's intent to challenge these transactions, identifies the specific elements that constitute the transaction, and advises taxpayers who participate in these transactions of their disclosure obligations. Notice 2007-83 identifies four elements, discussed below; a transaction that satisfies all four

elements, or a substantially similar transaction, is a listed transaction and must be reported on Form 8886 to the IRS Office of Tax Shelter Analysis.

### C.     The DBT/RPT tax scheme and Plaintiffs' claims

This case involves a promoted tax scheme referred to as the "DBT/RPT" or "Restricted Property Trust," which is marketed to small businesses as a single-employer benefit plan.[1]  As described in the Complaint, in general terms, the business forms a trust that purchases cash-value life insurance policies for the business's owners.  Compl. ¶¶ 63, 69.  The company pays the premiums on the policy for five years, *id.* ¶ 72, 75, during which the policy accumulates cash value, *id.* ¶¶ 47, 69, 81, 91.  The company deducts the payments to the trust, but the employee does not recognize most of the premiums as income, *id.* ¶ 85.  If a premium payment is not made, the insurance policy is liquidated and the proceeds are donated to a charity.  *Id.* ¶¶ 80-82.  If the premiums are paid for the full term, the trust transfers the policy to the individuals and the individuals recognize a

---

[1] An internet search indicates that the scheme is marketed as the "Restricted Property Trust" or "Restrictive Property Trust."  *See, e.g.,* Oswald Life Ins., Restricted Property Trust, *at* http://www.oswaldlife.com/wp-content/uploads/2018/11/Life-Insurance-Restricted-Property-Trust_p2.pdf (last visited Aug. 20, 2020); Restricted Property.Com, Restricted Property Trust, *at* https://restrictedproperty.com/ (last visited Aug. 20, 2020); Prism Advanced Strategies, Restrictive Property Trust, *at* http://www.prismadvancedstrategies.com/RPT.html (last visited Aug. 20, 2020). The Complaint, however, uses that term to refer to only one component of the transaction.  To avoid confusion, this memorandum uses the Complaint's terminology.

portion of the cash value as income.  *Id.* ¶ 85.  The DBT/RPT meets the elements of Notice 2007-83, so the regulations require participants in the scheme to report their participation on Form 8886 filed with the IRS Office of Tax Shelter Analysis.

Plaintiffs engaged in a DBT/RPT transaction but did not file Form 8886 with the Office of Tax Shelter Analysis.  The IRS assessed penalties under 26 U.S.C. § 6707A for their failure to do so.  Plaintiffs paid the penalties and now seek a refund.  In addition, they challenge the propriety of Notice 2007-83 and, in effect, the listed transaction reporting regime as a whole.

Plaintiffs' Administrative Procedure Act claims lack merit.  Count 1 claims that Notice 2007-83 is void for vagueness, Count 2 claims that Notice 2007-83 is arbitrary and capricious, and Count 3 claims that Notice 2007-83 is unlawful because it was not issued via notice-and-comment rulemaking.  But Notice 2007-83 is not vague – it is very specific about the transactions it identifies.  It is not arbitrary and capricious – it contains a detailed description of the rationale for its issuance.  And it was promulgated lawfully – notice-and-comment rulemaking is not required for the Notice, the regulation authorizes the use of notices for this purpose, and the statute and the legislative history demonstrate Congress intended Treasury to identify listed transactions by notice.

Count 4 also fails to state a claim.  It alleges that Plaintiffs are not liable for the listed transaction penalties because their transaction was not described by

Notice 2007-83.  But the facts alleged by the Complaint show that all four

elements of Notice 2007-83 are satisfied, and therefore Plaintiffs were required to

disclose the transaction.

Plaintiffs allege that the IRS's assessment of the listed transaction penalties

was untimely, but the Internal Revenue Code provides that if a taxpayer does not

report a listed transaction as required by the regulations, the statute of limitations

for assessment is held open until one year after the disclosure is made.  26 U.S.C.

§ 6501(c)(10).  Plaintiffs do not allege that they made the required disclosure, and

thus the statute was held open.

## II.     Plaintiffs fail to state meritorious APA claims.

### A.     Notice 2007-83 is not unreasonably vague.

#### 1.     Notice 2007-83 identifies the transactions at issue such that a reasonable person can understand them.

Count 1's assertion that Notice 2007-83 fails to describe the transactions it

identifies with sufficient specificity is meritless.  A provision is not void for

vagueness so long as it is "set out in terms that the ordinary person exercising

ordinary common sense can sufficiently understand and comply with, without

sacrifice to the public interest." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter

Carriers*, 413 U.S. 548, 579 (1973).  "[T]o succeed on a claim of unconstitutional

vagueness . . . the complaining party must do more than show that the statute

requires a person to conform his conduct to an imprecise but comprehensible

normative standard.  Instead, the complaining party must prove that no standard of conduct is specified at all." *Columbia Nat. Res. v. Tatum*, 58 F.3d 1101, 1108 (6th Cir. 1995) (quotation marks and citations omitted); *see Johnson v. Morales*, 946 F.3d 911, 929 n.11 (6th Cir. 2020) (observing that economic regulations and civil regulations generally are subject to less strict vagueness tests) (citation omitted).

