UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MANN CONSTRUCTION, BROOK
WOOD, KIMBERLY WOOD, LEE
COUGHLIN, and DEBBIE COUGHLIN,

    *Plaintiffs,*

v.

UNITED STATES OF AMERICA,

    *Defendant.*

Case no. 1:20-cv-11307-TLL-PTM

---

**DEFENDANT UNITED STATES OF AMERICA'S**
**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# Table of Contents

I.   Introduction ..................................................................................................... 1
II.  Plaintiffs' APA counts fail to state a claim because they target the IRS's assessment activities, not the issuance of Notice 2007-83. ............................ 3
   A. Count 1 does not allege that the issuance of Notice 2007-83 is an unauthorized agency action. ................................................................... 3
   B. Plaintiffs have not pled that Notice 2007-83 is arbitrary and capricious ....... 4
      1. The IRS can identify a transaction as a listed transaction regardless of whether the transaction is "legal." ............................................. 4
      2. Plaintiffs' claim that Notice 2007-83 defines "qualified cost" is an unsupportable legal claim. ................................................................ 5
      3. The Notice plainly states the factors the IRS considered. ............... 6
   C. Notice 2007-83 is not a substantive source of law and thus did not require notice-and-comment procedures. ............................................. 7
III. The facts alleged in the Complaint demonstrate that Plaintiffs' transaction meets the elements of Notice 2007-83. ........................................ 8
   A. Plaintiffs do not allege any manner in which their transaction does not meet the elements of Notice 2007-83. ................................................... 8
      1. Element 3 is met because Plaintiffs allege that their trust paid the premiums on a cash-value life insurance policy. .............................. 9
      2. Element 4 is satisfied because Plaintiffs allege they deducted amounts in excess of the threshold amount. ................................. 10
   B. Plaintiffs' analysis of the Background section is irrelevant to whether their transaction meets the elements of Notice 2007-83. ..................... 12
IV.  Plaintiffs fail to state a claim that the statute of limitations expired. ........ 13
V.   Conclusion .................................................................................................. 15

## I. Introduction

IRS Notice 2007-83 notifies taxpayers that a certain type of transaction involving a trust that holds a cash-value insurance policy is a "listed transaction." Specifically, the Notice lays out four elements; a taxpayer who participates in a transaction with all four elements is required by 26 C.F.R. § 1.6011-4 to report the transaction to the IRS Office of Tax Shelter Analysis.

Plaintiffs engaged in a transaction – the "DBT/RPT" or "Benefits Trust" – that meets the four elements of the Notice, but they chose not to report it to the Office of Tax Shelter Analysis. Instead, they attached a form discussing the transaction to their tax return and sent it to an IRS return processing center.

The IRS discovered Plaintiffs' transaction and assessed a penalty for failure to disclose the transaction as required by 26 C.F.R. § 1.6011-4. Plaintiffs paid the penalty and are now suing for a refund of that penalty.

Plaintiffs seek to distract from their failure to report by asking the Court to adjudicate the tax treatment of their transaction and to pass judgment on IRS audit activities. But these are irrelevant to the issue to be decided: Whether Plaintiffs' transaction meets the elements of Notice 2007-83 and so was required to be reported, and whether Plaintiffs failed to report the transaction as required.

Plaintiffs also allege that the issuance of IRS Notice 2007-83 violated the Administrative Procedure Act (APA), but a review of their claims reveals a

fundamental flaw in their argument: Plaintiffs' allegations concern the manner in which an IRS auditor used the Notice in the course of their audit, not the Notice itself. Plaintiffs allege that the auditor is treating Notice 2007-83 as a source of law to deny them deductions. But complaints about an auditor's use of the Notice are not complaints about the Notice itself or the manner in which it was issued. If an auditor improperly denied Plaintiffs a deduction (on the basis of the Notice or otherwise), the remedy is to grant them the deduction, not to invalidate the Notice.

The only issue in this case is the penalty for not reporting a listed transaction. If Plaintiffs allege that an auditor improperly used the Notice to deny them a deduction during the audit of their returns, they can argue for the deduction in a suit concerning those returns. That allegation is irrelevant to whether the Notice was properly issued or whether they properly reported the transaction.

Plaintiffs also make a perfunctory argument that their transaction does not meet the elements of Notice 2007-83, but their argument ignores the plain language of the Notice. Because the facts alleged by Plaintiffs demonstrate that their transaction meets the elements of the Notice; because their APA arguments are directed toward audit activities, not the issuance of Notice 2007-83; and because Plaintiffs did not report their transaction as required, they are liable for the penalty and the Complaint fails to state a claim.