Notice 2007-83 does not remotely approach this standard.  It provides very specific guidance – it identifies as a listed transaction any transaction with the four elements paraphrased below (or any substantially similar transaction):

1.  The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.

2.  Contributions are not made in accordance with a collective bargaining agreement.

3.  The trust pays premiums on a life insurance policy that accumulates value either within the policy (*e.g.,* a cash-value life insurance policy) or outside the policy (*e.g.*, a side fund or agreement that allows the policy to be exchanged for a cash-value policy).

4.  The employer's deductions for contributions to the fund exceed: (a) for uninsured benefits, claims, reserves, and administrative expenses; (b) for insured benefits, insurance premiums for the year and administrative expenses, but not premiums for a cash-value policy; (c) certain amounts for years prior to 2007; and (d) a reserve for medical benefits for certain entities identified by the Public Health Service Act.

The full text appears on pages 4-6 of Notice 2007-83 (attached as ex. 1).  The factors are detailed and specific and it is straightforward to determine whether a transaction meets them (or is substantially similar to them).

The Ninth Circuit recently rejected a similar argument as to Notice 2007-83

in *Interior Glass Systems v. United States*, 927 F.3d 1081 (9th Cir. 2019).  The

taxpayer there argued that if its scheme were held to be encompassed by Notice

2007-83 by virtue of the "substantially similar" language, then that language was

unconstitutionally vague.  The Court rejected that argument:  "For a civil penalty

like 26 U.S.C. § 6707A, the definition is constitutionally valid so long as 'a person

of ordinary intelligence' could determine which transactions are substantially

similar to the listed transaction identified in Notice 2007-83. . . .  [T]he

regulation's definition of 'substantially similar' is detailed enough to make that

determination an easy one in this case."  *Id.* at 1085-86 (citation omitted).

Moreover, as the district court in *Interior Glass* noted, good reasons exist for the

lack of further specificity in the Notice, "given the creativity a taxpayer may

employ in an effort to circumvent the statute."  *Interior Glass Sys. v. United States*,

No. 5:13-cv-05563, 2016 WL 4717765, at *7 (N.D. Cal. Aug. 12, 2016).[2]

### 2. Plaintiffs' claim that their transaction is not abusive is irrelevant to whether the Notice is vague.

Plaintiffs' claim that their transaction is not an abusive transaction is

irrelevant to whether Notice 2007-83 is vague.  Plaintiffs assert that "[t]he effect of

not clearly specifying the transactions subject to the Notice is that taxpayers who

---

[2] Regardless, Plaintiffs are not entitled to challenge Notice 2007-83 as vague because their transaction plainly satisfies the elements of the Notice.  *See* Part III.A, below.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  *Dade v. Baldwin*, 802 F. App'x 878, 885 (6th Cir. 2020) (quotation marks omitted).

may be engaging in legitimate, lawful transactions (like the Plaintiffs herein), not abusive tax-avoidance transactions, will be forced to make disclosures required by the Notice . . . ."  Compl. ¶ 111.  But whether the Notice is vague does not depend on whether the transactions it describes are abusive.  The Notice identifies a fixed set of transactions with sufficient specificity that a person of ordinary intelligence can determine whether a transaction is so identified.  Further, the regulations direct that any question as to whether a transaction is substantially similar to a listed transaction should be resolved in favor of disclosure.  26 C.F.R. § 1.6011-4(c)(4).  Plaintiffs' belief that their transaction is not abusive does not make the notice any less specific.  Plaintiffs are free to argue that their transaction should result in the tax benefits they claim, but even if they are correct, it would not excuse their failure to disclose the transaction as required by the regulations.

Indeed, Section 6707A provides that a listed transaction penalty can apply regardless of whether the tax treatment is ultimately sustained.  *See* 26 U.S.C. § 6707A(b)(1) (computing the penalty based on the decrease in tax shown on the return, whether or not respected).  The Joint Committee on Taxation explained: "Congress believed that a penalty for failing to make the required disclosures, when the imposition of the penalty is not dependent on the tax treatment of the underlying transaction ultimately being sustained, would provide an additional incentive for taxpayers to satisfy their reporting obligation under the new

disclosure provisions."  Joint Committee on Taxation, General Explanation of Tax

Legislation Enacted in the 108th Congress at 361, JCS-5-05, *available at*

*https://www.jct.gov/publications.html?func=startdown&id=2314*; *see* H.R. Rep.