**II.    Plaintiffs' APA counts fail to state a claim because they target the IRS's assessment activities, not the issuance of Notice 2007-83.**

**A.    Count 1 does not allege that the issuance of Notice 2007-83 is an unauthorized agency action.**

Count 1 fails to state a claim because Plaintiffs have not pled that the issuance of Notice 2007-83 was an unauthorized agency action. Accepting *arguendo* Plaintiffs' allegation that an IRS auditor improperly used the Notice to deny them a tax deduction, this would not mean the Notice itself is invalid. If the IRS had the statutory authority to identify the transaction described in Notice 2007-83 as a listed transaction – and it did – then the Notice was validly issued. If an IRS auditor subsequently misused the Notice, then that misuse could be an unauthorized agency action, but that would not invalidate the Notice itself.

Notice 2007-83 serves only to identify a certain type of transaction as a listed transaction. It is not a law or a binding interpretation of a law. Plaintiffs assert that "the Notice is an unauthorized agency action in violation of the APA because the Notice improperly modifies Treasury Regulations and the [Internal Revenue Code]." Pl. Mem. at 2. Simply put: It does not. The Notice does not claim to modify any statute or regulation. It does not "substantively change[] the tax laws." *Id.* at 5. Plaintiffs assert that the Notice "purports to disallow deductions that are otherwise proper under the law," *id.* at 6, but Notice 2007-83 does not claim to disallow any deduction. The Internal Revenue Code determines

Page 3 of 15

entitlement to deductions. The Notice simply informs taxpayers that the transactions it describes are listed transactions and the IRS may challenge them based on the Internal Revenue Code and regulations issued thereunder.

Plaintiffs conflate an IRS auditor's activities with the issuance of the Notice. Plaintiffs assert that an auditor wrongfully used the Notice as substantive law during the examination of their tax return. For example, Plaintiffs argue that the Notice is an unauthorized agency action because in the course of the audit, the auditor disallowed certain tax benefits "pursuant to Notice 2007-83 serving as the so-called legal authority." *Id.* at 7. But misuse of the Notice would not invalidate the Notice itself. Accepting *arguendo* that an auditor referred to the Notice as a legal authority to deny Plaintiffs deductions to which they are entitled, the remedy would be for them to file a suit for refund. The purported unauthorized agency action is the denial of the deductions, not the issuance of Notice 2007-83. Count 1 thus fails to state a claim that the Notice is an unauthorized agency action.

### B. Plaintiffs have not pled that Notice 2007-83 is arbitrary and capricious.

#### 1. The IRS can identify a transaction as a listed transaction regardless of whether the transaction is "legal."

Plaintiffs' contention that Notice 2007-83 is arbitrary and capricious because it targets "legal" transactions fails to state a claim. Plaintiffs complain that "there are no laws prohibiting the use of cash value life insurance with respect to welfare

Page 4 of 15

benefit plans" and that the IRS "failed to consider plans that are allowable for income tax purposes." Pl. Mem. at 8, 9. But the IRS has the authority to identify transactions as listed transactions for reporting even if they are ultimately deemed to be "legal" or otherwise comply with the law. Every tax shelter proponent claims that their transaction is "legal." The statute penalizes failure to report a transaction the Secretary determines to be a "tax avoidance transaction" regardless of whether the transaction is legal; thus, the penalty for failure to disclose a listed transaction is computed without regard to whether the tax treatment is ultimately upheld. 26 U.S.C. § 6707A(b)(1); *see* Def. Mem. at 12. And the legislative history is clear that "imposition of [the] penalty is not dependent on the tax treatment of the underlying transaction ultimately being sustained," H.R. Rep. 108-548 at 261 (2004); *see* Def. Mem. at 12-13. Plaintiffs' argument is meritless.

### 2. Plaintiffs' claim that Notice 2007-83 defines "qualified cost" is an unsupportable legal claim.

Plaintiffs' complaint that Notice 2007-83 redefines "qualified cost" is wrong. "Qualified cost" is a limit on deductions for employee welfare plans. *See* 26 U.S.C. § 419((b) and (c). Plaintiffs complain that "the Notice defines the term 'qualified cost' in such a manner that it nullifies [26 C.F.R. §] 1.409A-1(a)(5). . . ." Pl. Mem. at 10. It does not. The Notice does not define "qualified cost" at all.

Plaintiffs may be arguing that an IRS auditor referred to the Notice during an audit involving "qualified cost." But this again would be a complaint about the

audit, not the Notice. Whether an auditor acted properly in their audit has no bearing on whether the Notice itself is arbitrary and capricious.