108-548 at 261 (2004) (same).  Congress' clear intent is for the disclosure

requirement – and the penalty for non-disclosure – to apply regardless of whether a

court ultimately determines the transaction to be permissible.

    **B.**    **Notice 2007-83 contains a thorough explanation for why it was issued.**

Count 2, which alleges that the Notice is arbitrary and capricious in that the

IRS did not provide a valid justification for its issuance, fails to state a claim.  "An

agency's decision is arbitrary and capricious when the agency has 'relied on

factors which Congress had not intended it to consider, entirely failed to consider

an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.'"  *Ky.*

*Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 407 (6th Cir. 2013) (quoting *Nat'l*

*Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007)).  "[R]eview

under that standard is narrow: a court is not to substitute its judgment for that of

the agency."  *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (internal

quotation marks omitted).

Plaintiffs do not allege that Treasury relied on factors that Congress did not

intend to be considered, that Treasury failed to consider an important aspect of the issue, that the decision runs counter to any evidence, or that Treasury's stated purposes are implausible. Plaintiffs' conclusory allegation that the Notice is "a gerrymandered effort to target all transactions utilizing cash value life insurance without regard to the facts of the transaction," Compl. ¶ 127, lacks support. Notice 2007-83 is far more targeted and specific. The Notice applies only to transactions wherein an employer pays premiums for a cash-value life insurance policy through a purported welfare benefit fund, the policy accumulates value, and the employer claims certain excessive tax deductions.

Nor should the Court credit Plaintiffs' apparent argument that the Notice is arbitrary and capricious because it does not identify their specific scheme by name. Plaintiffs allege that the Notice is invalid because it "fails to specifically identify the DBT/RPT as a 'Listed Transaction' causing confusion and uncertainty for these taxpayers and others." Compl. ¶ 129. If the IRS were required to identify abusive transactions by name, rather than by providing a list of elements, promoters could avoid disclosure simply by renaming their schemes. The purpose of the listed transaction regime is to assist the Treasury and the IRS Office of Tax Shelters in discovering abusive transactions; if the IRS had to know the name of a transaction to list it, the regime would be impaired. *Cf. United States v. Woods*, 571 U.S. 31, 33-34 (2013) (discussing "COBRA" tax shelter as an instance of the transaction

described in IRS Notice 2000-44, which does not use that name).

Plaintiffs further assert that "[t]he IRS's current interpretation of the Notice with regard to the DBT/RPT and these taxpayers is arbitrary and capricious," Compl. ¶ 128, but this goes to the IRS's assessment of the penalties here, not the Notice.  If Notice 2007-83 is not itself arbitrary and capricious, and it is not, then Plaintiffs' claim that it is being interpreted improperly is a claim that the IRS erred in determining that the DBT/RPT meets the elements of the Notice.  (Part III.A, below, discusses how the Notice applies to the DBT/RPT.)

Plaintiffs also allege the Notice "arbitrarily, unreasonably and unlawfully changes the definition of 'qualified cost,'" Compl. ¶ 118, but the Notice does no such thing.  It does not even discuss "qualified cost" except in the *Background* section, in a discussion of claims made by tax shelter promoters, and in a reference in the preamble to other guidance.  It certainly provides no definition of the term.

The *Background* section of Notice 2007-83 indicates that Treasury considered the relevant factors and that its explanation is consistent with the evidence.  It explains the purpose of the Notice, describes the issues that led to the issuance of the Notice, and discusses the relevant statutory and regulatory law. The first part of the *Background* section, *Promoted Arrangements*, contains a detailed discussion of the nature of the transactions that have been identified as abusive, features of these transactions, and details as to how these transactions are

marketed.  Notice 2007-83 at 1.  This section makes clear that Treasury complied

with the statutory prerequisite that it determine the transaction it identifies

constitutes a tax avoidance transaction before identifying it as a listed transaction.

*See* 26 U.S.C. § 6707A(c)(2).  The second part, *Intent to Challenge Transactions*,

explains why the IRS determined these transactions fail to comply with the

requirements of the Internal Revenue Code.  Notice 2007-83 at 3.  Plaintiffs do not

allege Treasury ignored any evidence.  And Treasury's action – identifying the

transaction as a listed transaction – is consistent with the evidence it considered.

     To the extent that Plaintiffs are asking this Court to determine that the

transactions described in the Notice are not abusive, and therefore that the IRS

should not have identified them as listed transactions, this exceeds the scope of

arbitrary and capricious review.  The question is whether Treasury made a

reasonable determination that the transaction is a tax avoidance transaction; "a

court is not to substitute its judgment for that of the agency."  *Hosseini*, 911 F.3d at

371 (internal quotation marks omitted).

     Notice 2007-83 thoroughly discusses the rationale for its issuance, the legal

problems with the transaction, and the basis for Treasury's determination that the

transaction constitutes an abusive tax avoidance transaction.  It is thus not arbitrary

and capricious.