Plaintiffs' other arguments are irrelevant to whether the Notice is arbitrary and capricious. Plaintiffs argue that the Notice does not describe their transaction (Pl. Mem. at 9), that the IRS is applying the Notice improperly (*id.* at 10), and that they "reasonably understood" that the Notice did not describe their transaction because theirs was an "actual," not a "purported," welfare benefit plan (*id.* at 11). None of these arguments, if valid, would make the Notice arbitrary and capricious.

### 3. The Notice plainly states the factors the IRS considered.

Plaintiffs' allegation that "the Notice is completely devoid of any factors the IRS relied upon in promulgating the Notice," Pl. Mem. at 11, is false. More than half of the Notice constitutes a detailed description of the problem the Notice is targeting – abusive employee benefit plans that use cash-value life insurance to transfer value primarily to owners and other key employees – and an explanation of why these transactions may be abusive. *See* Notice 2007-83 at 1-4.

Plaintiffs are correct that many APA claims involve review of the administrative record, but merely invoking the APA does not excuse Plaintiffs of their burden to state a claim. Rule 12(b)(6) does not have an APA exception. Plaintiffs have not pleaded an APA claim, so there is no need for the Court to review the administrative record.

### C. Notice 2007-83 is not a substantive source of law and thus did not require notice-and-comment procedures.

Plaintiffs concede that if the Notice just identified a certain transaction as a listed transaction, notice-and-comment procedures would not be required. Pl. Mem. at 13. This is all it does. Plaintiffs' Count 3, that the IRS was required to issue the Notice using notice-and-comment procedures, thus fails to state a claim.

Plaintiffs again try to shift the focus to their audit. Plaintiffs argue: "The Plaintiffs' audit file . . . revealed the Plaintiffs' deductions were disallowed pursuant to the 'authority' of Notice 2007-83." *Id.* at 14. And Plaintiffs allege that "as will be proven through discovery, the IRS disallowed deductions claimed by Plaintiffs on the basis of the Notice." *Id.* at 15.

But an auditor's disallowance of Plaintiffs' deductions – even if done for the wrong reason, as they allege – is irrelevant to whether Notice 2007-83 was properly issued. If Plaintiffs are wrongfully denied a deduction, they can file a petition in Tax Court or they can pay the tax and sue for a refund.[1] Until then, the

---

[1] Plaintiffs cannot seek relief in this Court with respect to their claimed deductions until they pay the assessed tax. The statute provides, with exceptions inapplicable here: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person," 26 U.S.C. § 7421; *see RYO Mach. v. U.S. Dep't of Treas.*, 696 F.3d 467, 470 (6th Cir. 2012) ("With few exceptions, no court has jurisdiction over a suit to preemptively challenge a tax. This rule arises from a policy preference that those aggrieved by taxation pay the tax first, and then sue for a refund.") (citations omitted). Thus, Plaintiffs cannot raise in this case their allegations that an auditor is misusing Notice 2007-83 in their audit. This case is solely about the penalty they paid for failure to report a listed transaction.

propriety of their deductions is not before the Court. Improper use of Notice 2007-83 would not invalidate the Notice, and allegations of improper use do not state a claim for invalidation of the Notice.

Plaintiffs misunderstand the purpose of the Notice. They complain that the Notice "precludes the use of specific types of insurance products," Pl. Mem. at 15, and that it "proclaims that a welfare benefit plan can only use term insurance," *id*. This is wrong. The Notice identifies a specific transaction as a listed transaction – nothing more. It precludes nothing. It prohibits nothing. It simply notifies taxpayers who use cash-value insurance in certain employee benefit transactions that they must inform the Office of Tax Shelter Analysis in accordance with 26 C.F.R. § 1.6011-4. The Notice does not bar taxpayers from engaging in the transaction it describes. They simply must report that they are doing so.

If Plaintiffs are correct that an IRS auditor is wrongfully denying them deductions on the basis of Notice 2007-83, then their remedy is to file a petition with the Tax Court or to pay the tax and sue for a refund. But these allegations do not state a claim for the invalidation of Notice 2007-83 itself.

### III. The facts alleged in the Complaint demonstrate that Plaintiffs' transaction meets the elements of Notice 2007-83.

#### A. Plaintiffs do not allege any manner in which their transaction does not meet the elements of Notice 2007-83.

The United States' opening brief discusses how Plaintiffs' DBT/RPT

scheme meets all four elements of Notice 2007-83. Def. Mem. at 27-30. Plaintiffs argue that elements 3 and 4 are not satisfied, but the facts they allege demonstrate that the transaction does meet these elements.

### 1. Element 3 is met because Plaintiffs allege that their trust paid the premiums on a cash-value life insurance policy.