**C.    The IRS was not required to use notice-and-comment rulemaking to issue Notice 2007-83.**

Treasury's identification of listed transactions by notice is consistent with the statute, authorized by the regulation, and endorsed by two decades of Congressional supervision.  The listed transaction reporting regime has three components: the identification of a transaction as a listed transaction, which the IRS is authorized to do by notice; the reporting requirement, which is imposed by regulation; and the penalties for failing to report a transaction as required, which are statutory.  The rules that impose obligations on the public – the reporting requirements and attendant penalties – are the regulation and the statute, not the notices.  Further, Treasury created the reporting requirements and issued the regulation permitting listing transactions by notice in the year 2000; after hearing extensive testimony about the regime, Congress enacted the third component, penalties for failure to comply, in 2004.  This timeline demonstrates the fallacy in Plaintiffs' argument:  Congress saw that Treasury was using notices to identify listed transactions, and not only approved of that procedure, but enacted penalties for taxpayers that fail to comply.

**1.    The listed transaction rules and consequences arise from the statute and from regulations, not Notice 2007-83.**

Notice 2007-83 imposes no independent obligations or penalties on the public; rather, the obligation to report participation in a listed transaction, and the

penalty for failing to do so, arise from the statute and the regulations.  The listed transaction regime comprises three discrete components:  (1) Treasury's identification of a transaction as a tax avoidance transaction, in this case, Notice 2007-83; (2) the regulation that requires reporting of transactions that are so identified, 26 C.F.R. § 1.6011-4; and (3) the statute that penalizes failure to comply with the regulation, 26 U.S.C § 6707A.  The legal obligations are imposed by the Internal Revenue Code and by regulations issued through notice-and-comment rulemaking, not the Notice.  Plaintiffs paid penalties imposed by the statute, 26 U.S.C. § 6707A, for failure to comply with the listed transaction regulation, 26 C.F.R. § 1.6011-4, which requires taxpayers who participate in listed transactions to notify the IRS Office of Tax Shelter Analysis.  (That regulation was adopted through notice-and-comment procedures. *See* 65 FR 11269-01 (March 2, 2000) (proposed regulation); 68 FR 10161-01 (March 4, 2003) (final regulation)).

Notice 2007-83 simply identifies a transaction as a listed transaction – it does not and cannot impose a reporting requirement or a penalty.  It does not alter the tax treatment of any transaction and it does not affect whether taxpayers are entitled to tax benefits for the transactions it describes.  Notice 2007-83 is thus not a legislative rule and was not required to be issued via notice-and-comment.

> **2.    The regulations permit Treasury to identify listed transactions by notice.**

A regulation, 26 C.F.R. § 1.6011-4, explicitly authorizes Treasury's use of

notices to identify listed transactions.  The regulation defines a "listed transaction" as "a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction."  26 C.F.R. § 1.6011-4(b)(2).  Plaintiffs attack Notice 2007-83 on the ground that the IRS should not have issued it via notice, but fail to acknowledge that the regulation explicitly authorizes the use of notices to identify listed transactions.

### 3. Listing transactions by notice is consistent with Congressional intent.

The long history of cooperation between Congress and Treasury in developing and refining the listed transaction rules makes clear that Congress approved of and authorized the current procedures, including the identification of listed transactions by notice.  Treasury developed the listed transaction reporting regime in 2000, including the provision allowing identification of listed transactions by notice.  Congress enacted the penalties, along with the statutory definition of listed transaction, in 2004, after extensive testimony about the regulation and listed transaction notices.  Plaintiffs' argument assumes that listing transactions by notice is contrary to the will of Congress, but the timeline demonstrates that Congress knew quite well that Treasury was listing transactions via notice and that Congress wrote the statute intending to ratify that practice.

Treasury initially developed the listed transaction reporting regime by regulation.  In 2000, Treasury issued temporary and proposed regulations requiring disclosure of listed transactions.  65 FR 11205-02 (March 2, 2000); 65 FR 11269-01 (March 2, 2000).  Those regulations explicitly permitted identification of listed transactions by notice.  Contemporaneously, Treasury issued IRS Notice 2000-15, 2000-1 C.B. 826, which identified the first listed transactions.  IRS also created the Office of Tax Shelter Analysis.  Several days after the regulations were issued, the Acting Assistant Secretary of the Treasury appeared before the Senate Finance Committee to explain the regulations.  Testimony of J. Talisman, Senate Finance Comm., 2000 WL 272139 (March 8, 2000).  Mr. Talisman specifically discussed the proposed listed transaction rules and Notice 2000-15.