Element 3 is satisfied if a trust pays premiums on a cash-value life insurance policy. The element provides in relevant part: "(3) The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated either: (a) within the policy (for example, a cash value life insurance policy) . . . ." Notice 2007-83 at 4-5. Plaintiffs admit that their trust paid premiums on a cash-value life insurance policy. The element is thus satisfied.

Plaintiffs argue that this element is inapplicable because if they missed a premium payment, "the only beneficiary of the Restricted Property Trust is a charity," Pl. Mem. at 19, but they do not explain how this means the element is not met. They assert: "If the timely contribution to the [DBT] is not paid, then the welfare benefit fund terminates and *nothing will* be distributed to the employee." *Id.* at 20 (emphasis in original). Whether or not anything is distributed to the employee has nothing to do with element 3.

Plaintiffs' trust paid premiums on a cash-value life insurance policy – exactly what is described in element 3. The Notice says nothing about the

Page 9 of 15

beneficiary of the trust or any distributions. Plaintiffs' argument is meritless.

### 2. Element 4 is satisfied because Plaintiffs allege they deducted amounts in excess of the threshold amount.

As discussed in the United States' opening brief, Def. Mem. at 29-30, element 4 is satisfied if the taxpayer claimed a deduction that exceeds, for insured benefits, the insurance premiums other than premiums paid for a cash-value life insurance policy, plus administrative expenses:

> (4) The employer has taken a deduction for any taxable year for its contributions to the fund . . . that is greater than the sum of the following amounts: . . .
> (i) insurance premiums paid during the taxable year that are properly allocable to the taxable year **(other than premiums paid with respect to a policy described in (3)(a) or (b) above)**; plus . . .
> (iii) amounts paid . . . for administrative expenses . . . .

Notice 2007-83 at 5 (emphasis added). Element 3(a) refers to cash-value insurance policies. Plaintiffs claim a person of ordinary intelligence would not understand that cash-value policy premiums are not included, Pl. Mem. at 27, but the bolded language is very clear. Its effect is that if a trust holds only a cash-value life insurance policy – as was the case here – then the amount in element 4(i) is zero.

Plaintiffs do not contest that they claimed deductions for the insurance premiums. Instead, they argue that they "only deducted insurance premiums equal in amount to the current cost of insurance plus administrative expenses for each year." *Id.* at 18. But that is exactly the point. The insurance premiums they deducted were for a policy described in element 3(a) – a cash-value policy – and

therefore are not included in the threshold. They do not allege that they had any administrative expenses. The threshold is thus zero and the element is satisfied.

Plaintiffs again try to portray the Notice as barring their transaction, but it does nothing of the sort. Plaintiffs argue that the law allows them to deduct these premiums, while the Notice "provides that if the premium is paid with respect to a policy described in Element III, then the amount allowed to be deducted cannot exceed $0." *Id.* at 19. This is wrong. The Notice does not (and cannot) limit any deduction. It does not disallow deductions in excess of the threshold in element 4. It states, simply, that if a higher deduction is claimed, and the other elements are met, the transaction must be reported.

Plaintiffs make this error repeatedly. They allege: "The disallowance of a tax deduction created by the Notice is markedly inconsistent with the legislative history of IRC § 419." *Id.* And Plaintiffs cite *Curcio v. Commissioner*, 689 F.3d 217 (2d Cir. 2012), where the Second Circuit affirmed penalties against and denial of deductions for participants in a purported welfare benefit plan, to argue that it is legal to use a cash-value life insurance policy in a welfare benefit plan. Pl. Mem. at 26. But the Notice does not disallow any deduction or prohibit any transaction. It simply identifies a transaction that must be reported.

Plaintiffs allege that they deducted premiums for a cash-value life insurance policy. Element 4 is thus satisfied.

### B. Plaintiffs' analysis of the Background section is irrelevant to whether their transaction meets the elements of Notice 2007-83.

To avoid the straightforward conclusion that their transaction meets the elements and therefore must be reported, Plaintiffs attempt to shift the focus to various phrases in the Background section. Pl. Mem. at 17-25. But the purpose of using elements is to provide clarity and certainty about which transactions need to be reported, precluding the need for this type of analysis. *See* Def. Mem. at 30-31. Permitting taxpayers to disregard the elements in favor of a self-serving and subjective analysis of the introductory language would trade that certainty for vagueness and would reward negligence and abuse.