Over the next four years, Congress and Treasury continued to communicate regarding the effectiveness of the listed transaction reporting regime, including the use of notices to identify specific listed transactions.  For example, the staff of the Joint Committee on Taxation explained to Congress, in a report entitled *Background and Present Law Relating to Tax Shelters*:  "When the Treasury Department and the IRS determine a transaction has a tax avoidance purpose, a notice is issued informing taxpayers of the details of such transaction."  Joint Committee on Taxation, JCX-19-02, 2002 WL 34255160, at *24 (March 19, 2002).  The report even cites an example of a listed transaction notice, Notice

2002-21.  *Id.* at \*24 n.138.  The Chief Counsel of the IRS also testified regarding

the issuance of IRS Notice 2002-21.  Statement of B. John Williams, Senate

Finance Committee, 2002 WL 453684 (March 21, 2002).  Similarly, an IRS

representative told the committee that "disclosure is the key to shutting down tax

shelters. . . .  Timely notices have been our most cost-effective tool in stopping

these transactions."  Statement of L. Langdon, Senate Finance Committee, 2002

WL 442814 (March 21, 2002).

Treasury finalized the regulation in 2003; the final regulation retained the

provision that permitted Treasury to identify listed transactions by notice.  68 FR

10161-01, 10164 (March 4, 2003).  At subsequent hearings, officials testified

regarding the regulation and Treasury's efforts to fight abusive tax schemes,

including as to notices identifying listed transactions.  For example, in October of

2003, the IRS Commissioner testified regarding two schemes identified as listed

transactions by notice, addressed the importance of rapidly identifying and listing

abusive transactions, and discussed efforts to identify abusive schemes more

quickly.  Testimony of M. Everson, Senate Finance Committee, 2003 WL

22414873 (Oct. 21, 2003).  The Director of Tax Issues at the Government

Accounting Office even presented a chart showing the timeline of the IRS's

announcement of listed transactions, the vast majority of which were by notice:



Figure 2: Cumulative Number of Listed Transactions over Time, 1990–mid-August 2003, and Transaction Descriptions

Source: Compiled by GAO from IRS information.

Testimony of M. Brostek, Senate Finance Committee, at 8, *at*

*https://www.finance.senate.gov/imo/media/doc/102103btest.pdf* (Oct. 21, 2003).

The Commissioner of the IRS also testified in June of 2004 about schemes

identified as listed transactions by notice.  Testimony of M. Everson, Senate

Finance Committee, 2004 WL 1400023 (June 22, 2004); *see also* Testimony of M.

Everson, Senate Governmental Affairs Committee, Permanent Subcommittee on

Investigations, 2003 WL 22754245 (Nov. 20, 2003) (responding to committee

Page 22 of 35

request for information with number of disclosures for listed transactions described in Notices 99-59, 2000-44, and 2001-45).

It was against this backdrop, and in light of the regulation, that Congress enacted the current definition of "listed transaction," in 26 U.S.C. § 6707A(c)(2), added as part of the American Jobs Creation Act of 2004, Pub. L. 108-357.  *See, e.g.,* H.R. Conf. Rep. 108-755, at 1649 (2004) (discussing 26 C.F.R. § 1.6011-4); H. Rep. 108-548 at 260-61 (2004) (same).  Congress also imposed penalties for failure to report listed transactions.  26 U.S.C. § 6707A(a).

Congress thus wrote the definition of "listed transaction" in 26 U.S.C. § 6707A with a full understanding that Treasury was identifying listed transactions by notice and that the regulations explicitly endorsed this practice.  By that time, the regulation had been proposed, reviewed, and finalized; Treasury had issued multiple listed transaction notices; and Treasury officials had testified repeatedly before Congress regarding the identification of listed transactions by notice.  The regulation, including the provision that listed transactions may be identified by notice, is thus deemed to have received congressional approval.  *See Raymond v. United States*, 983 F.2d 63, 66 (6th Cir. 1993) ("Treasury regulations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.") (quotation marks omitted); *U.S. v. Cleveland Indians Baseball*

*Co.*, 532 U.S. 200, 220 (2001) (same); *United States v. Bailey*, 34 U.S. (9 Pet.) 238, 256 (1835) (Story, J.) ("Congress must be presumed to have legislated under this known state of the laws and usage of the treasury department.").

Plaintiffs' argument, if it were correct, would undermine the entire listed transaction reporting regime. Of the thirty-six current listed transactions, thirty-two were identified by notice. But in light of the timeline of the development of the listed transaction regime, Plaintiffs cannot maintain that Congress disapproved of Treasury's use of notices to identify listed transactions or that Congress intended to impose notice-and-comment procedures.

### 4. Subsequent statutory developments confirm that Congress intended for Treasury to identify listed transactions by notice.