Plaintiffs try to focus on whether they are entitled to the tax deductions they claimed, but that is not at issue here. It is irrelevant whether their transaction is "valid" and it is irrelevant whether the "risk of forfeiture" is "substantial." If their transaction meets the elements of Notice 2007-83 – and it does – then it must be reported – regardless of any risk of forfeiture, regardless of whether the transaction is valid, and regardless of how Plaintiffs interpret the Background section.[2]

---

[2] Plaintiffs deny they are arguing Notice 2007-83 is void for vagueness, but they argue the Notice should be invalidated because it is ambiguous. Pl. Mem. at 22-25. To the extent they are arguing that the Notice does not adequately describe the transactions it targets, this is a vagueness argument. As discussed in the United States' opening brief, the Notice is not void for vagueness. *See* Def. Mem. at 9-13.

### IV. Plaintiffs fail to state a claim that the statute of limitations expired.

Plaintiffs chose not to disclose their transaction to the IRS Office of Tax Shelter Analysis, as they were required to do by 26 U.S.C. § 6011 and 26 C.F.R. § 1.6011-4. Instead, they attached a generic disclosure form to the back of their tax return and mailed it to an IRS return processing center. The statute states that if a taxpayer fails to provide information about a listed transaction, the statute of limitations will not expire before one year after "the Secretary is furnished the information so required," 26 U.S.C. § 6501(c)(10).

At issue is the interpretation of the phrase "the Secretary is furnished the information so required." Plaintiffs contend that because they attached a description of the transaction to the tax return they sent to an IRS return processing center, the Secretary was furnished with the information, and so the statute was not extended. The United States interprets the phrase to mean that the information must be provided to the IRS officials designated by the regulation to receive it – the Office of Tax Shelter Analysis.[3]

The plain language of the statute comports with the United States' interpretation. In the Internal Revenue Code, "Secretary" is defined as "the Secretary of the Treasury or his delegate," 26 U.S.C. § 7701(a)(11)(B), and

---

[3] 26 C.F.R. § 1.6011-4 also requires a participant in a listed transaction to complete Form 8886 and attach the form to its tax return. The United States' position is that compliance with this rule is required by the statute.

"delegate" is defined as "any officer, employee, or agency . . . duly authorized . . . to perform the function mentioned or described in the context," *id.* § 7701(a)(12)(A). Thus, 26 U.S.C. § 6501(c)(10) provides that the statute of limitations will not lapse until at least one year after the Treasury Department officials authorized to receive the information are furnished that information. Those officials are the staff of the Office of Tax Shelter Analysis. And the legislative history shows Congress' intent that the provision apply if "the taxpayer fails to disclose [the] transaction in the manner required by Treasury regulations." H.R. Rep. 108-548(1), at 267 (2004); S. Rep. 108-192, at 112 (2003).

Plaintiffs cite *United States v. May*, 691 F. App'x 334 (9th Cir. 2017), in which the Ninth Circuit adopted the United States' interpretation. The court held that "Congress expressly required taxpayer compliance with the IRS's determination of how listed transactions are to be reported," which is 26 C.F.R. § 1.6011-4 – filing Form 8886 with the Office of Tax Shelter Analysis. *Id.* at 336.

Plaintiffs rely on the dissent, but it does not support their position. Judge Clifton disagreed with the majority that the statute was unambiguous, but he did not believe that just any disclosure would satisfy the statute: "I have no quarrel with the Government's position that the taxpayer should be required to provide the relevant information in a coherent form to the appropriate tax agents. An interpretation that started the limitations period as soon as some IRS office,

somewhere, had the information or as soon as IRS agents collectively had the information would be both illogical and open to abuse." *Id.* at 337 (Clifton, J. dissenting). But that is exactly Plaintiffs' interpretation. The "appropriate tax agents" are the staff of the Office of Tax Shelter Analysis. Plaintiffs did not notify the Office of Tax Shelter Analysis. Rather, they assert that because they described the transaction on a form mailed to a return processing center, an IRS office somewhere had the information and so the statute expired. This is the "illogical and open to abuse" interpretation that both the majority and the dissent rejected.

## V. Conclusion

For the reasons stated above, Plaintiffs complaint should be dismissed. Plaintiffs seek to replead, but do not identify the allegations they might add; regardless, no additional facts would lend their flawed legal theories merit. The United States respectfully requests that the Complaint be dismissed with prejudice.

Dated: September 24, 2020             Respectfully submitted,

                                                       */s/ Arie M. Rubenstein*
                                                       ARIE M. RUBENSTEIN
                                                       Trial Attorney, Tax Division
                                                       U.S. Department of Justice
                                                       P.O. Box 55, Washington, D.C. 20044
                                                       202-307-6588 (t) / 202-514-5238 (f)
                                                       Arie.M.Rubenstein@usdoj.gov