Congress' involvement with the listed transaction reporting regime did not stop with the enactment of Section 6707A. Congress has continued to investigate abusive tax schemes, including scrutinizing the listed transaction regime. For example, in 2005, the Chief of Staff of the Joint Committee on Taxation testified that committee staff examined every listed transaction, as well as other tax schemes, to inform their legislative proposals. Statement of G. Yin, Senate Finance Committee, 2005 WL 864031 (Apr. 14, 2005). And Treasury and IRS officials continued to testify about listed transactions, including the notices used to identify them as such. *See, e.g.,* Testimony of M. Everson, Senate Finance

Committee, 2005 WL 760111 (Apr. 5, 2005) (describing the issuance of several IRS notices). A report by the Senate Permanent Subcommittee on Investigations from this period specifically noted that Treasury identifies listed transactions by notice and discussed various IRS notices. *The Role of Professional Firms in the U.S. Tax Shelter Industry*, Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, S. Rep. 109-54, at 3 and *passim* (2005); *see also* Testimony of M. Everson, House Ways and Means Comm., 2006 WL 1967432 (July 13, 2006) (discussing Notice 2004-67).

Congress responded not by revising the statute to alter the procedures, but by enacting penalties for non-profit organizations that engage in listed transactions. *See* Tax Increase Prevention and Reconciliation Act of 2005 § 516, Pub. L. 109-222 (enacting 26 U.S.C. § 4965). The legislative history to the statute observes that Treasury was identifying listed transactions by notice. *See, e.g.,* H.R. Conf. Rep. 109-455 at *125 (2006) (stating that Treasury identifies listed transactions "by notice, regulation, or other form of published guidance").

In 2010, Congress again amended Section 6707A, this time to enhance the penalties for failure to report a listed transaction. Small Business Jobs Act of 2010 § 2041(a), Pub. L. 111-240. The Joint Committee on Taxation's General Explanation of Tax Legislation Enacted in the 109th Congress at 320, JCS-1-07, *at* https://www.jct.gov/publications.html?func=startdown&id=2023, describes the use

of notices to identify listed transactions as part of its explanation of current law. And again, the statute did not alter the procedures for the identification of listed transactions. By that time, the regulations permitting identification of listed transactions by notice had been in place for a decade. Congress' enhancement of the penalties while leaving the procedure untouched again demonstrates its approval of the regulation.

In light of the long history of Congress and Treasury working together to fight abusive tax schemes, and the clear legislative record approving of Treasury's use of notices to list transactions, Count 4 is untenable. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (according weight to agency's interpretation where "Congress has frequently amended or reenacted the relevant provisions without change"). Plainly, Congress did not intend for Treasury to identify listed transactions only by regulation. *Cf. Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998) ("[W]hen Congress sets forth specific procedures that 'express[] its clear intent that APA notice and comment procedures need not be followed,' an agency may lawfully depart from the normally obligatory procedures of the APA.") (quoting *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1237 (D.C. Cir. 1994)).

**III.    The Complaint does not state a claim for refund of the listed transaction penalties because Plaintiffs admit engaging in conduct that is subject to the penalty.**

Congress prescribed a penalty for taxpayers who engage in a listed transaction and fail to report that transaction in accordance with the regulations. 26 U.S.C. § 6707A.  To state a claim for a refund of the penalty, Plaintiffs would have to plead facts that either distinguish their transaction from the transaction described in the Notice, or show that they complied with the reporting rules. Instead, Plaintiffs' own description of their transaction establishes that they engaged in a listed transaction – the allegations in the Complaint demonstrate that their transaction meets the elements of Notice 2007-83.  And Plaintiffs do not allege that they reported the transaction in accordance with 26 C.F.R. § 1.6011-4. Thus, Plaintiffs fail to state a claim for a refund of the penalty.

**A.    The DBT/RPT satisfies each element of Notice 2007-83.**

The Amended Complaint alleges that Plaintiffs paid penalties for failure to report the DBT/RPT transaction in accordance with Notice 2007-83.  But the Amended Complaint makes clear that the transaction satisfies the elements of Notice 2007-83, and thus the IRS properly asserted the penalties.

Notice 2007-83 identifies as a listed transaction any transaction that has four specified elements and any transaction substantially similar to such a transaction. Notice 2007-83 at 4.  Accepting the allegations in the Amended Complaint as true,

Plaintiffs' transaction satisfies all four elements:

1. The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund. – Plaintiffs' transaction involves a trust that is claimed to be a welfare benefit fund. Compl. ¶¶ 47, 61, 63.

2. Contributions are not made in accordance with a collective bargaining agreement. – The Complaint does not allege that any contributions were made pursuant to a collective bargaining agreement.

3. The trust pays premiums on a life insurance policy that accumulates value either within the policy (*e.g.,* a cash-value life insurance policy) or outside the policy (*e.g.*, a side fund or agreement). – The trust acquired a whole-life insurance policy, a type of cash-value policy, and paid the premiums on the policy. Compl. ¶¶ 67, 72.

4. The employer's deductions for contributions to the fund exceed, in the case of insured benefits, insurance premiums for the year (other than premiums for a policy described in element 3, *i.e.*, a cash-value policy) and administrative expenses. – The Company claimed deductions equal to its entire contribution to the trust, virtually all of which constituted premiums for the cash-value policy. Compl. ¶ 85.

Each element is satisfied, and therefore Plaintiffs were required to report the transaction to the IRS's Office of Tax Shelter Analysis on IRS Form 8886. 26 C.F.R. § 1.6011-4(a), (d), (e).

Plaintiffs' arguments to the contrary are misplaced. Plaintiffs contend that because their transaction involves a trust that is an actual welfare benefit fund, not a "purported" welfare benefit fund, the first element is not met. This is a misunderstanding of the term "purported." Merriam-Webster defines "purported" as "reputed, alleged." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/purported (last visited Aug. 20, 2020). Regardless of

whether their trust is an actual welfare benefit fund, it is reputed or alleged to be a welfare benefit fund, and thus the first element is satisfied.

The third element – that the trust pay premiums on a life insurance policy that accumulates value – is satisfied as well.  The Complaint alleges that the trust acquired a whole-life policy, a type of cash value policy, Compl. ¶ 67, and the Complaint alleges that the policy accumulated cash value, *id.* ¶¶ 47, 81, 91.

Because the fourth element has a long definition, it may be helpful to walk through each part of the definition to see how it is satisfied here.  The fourth element is satisfied if the employer's deductions exceed the sum of four amounts.  Notice 2007-83 at 5.  The first amount, paragraph (a), relates to uninsured benefits provided under the plan.  Plaintiffs do not allege that any uninsured benefits were provided.  Paragraph (c) relates to tax years ending prior to November 5, 2007, which are not at issue here.  And paragraph (d) relates to certain medical benefits also not at issue here.  Thus, the fourth element is satisfied if the Company claimed deductions that exceed the items in paragraph (b).

Paragraph (b) has three components: (i) insurance premiums paid during the year for benefits in the taxable year, other than premiums for a cash-value policy; (ii) the same for premiums paid in prior years, and (iii) administrative expenses for the year.  Because the Company's transaction involves a cash-value life insurance policy, Compl. ¶¶ 47, 91, the premiums on that policy are excluded from (i) and

(ii).  The Company claimed deductions equal to the full amount of its contributions to the trust.  Compl. ¶ 85.  Because virtually all of the contributions went to pay premiums on a policy that accumulates cash value, not qualified premiums or administrative expenses, the Company's deductions exceeded the amount described in paragraph (b), and so element four is satisfied.

**B.      Because the elements are satisfied, Plaintiffs' arguments as to the intent of the Notice are irrelevant.**

The Court should summarily reject Plaintiffs' argument that their transaction is not described by the Notice because of "the failure of IRS Notice 2007-83 to address the impact and significance of a substantial risk of forfeiture, the hallmark feature of the Restricted Property Trust," dkt. no. 1-1 at 7-8, PageID.39-40, as it ignores the plain language of the Notice.  The Notice provides:  "Any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as 'listed transactions,'" Notice 2007-83 at 4.  The use of elements provides clear guidance as to which transactions must be reported.  It does not matter whether the transaction has other elements as well; if it did, scheme promoters could always add additional features on to transactions and then ignore the elements while claiming that their transactions were significantly different.  If the elements are met, the transaction is a listed transaction.

Likewise, Plaintiffs' assertion that Notice 2007-83 was not intended to capture transactions such as theirs is irrelevant.  Their transaction meets the

elements and therefore must be disclosed.  Plaintiffs argue that "[i]t is fairly

obvious that Notice 2007-83 was intended to prohibit deductions" in certain

circumstances that they claim do not apply to their transaction.  Dkt. no. 1-1 at 8,

PageID.40.  But Treasury included specific elements of the transaction exactly to

avoid the need to speculate about the intentions of the Notice.  To permit Plaintiffs

to engage in a free-wheeling and self-serving analysis of the intent behind the

Notice to the exclusion of its plain text creates vagueness and uncertainty where

none existed.  Notice 2007-83 provides four clear elements that identify the scope

of the listed transactions with specificity and certainty.  There is no need to go

beyond the plain text of the Notice, as the text is unambiguous.  Plaintiffs cannot

avoid compliance with the regulations by ignoring the Notice's plain language.[3]

Additionally, the statute requires disclosure of transactions that are

"substantially similar" to listed transactions, 26 U.S.C. § 6707A(c)(2), and the

regulations instruct that "the term substantially similar must be broadly construed

in favor of disclosure."  26 C.F.R. § 1.6011-4(c)(4).  All four elements are met

here, so this rule is not implicated.  But even were Plaintiffs' transaction to differ

from the transaction described in Notice 2007-83 in some technical manner, it

---

[3] If Plaintiffs were legitimately unsure as to whether their transaction had to
be reported, rather than just seeking to avoid detection, they could have requested a
ruling from the IRS, 26 C.F.R. § 1.6011-4(f)(1), or filed a protective disclosure, 26
C.F.R. § 1.6011-4(f)(2).  Plaintiffs did neither.

would remain substantially similar to the transaction described in the notice, and thus would still be a listed transaction.

## C.     Plaintiffs admit that they did not report the transaction as required.

There is no dispute that Plaintiffs failed to disclose the transaction in accordance with the regulations.  A taxpayer that participates in a listed transaction is required to file IRS Form 8886, *Reportable Transaction Disclosure Statement*, with the Office of Tax Shelter Analysis, and must then attach the form to its tax return each year that it participates in the transaction.  26 C.F.R. § 1.6011-4(d), (e). Plaintiffs do not allege that they filed Form 8886 and do not allege that they otherwise notified the Office of Tax Shelter Analysis about the transaction. Plaintiffs thus failed to comply with the disclosure requirement.

## D.     Plaintiffs' improper disclosure did not prevent tolling of the statute of limitations.

To prevent taxpayers from playing the "audit lottery" – engaging in abusive transactions and hoping the statute of limitations will expire before they are caught – Congress provided that if a taxpayer fails to report a listed transaction as required, the statute shall not expire before one year after the disclosure is made (or the promoter of the transaction reports the taxpayer's participation).  26 U.S.C. § 6501(c)(10).  If a taxpayer fails to disclose participation in a listed transaction as required, then the time for assessment will not expire before one year after "the

date on which the taxpayer makes the disclosure described in paragraph (g)(5) of this section . . . ." 26 C.F.R. § 301.6501(c)-1(g)(1). Paragraph (g)(5) provides detailed requirements for a taxpayer to submit a statement to start the running of the statute of limitations. The taxpayer must complete Form 8886, indicate on the form that it is being filed for purposes of Section 6501(c)(10), and file the form with the Office of Tax Shelter Analysis, together with a cover letter that attests, under penalties of perjury, that the Form 8886 is true, correct, and complete.

Plaintiffs did none of this. They do not allege that they filed a Form 8886 with the Office of Tax Shelter Analysis or that they provided a cover letter attesting to the accuracy of the form. Rather, they claim they completed a Form 8275 (a form used for other types of disclosure) and attached it to their tax return, which presumably was sent to an IRS return processing center. Compl. ¶ 10.[4]

Plaintiffs are attempting to do exactly what Congress intended to prevent: They engaged in a listed transaction and chose not to report it to the Office of Tax Shelter Analysis; now, having been caught, they argue that the IRS was too late because they affixed a different form to the back of their tax return and sent it to an IRS return processing center. This is meritless. Taxpayers cannot ignore the requirements of the regulations and create their own methods of compliance. The

---

[4] Plaintiffs cannot assert that they were unaware of their obligation to report the transaction, as their Form 8275 discusses why they chose not to do so. *See* dkt. no.1-1 at 7-8, PageID.39-40.

Internal Revenue Code provides that when required by a regulation, taxpayers "shall make a return or statement according to the forms and regulations prescribed by the Secretary." 26 U.S.C. § 6011(a). The regulations required Plaintiffs to file Form 8886, which discloses information about the transaction, with the Office of Tax Shelter Analysis. 26 C.F.R. § 1.6011-4(e). And the regulations provide that a late disclosure must also be made on Form 8886, filed with the Office of Tax Shelter Analysis, with a cover letter attesting to its contents under penalties of perjury. 26 C.F.R. § 301.6501(c)-1(g)(5). Filing a different form with a different office does not comply with the regulation. *Cf. In re Hindenlang*, 164 F.3d 1029, 1033 (6th Cir. 1999) (observing that tax returns are not solely intended to gather information, but also to gather that information in a manner that handling and verification can be readily accomplished) (citing *Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 233 (1944)). Plaintiffs failed to comply with the letter and purpose of the statute and regulation. They cannot avoid the tolling of the statute.

## IV.   There is no jurisdiction for injunctive or declaratory relief.

The Complaint can be read to seek injunctive or declaratory relief, but Plaintiffs lack standing to seek injunctive or declaratory relief because they do not allege they will suffer any future harm from Notice 2007-83, *i.e.,* they do not alleged they currently have or are about to invest in a DBT/RPT transaction. Moreover, the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory

Judgment Act, 28 U.S.C. § 2201, bar this relief.  Plaintiffs do not oppose this motion in respect of any claims for injunctive or declaratory relief.

### Conclusion

The Complaint should be dismissed with prejudice.


Dated: August 20, 2020                    Respectfully submitted,

                                          */s/ Arie M. Rubenstein*
                                          ARIE M. RUBENSTEIN
                                          Trial Attorney, Tax Division
                                          U.S. Department of Justice
                                          P.O. Box 55, Washington, D.C. 20044
                                          202-307-6588 (t) / 202-514-5238 (f)
                                          Arie.M.Rubenstein@usdoj.gov