UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MANN CONSTRUCTION, INC.,
BROOK WOOD, KIMBERLY WOOD,
LEE COUGHLIN, and DEBBIE COUGHLIN,

                Plaintiffs,

v.                                        Case No. 20-11307

                                        Honorable Thomas L. Ludington

INTERNAL REVENUE SERVICE
and UNITED STATES OF AMERICA,

                Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
TO DISMISS AND DISMISSING THE COMPLAINT IN PART**

On May 26, 2020, Plaintiffs Mann Construction, Inc., Brook Wood, Kimberly Wood, Lee
Coughlin, and Debbie Coughlin filed a complaint against Defendants, the Internal Revenue
Service (the "IRS" or the "Service") and the United States of America, seeking refund of a
penalty as well as declaratory and injunctive relief regarding IRS Notice 2007-83. ECF No. 1.
On August 20, 2020, Defendant, the United States of America, filed a motion to dismiss.[1] ECF
No. 15. Plaintiffs filed a response brief on September 10, 2020, to which Defendants replied.
ECF Nos. 18, 19. Plaintiffs have since moved for leave to file a surreply brief. ECF No. 20. For
the reasons stated below, Defendant's motion will be granted in part and denied in part, Counts I,
II, and IV will be dismissed and Plaintiffs' motion for leave to file a surreply brief will be denied
as moot.

---

[1] Since Defendant's motion to dismiss, the parties have made no mention of the IRS as a separate Defendant. No
explanation has been provided. Accordingly, the only "Defendant" referred to in this opinion is the United States of
America.

# I.

## A.

This case concerns a conflict familiar to federal courts: a dispute between the IRS and a group of taxpayers who believe they have paid too much tax. Unlike the ordinary case, however, the parties here are not litigating the payment of a tax but the payment of a penalty—a penalty that, by operation of the Internal Revenue Code, Treasury regulations, and IRS tax guidance, is imposed regardless of whether any tax is owed. This penalty has its roots in a reporting regime that is administered by the IRS and built on the notion that "the best way to combat tax shelters is to be aware of them." H.R. Rep. 108-548, at 261 (2004).

Many taxpayers want to "shelter" their income by deferring or reducing their tax liability. Some of these shelters, like certain employee welfare benefit funds, have received Congressional blessing. *See* 26 U.S.C. § 419. Others have not. In the early 1980s, Congress confronted the "growing phenomenon of abusive tax shelters" with legislation targeting tax shelter promoters.[2] S. Rep. 97-494, at 266 (1982). Shortly after enacting civil and criminal penalties in I.R.C. §§ 6700 and 6701 for promoters, Congress passed the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494 (1984), which added I.R.C. §§ 6111, 6112, 6707, and 6708. Sections 6111 and 6112 required tax shelter "organizers" to register the shelters in a manner prescribed by the Treasury and to maintain a list of investors. These requirements were enforced by civil penalties in §§ 6707 and 6708. Congress designed a reporting regime because, without one, "promoters kn[ew] that even if a tax scheme they market is clearly faulty, some investors' incorrect returns will escape detection." H.R. Rep. 98-432, at 1351 (1984). The tax shelters of the 1970s and 80s

---

[2] The history of the IRS reporting regime is discussed in greater detail in Michael I. Saltzman, IRS Practice and Procedure ¶ 7B.18 (2020).

were eventually curtailed by the Tax Reform Act of 1986, Pub L. 99-514, 100 Stat. 2716 (1986), which added I.R.C. § 469 to limit passive activity losses.

By the 1990s, a new generation of tax shelters had emerged, and regulators felt that the rules at their disposal were not up to the challenge. Saltzman, *supra*, ¶ 7B.18. The Treasury thus issued temporary regulations under I.R.C. § 6011 requiring corporate taxpayers to disclose their participation in "reportable transactions." 65 Fed. Reg. 11,205 (Mar. 2, 2000). Notably, whether a transaction was "reportable" turned on whether it was the "same as or substantially similar to" a "listed transaction," as identified by the IRS. *Id.* The Treasury continued to develop its flexible reporting regime over the following years but lacked authority to penalize taxpayers for failure to disclose. Saltzman, *supra*, ¶ 7B.18. Congress addressed this problem in 2004 by passing the American Jobs Creation Act of 2004, Pub L. 108-357, 118 Stat. 1418 (2004), which created I.R.C. § 6707A. Section 6707A laid the statutory foundation for the new reporting regime by establishing penalties for nondisclosure and defining "reportable transaction" and "listed transaction" by reference to Treasury regulations. *See* 26 U.S.C. § 6707A.

Since then, the IRS has identified many listed transactions by notice, in effect requiring taxpayers to disclose their participation or face substantial penalties under I.R.C. § 6707A. One of these IRS notices is IRS Notice 2007-83, the subject of controversy here.

## B.

Employers sometimes provide life insurance coverage to employees through special trusts or organizations ("welfare benefit funds") and deduct at least part of their contributions under I.R.C. § 419. *See* Edwin T. Hood & John J. Mylan, 1 Federal Taxation of Close Corporations § 2:49 (2020). Often, the welfare benefit fund will offer "group term life insurance," which, for a limited time, provides a death benefit to participating employees in

exchange for a premium—most or all of which is paid by the employer. Julia Kagan, *Group Term Life Insurance*, Investopedia (Jul. 4, 2020), https://www.investopedia.com/terms/g/group-term-life-insurance.aspEmployers [https://perma.cc/HDN5-2ZPN]. Employers can deduct the cost of premiums up to the "qualified cost" of the welfare benefit fund, which is typically the current cost of insurance. *See* 26 U.S.C. § 419(b); *see also Neonatology Assocs., P.A. v. Comm'r*, 299 F.3d 221, 229 (3d Cir. 2002) (finding "contributions in excess of the amounts necessary to pay for annual term life insurance protection" nondeductible).

This case concerns a similar arrangement involving "cash value life insurance," also called "whole life insurance."[3] Cash value life insurance is commonly understood as an investment vehicle combining permanent life insurance coverage with a cash value investment account. Julia Kagan, *Cash Value Life Insurance*, Investopedia (Jul. 8, 2020), https://www.investopedia.com/terms/c/cash-value-life-insurance.asp [https://perma.cc/SLS2-358E]. Whole life insurance ordinarily offers a guaranteed minimum rate of return on the cash value, regular premium rates, and a guaranteed death benefit. *See* Ryan Frailich, *Forbes Guide to Whole Life Insurance*, Forbes (Mar. 27, 2020), https://www.forbes.com/advisor/life-insurance/whole-life-insurance/ [https://perma.cc/2Q5X-T9C2]. Other forms of cash value life insurance offer the same features in different varieties. "Universal life insurance," for example, usually provides a variable rate of return, as well as an adjustable death benefit and premium. Ashley Chorpenning, *Understanding Universal Life Insurance*, Forbes (Jul. 17, 2020), https://www.forbes.com/advisor/life-insurance/universal-life-insurance/ [https://perma.cc/Z5S9-LBL5].

---

[3] The operation and tax consequences of whole life insurance are further discussed in *Am. Elec. Power, Inc. v. United States*, 136 F. Supp. 2d 762, 766–67 (S.D. Ohio 2001) (discussing the operation of whole life insurance in the context of the sham transaction doctrine), *aff'd sub nom. Am. Elec. Power Co. v. United States*, 326 F.3d 737 (6th Cir. 2003).

Whole life insurance is usually priced above term life insurance to accommodate the fact that part of the regular premium funds the cash value component in addition to the death benefit. *Id*. The policyholder can, under certain terms, borrow or withdraw the cash value, which accumulates on a tax-deferred-basis like a qualified 401(k) or IRA plan. *Id.* However, the restrictions on the death benefit, coupled with the limited rate of return on the cash value, make whole life insurance a particularly long-term and conservative form of investment. *Id.*

## II.

### A.

Plaintiffs Brook Wood and Lee Coughlin and their respective spouses, Kimberly Wood and Debbie Coughlin, are Michigan residents. ECF No. 1 at PageID.2. Brook Wood and Lee Coughlin are the sole and co-equal shareholders of Mann Construction, Inc. ("Mann Construction"), a Michigan corporation. Mann Construction is "a general contractor that also provides construction management and design-build services." *Id.* at PageID.15. In addition to being owners, Wood and Coughlin are "key employees" of Mann Construction. *Id.* at PageID.16. Mann Construction is an "S-Corporation," having elected to be taxed under Subchapter S of Chapter 1 of the Code. *Id.* As a result, income to Mann Construction is "passed through" to Wood and Coughlin.

In 2013, Mann Construction established the Mann Construction, Inc. Death Benefit Trust and Restricted Property Trust (the "Benefits Trust" or the "DBT/RPT").[4] *Id.* at PageID.15. Plaintiffs describe the rather complex operation of the DBT/RPT in a document supporting their 2013 Form 8275 (Disclosure Statement). *See* ECF No. 1-1. Plaintiffs included the same Form 8275 and supporting document as an exhibit to their complaint. *Id.* Plaintiffs discuss the DBT/RPT as follows:

---

[4] Other taxpayers have participated in "identical DBT/RPT benefit plans." ECF No. 1 at PageID.12.

In Tax Year 2013, on or about December 17, 2013, Taxpayer [Mann Construction] established two irrevocable trusts, known as the Mann Construction, Inc. Death Benefit Trust and the Mann Construction, Inc., Restricted Property Trust. The terms and conditions of each Trust are more fully set forth in a certain Mann Construction, Inc. Benefits Trust Agreement (herein called the "Trust Agreement"). Pursuant to the Trust Agreement, the Death Benefit Trust and Restricted Property Trust are irrevocable. Each Trust is a taxable trust under Subchapter J of the Internal Revenue Code. The Trustee of each Trust is Aligned Partners Trust Company, an independent third-party trustee. The business and tax purposes of the Trust are as follows: (1) with respect to the Death Benefit Trust, the purpose is to further the development or continuation of the taxpayer's business and contributions, which are made in furtherance of a *bona fide* profit objective independent of tax consequences; and (2) with respect to the Restricted Property Trust, the purpose is to provide the employee an appreciating property interest, namely a beneficial interest in the Restricted Property Trust, that is subject to a substantial risk of forfeiture, in consideration for employee's continued provision of valuable services to Taxpayer. Contributions to the Restricted Property Trust are not deductible by the Taxpayer unless, as the employee has done, the employee includes such contribution in income currently by filing an Internal Revenue Code ("IRC") Section 83(b) election. The facts and circumstances of the Death Benefit Trust, in particular the triggering of the substantial risk of forfeiture if the base policy premium (*i.e.*, the current cost of the death benefit) is not received by the independent third party trustee, clearly establishes that the Death Benefit Trust is established in furtherance of a *bona fide* profit objective independent of tax consequences, and moreover is intended to incentivize and retain key employees. *See* [*Curcio v. Comm'r*, 689 F.3d 217, 225 (2d Cir. 2012)] and [*Schneider v. Comm'r*, 63 T.C.M. (CCH) 1787 (T.C. 1992)].

The Taxpayer's agreement to make contributions to the Death Benefit Trust arises from a certain Death Benefit Agreement entered into between the Taxpayer and employee. Therein the Taxpayer agrees to make contributions to the Death Benefit Trust in an amount not to exceed the base policy premium with respect to a pure whole life insurance policy owned by the Death Benefit Trust, insuring the employee. Nevertheless, the Taxpayer's agreement to make the annual Death Benefit Trust contribution is dependent upon available cash of the Taxpayer and the employee continuing as an employee (as the entire and sole purpose of the Death Benefit Trust is to pay the current cost of the death benefit). Likewise, the construct of the Death Benefit Trust is such that the Trustee must receive in each year following the effective date of the Death Benefit Trust, a contribution with respect to the employee that is not less than or more than the base policy premium with respect to the whole life policy insuring the employee. If the Trustee does not receive the required contribution to the Death Benefit Trust, and the employee has not previously died, then the whole life insurance contract lapses, leading to a forfeiture of the entire cash surrender value of the policy to a designated

charitable organization; this latter such transfer is from the Restricted Property Trust based on the substantial risk of forfeiture inherent in this latter Trust.

The Trustee of the Death Benefit Trust is required to use the contributions from Taxpayer to pay the base policy premium with respect to the whole life insurance policy insuring the employee. The whole life insurance policy contract specifically provides that the current cost of the life insurance protection under the policy (plus administrative costs and expenses) is an amount equal to the base policy premium. The base policy premium for the policy on the present participating employees' lives is $70,000.00. The Trustee of the Death Benefit Trust is the owner and beneficiary of the life insurance policy; provided, however, the Trustee has no legal right to access the cash values; similarly, neither the Taxpayer, nor the insured employee, has access to the cash value. The Trustee holds legal title to the policies. The beneficial owners of the Death Benefit Trust are either the beneficiary designated by the employee to receive the death proceeds and, in all other cases, the Restricted Property Trust. The beneficial owners of the Restricted Property Trust are the employee if the risk of forfeiture does not occur and an IRC Section 501(c)(3) charitable organization if the risk of forfeiture does occur.

The whole life insurance policy contract provides that if the base policy premium is not timely paid, the policy will lapse. Likewise, the Death Benefit Trust, which is the owner of the whole life insurance policy, buttresses the contractual language inherent in the policy insofar as if the Trustee does not receive a contribution sufficient to pay the base policy premium, then, in accordance with the Death Benefit Trust provisions, the entire cash surrender value is paid to the Restricted Property Trust. This transfer to the Restricted Property Trust is in satisfaction of the Restricted Property Trust's security interest. No prepayment of subsequent year base policy premiums is permissible; similarly the Trustee of the Death Benefit Trust cannot borrow from the cash surrender value to fund base policy premium obligations. Furthermore, if a base policy premium is not timely received by the Trustee, the Trustee of the Death Benefit Trust is required to surrender the policy and receive the cash surrender value proceeds. The Trustee is then required to pay the cash surrender value proceeds to the Restricted Property Trust, which in turn, in accordance with the terms of the Restricted Property Trust, must transfer the cash surrender value to an IRC Section 501(c)(3) charitable organization (discussed below).

If Taxpayer makes the base policy premium contributions to the Death Benefit Trust throughout the term of the Restricted Property Trust and the Death Benefit Trust (*i.e.*, five (5) years), then the employee becomes vested in the assets of the Restricted Property Trust. The asset owned by the Restricted Property Trust is the cash surrender value of the policy insuring the employee. At this time, the entire value of the Restricted Property Trust becomes taxable to the employee, in accordance with IRC Section 83. Accordingly, the Trustees of the Restricted Property Trust and Death Benefit Trust shall execute such documents as

necessary to transfer the policy (inclusive of its cash value) to the employee. This transfer is taxable to the employee.

Pursuant to a certain Restricted Property Agreement entered into between Taxpayer and employee, the Taxpayer agrees to makes certain contributions to Aligned Partners Trust Company, Trustee of the Restricted Property Trust. All contributions to the Restricted Property Trust are to be invested by the Trustee of the Restricted Property Trust as paid-up additions with respect to the life insurance policy owned by the Death Benefit Trust. In no event can the investment by the Restricted Property Trust be used by the Death Benefit Trust to fund the base policy premium for the current year or any future years. To secure the Restricted Property Trust's investment in the Death Benefit Trust, the Death Benefit Trust shall grant to the Restricted Property Trust a security interest covering the entire cash value of the whole life insurance policy.

In the event the policy lapses, due to Taxpayer's failure to make a base policy premium contribution during the term of the Death Benefit Trust (*i.e.*, five (5) years), the cash surrender value proceeds attributable to such lapse are required to be paid to the Restricted  Property Trust in full satisfaction of the security interest previously granted by the Death Benefit Trust. In accordance with the terms of the Restricted Property Trust, to the extent this lapse occurs prior to the expiration of the term of the Restricted Property Trust (*i.e.*, five (5) years), the Restricted Property Trust shall transfer the entirety of the cash surrender value received to a charitable organization previously designated by the employee.

Accordingly, the employee's rights with respect to the amounts invested as paid-up additions, and the entirety of the cash surrender value, are subject to a substantial risk of forfeiture (within the meaning of IRC Section 83). In other words, if either the employee terminates employment with the Taxpayer, or if the Taxpayer does not make the necessary contribution to the Death Benefit Trust to pay the base policy premium during the term of the Restricted Property Agreement, or if the Taxpayer terminates the Death Benefit Trust, then the whole life insurance policy will lapse and the cash surrender value proceeds shall be transferred by the Trustee, in accordance with the express language of the Restricted Property Trust, to an IRC Section 501(c)(3) charitable organization. Therefore, the employee will not be entitled to receive the cash surrender value of such life insurance policy. Having said that, if none of the preceding events occur prior to the lapse of the Restricted Property Trust (*i.e.*, five (5) years) then, at that time, the Trustee of the Restricted Property Trust shall transfer the life insurance policies to the respective employees, who shall include in gross income the value of the life insurance policy received, less any amounts previously included in gross income pursuant to any elections made by such employee under IRC Section 83(b).

Pursuant to the terms of the Restricted Property Agreement, the employee agreed to make an IRC Section 83(b) election to include the Restricted Property Trust

contribution (*i.e.*, up to $30,000.00 annually for the current participants) in his taxable income in the year of contribution. The contribution by the Taxpayer to the Restricted Property Trust constitutes a transfer of property for purposes of IRC Section 83. *See* Treasury Regulation Section l.83-3(e). Therefore, Taxpayer is entitled to a deduction in the current year, equal to such amount, under IRC Sections 83(h), 162, and 402(b).

ECF No. 1-1 at PageID.34–37. Plaintiffs summarize the expected tax consequences of the DBT/RPT as follows,

> (i) [Wood and Coughlin] [were] required to include in income the value of the economic benefit of the current death benefit based on the current cost of such death benefit; (ii) the entirety of the contribution to the Restricted Property Trust even though the employee had no current or future right to such money as it was subject to a Risk of Forfeiture which would result in a charity receiving all such assets; (iii) if the Risk of Forfeiture expired, the Trustee would send a Form 1099 to the employee reporting the entire value of the Policy as taxable; and (iv) Mann was entitled to a deduction in accordance with the express provisions of IRC §§ 61 and 419 for contributions to the DBT and in accordance with the express provisions of IRC §§ 162 and 83(h) for contributions to the RPT.

ECF No. 1 at PageID.20.

### B.

On November 5, 2007, the IRS published a notice entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits" (the "Notice"). I.R.S. Notice 2007-83, 2007-2 C.B. 960. The Notice explains,

> The Internal Revenue Service (IRS) and Treasury Department are aware of certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that are being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits. This notice informs taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes. This notice also alerts taxpayers and their representatives that these transactions are tax avoidance transactions and identifies certain transactions using trust arrangements involving cash value life insurance policies, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations and §§ 6111 and 6112 of the Internal Revenue Code. This notice further alerts persons involved with these transactions of certain responsibilities that may arise from their involvement with these transactions.

I.R.S. Notice 2007-83, 2007-2 C.B. 960. The Notice thereby notifies taxpayers of their duty to report their participation in a "listed transaction" or "substantially similar" transaction to the Office for Tax Shelter Analysis ("OTSA") by filing a Form 8886.[5] The Notice describes a "listed transaction" as follows:

> Any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as "listed transactions" for purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112, effective October 17, 2007, the date this notice is released to the public.
>
> (1) The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.
>
> (2) For determining the portion of its contributions to the trust or other fund that are currently deductible the employer does not rely on the exception in § 419A(f)(5)(A) (regarding collectively bargained plans).
>
> (3) The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated either:
>
> > (a) within the policy (for example, a cash value life insurance policy); or
> >
> > (b) outside the policy (for example, in a side fund or through an agreement outside the policy allowing the policy to be converted to or exchanged for a policy which will, at some point in time, have accumulated value based on the purported premiums paid on the original policy).
>
> (4) The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts:
>
> > (a) With respect to any uninsured benefits provided under the plan,

---

[5] The regulatory authority for requiring disclosure derives from 26 C.F.R. § 1.6011-4. The section provides, "Every taxpayer that has participated . . . in a reportable transaction within the meaning of paragraph (b) of this section and who is required to file a tax return must file within the time prescribed in paragraph (e) of this section a disclosure statement in the form prescribed by paragraph (d) of this section." 26 C.F.R. § 1.6011-4(a). Subsection (b) states that "[a] reportable transaction is a transaction described in any of the paragraphs (b)(2) through (7) of this section." *Id.* § 1.6011-4(b). Under paragraph (b)(2), "a listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction." *Id.* § 1.6011-4(b)(2).

(i)        an amount equal to claims that were both incurred and paid during the taxable year; plus

(ii)       the limited reserves allowable under § 419A(c)(1) or (c)(3), as applicable; plus

(iii)      amounts paid during the taxable year to satisfy claims incurred in a prior taxable year (but only to the extent that no deduction was taken for such amounts in a prior year); plus

(iv)      amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to uninsured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(b)  With respect to any insured benefits provided under the plan,

(i)        insurance premiums paid during the taxable year that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(ii)       insurance premiums paid in prior taxable years that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(iii)      amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to insured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(c)  For taxable years ending prior to November 5, 2007, with respect to life insurance benefits provided through policies described in (3)(a) and (b) above, the greater of the following amounts:

(i)        in the case of an employer with a taxable year that is the calendar year, the aggregate amounts reported by the employer as the cost of insurance with respect to such policies on the employees' Forms W-2 (or Forms 1099) for that year, plus an amount equal to the amounts that would have been reportable on the employees' Forms W-2 for that year, but for the exclusion under section 79 (relating to the

- 11 -

cost of up to $50,000 of coverage); or, in the case of an employer with a taxable year other than the calendar year, the portions of the aggregate amounts reported by the employer on the Forms W-2 (or Forms 1099) as described in (i), above, (or that would have been reported absent the exclusion under § 79) that are properly allocable to the employer's taxable year; and

(ii)     with respect to each employee insured under a cash value life insurance policy, the aggregate cost of insurance charged under the policy or policies with respect to the amount of current life insurance coverage provided to the employee under the plan (but limited to the product of the current life insurance coverage under the plan multiplied by the current year's mortality rate provided in the higher of the 1980 or 2001 CSO Table).

(d) The additional reserve, if any, under § 419A(c)(6) (relating to medical benefits provided through a plan maintained by a *bona fide* association), but only to the extent amounts are not already included above in this paragraph (4), and only to the extent that no deduction was taken for such amounts in a prior taxable year.

I.R.S. Notice 2007-83, 2007-2 C.B. 960. The Notice further provides that "[p]ersons required to disclose or register these transactions under § 6111 who have failed to do so may be subject to the penalty under § 6707(a)." *Id.* The Notice also establishes the Service's intent to challenge the listed transactions and its rationale for doing so:

If, based on the facts and circumstances, an arrangement described above is properly characterized as a welfare benefit fund for purposes of §§ 419 and 419A (rather than a dividend arrangement, a plan deferring the receipt of compensation, or a split-dollar life insurance arrangement), an employer is allowed a deduction for contributions to the trust or other welfare benefit fund only to the extent allowed under §§ 419 and 419A. Under §§ 419 and 419A, no deduction is allowed with respect to premiums paid for life insurance coverage provided to current employees if the welfare benefit fund or the employer is directly or indirectly a beneficiary under the life insurance policy within the meaning of § 264(a). In the promoted arrangements discussed above, the trust typically retains rights in the life insurance policies and is directly or indirectly a beneficiary under the policies, so that no deduction is allowed with respect to the life insurance premiums. *See* Situation 1 in Rev. Rul. 2007-65.

I.R.S. Notice 2007-83, 2007-2 C.B. 960. As indicated, the Service's rationale is largely premised on its analysis in the simultaneously issued Revenue Ruling 2007-65.

**C.**

When filing its Form 1120S for tax year 2013 ("TY 2013"),[6] Mann Construction included a Form 8275 (Disclosure Statement) and a supporting document, "Exhibit A," quoted in part above, where it disclosed its contributions to the DBT/RPT and provided legal rationale for the tax treatment. *See* ECF No. 1-1.

On May 9, 2019, the IRS issued a proposed adjustment to Mann Construction's Form 1120S, disallowing deductions for Mann Construction's contributions to the DBT/RPT for TY 2013 to 2017. ECF No. 1 at PageID.22. The disallowed deductions increased the income and tax liability of both Wood and Coughlin. *Id.* The IRS subsequently imposed 6707A penalties on Mann Construction, Wood, and Coughlin for TY 2013 to 2017 for failure to disclose participation in the DBT/RPT. *Id.* at PageID.2–3. The TY 2013 penalties were as follows: $10,000 for Mann Construction, $8,642.25 for Coughlin, and $7,794.00 for Lee.[7] *Id.* On November 26, 2019, Plaintiffs paid the 6707A penalties for TY 2013 and filed a Form 843 requesting a refund of the amount paid. ECF No. 1 at PageID.23.

**D.**

Plaintiffs filed this action on May 26, 2020. They allege four counts in their complaint: three purported violations of the Administrative Procedure Act ("APA") and one claim for a refund. *Id.* at PageID.23–29. Specifically, Plaintiffs allege (1) that the Notice is an "unauthorized agency action"; (2) that the Notice is "arbitrary and capricious"; (3) that the Notice required

---

[6] A Form 1120S is an income tax return form used by S-corporations.

[7] Under I.R.C. § 6707A, the penalty is "75 percent of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal tax purposes)," with a minimum penalty of $10,000 for entities and $5,000 for natural persons. 26 U.S.C. § 6707A(b).

notice and comment before issuance, and (4) that the DBT/RPT was not a listed transaction or substantially similar to one. *Id.* Plaintiffs also allege that the statute of limitations barred imposition of the 6707A penalty for TY 2013. *Id.* at PageID.5, 23. On August 20, 2020, Defendant moved to dismiss the complaint for failure to state a claim. ECF No. 15. Timely response and reply briefs have been filed. ECF Nos. 18, 19. Plaintiffs concurred in the dismissal of any claim for injunctive or declaratory relief, so the only claim for relief remaining is a judgment awarding damages in the amount of the 6707A penalty assessed for TY 2013. ECF No. 15 at PageID.72.

## III.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679-79 (quotations and citation omitted).

**IV.**

Plaintiffs seek monetary relief for payment of the 6707A penalty for TY 2013 and advances two arguments in support: (1) that the Notice violates the APA (Counts I, II, and III) and therefore cannot support the 6707A penalty, and (2) that regardless of the legality of the Notice, the DBT/RPT was not a listed transaction or substantially similar transaction (Count IV). Plaintiffs also contend that the 6707A penalty was time-barred. For reasons explained below, Counts I, II, and IV will be dismissed.

**A.**

The first three counts allege violations of the APA. "The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule.' *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (citing 5 U.S.C. § 551(5)). Under the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[8] 5 U.S.C. § 702. The APA further empowers federal courts to set aside unlawful agency action.

> (2) [The reviewing court shall] hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law; . . . .

5 U.S.C. § 706(2). Importantly, the allegedly unlawful "agency action" is the Notice. ECF No. 1 at PageID.4–5. Plaintiffs' claim for relief is not premised on the underlying tax treatment of the

---

[8] Defendant does not challenge Plaintiffs' allegation that the Notice is an "agency action" within the meaning of 5 U.S.C. § 702.

DBT/RPT—the fact that the IRS disallowed certain deductions—but the imposition of the 6707A penalty. This distinction is critical, as explained throughout the opinion.

**1.**

According to Count I, the Notice should be held unlawful because it is in "excess of statutory jurisdiction, authority, or limitations."[9] 5 U.S.C. § 706(2)(C). Plaintiffs offer three reasons for why the Notice exceeds IRS statutory authority: (1) the Notice "chang[es] the definition of 'qualified cost'" as used in 26 C.F.R. § 1.409A-1(a)(5); (2) the Notice "recast[s] trust arrangements that are otherwise compliant with § 1.409A-1(a)(5) as "abusive trust arrangements"; and (3) the Notice "disallow[s] deductions which are otherwise not expressly disallowed by the Code." ECF No. 18 at PageID.132. Defendant denies each allegation as a mischaracterization of the Notice. As explained below, Plaintiffs fail to plausibly allege that the IRS exceeded the scope of its statutory authority in issuing the Notice.

Plaintiffs accept that "the IRS has the authority to specifically identify a transaction as a listed transaction." ECF No. 18 at PageID.134. Indeed, the regulations clearly provide that "a listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice." 26 C.F.R. § 1.6011-4(b)(2). The question, then, is whether the Notice goes beyond designating listed transactions by, as Plaintiffs allege, redefining "qualified cost," recasting otherwise lawful trust arrangements as abusive, and disallowing certain deductions.

---

[9] Initially, Defendant seemed confused as to the nature of Count I. Defendant's opening brief treats Count I as if it alleged that the Notice was void for vagueness. *See* ECF No. 15 at PageID.86–90. Plaintiffs deny they are making such a claim, but Defendant's interpretation was not entirely unreasonable. Indeed, the complaint asks, "Whether the IRS exceeded its authority when issuing the Notice as such Notice is unconstitutionally vague . . . ?" ECF No. 1 at PageID.5. Plaintiffs even make similar vagueness arguments in their response brief. *See* ECF No. 18 at PageID.152. However, as discussed *infra*, because Plaintiffs fail to specifically allege a vagueness claim, whether the Notice is void for vagueness is not addressed here.

While Plaintiffs' factual allegations must be accepted as true, "a district court need not . . . accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Plaintiffs' allegations regarding the effect of the Notice are legal conclusions that need not be assumed true.[10] For example, Plaintiffs first argue,

> [T]he Notice defines the term "qualified cost" in such a manner that it nullifies Reg. 1.409A-1(a)(5) [sic] for purposes of single employer welfare benefit funds providing a death benefit. T. Reg. 1.409A-1(a)(5) specifically excludes from the definition of "deferred compensation" a "portion of a plan" that provides a "bona fide...death benefit." Through its enforcement of the Notice, the IRS essentially determined that if a cash value life insurance product is used to fund a death benefit, then "no portion "of the plan is a "bona fide death benefit" and the IRS may consider it deferred compensation.

ECF No. 1 at PageID.10. As Defendant notes, the Notice does not define "qualified cost." The term does not even appear in the Notice—or in 26 C.F.R. § 1.409A-1, which the Notice allegedly nullifies. Plaintiffs' argument is that because the Notice designates transactions using cash value life insurance, the regulatory exemption from "deferred compensation" enjoyed by plans providing a bona fide death benefit is meaningless. This argument is misguided.

The Notice does not purport to alter any section of the Code or Treasury regulations. The Notice, by its terms, (1) lists transactions for which participating taxpayers must file a Form 8886 or face a statutory penalty, and (2) states the intention of the IRS to challenge certain deductions made pursuant to the listed transactions. *See* I.R.S. Notice 2007-83, 2007-2 C.B. 960. The Notice does not, however, render any portion of the Code or Treasury regulations meaningless. Accordingly, Plaintiffs may be correct that the IRS position on the merits of the tax is unreasonable, but Plaintiffs are not seeking review of the IRS decision to disallow deductions

---

[10] In fairness to Plaintiffs, many allegations in the complaint are legal conclusions because the material facts are largely undisputed.

based on contributions to the DBT/RPT.[11] The complaint only challenges the legality of the Notice and the assessment of the 6707A penalty.

The same analysis applies to Plaintiffs' other allegations regarding statutory authority. Plaintiffs' claim that the Notice "recast[s]" otherwise lawful trust arrangements as "abusive" is conclusory and untenable. ECF No. 18 at PageID.132. The Notice designates transactions for reporting. The tax treatment of such transactions is left to the IRS, the taxpayer, and reviewing courts, where applicable. The mere designation of certain transactions, accompanied with the IRS' opinion that such transactions are abusive, does not "rewrite the tax laws." *Id.* at PageID.134.

Plaintiffs also argue that the Notice improperly disallows deductions because the IRS auditor cited the Notice when disallowing deductions for contributions to the DBT/RPT. *Id.* at PageID.133. Again, as Defendant correctly points out, the complaint challenges the propriety of the Notice, not the tax treatment of the DBT/RPT. Plaintiffs advance no legal authority to support the notion that an auditor's improper citation to an IRS notice alters the legal effect of that notice. Accordingly, Plaintiffs have failed to plausibly allege that the Notice is in "excess of statutory jurisdiction, authority, or limitations" for purposes of the APA. Count I will be dismissed.

**2.**

Count II alleges that the Notice is arbitrary and capricious within the meaning of 5 U.S.C. § 706(2). "The arbitrary-and-capricious standard is a narrow one inasmuch as [this Court is] 'not to substitute [its] judgment for that of the agency.'" *Nat'l Truck Equip. Ass'n v. Nat'l Highway*

---

[11] While the question is not before this Court, Defendant is likely correct that Plaintiffs cannot challenge the disallowance of deductions for contributions to the DBT/RPT until they pay the tax owed. *See RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012) ("With few exceptions, no court has jurisdiction over a suit to preemptively challenge a tax.").

*Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Th[e] inquiry is principally concerned with the agency decision-making process." *Id.*

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Accordingly, federal courts must look to the administrative record and "determine whether there exists a 'rational connection between the facts found and the choice made.'" *All. for Cmty. Media v. F.C.C.*, 529 F.3d 763, 786 (6th Cir. 2008) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43).

Defendant argues that the Notice itself, as well as its place within the tax regime, conclusively demonstrate that the Notice is not arbitrary or capricious.[12] ECF No. 15 at PageID.90–93. Plaintiffs, in response, identify four reasons why the Notice is arbitrary and capricious. ECF No. 18 at PageID.135–37. Each reason will be addressed in turn.

Plaintiffs first argue that the Notice is "a gerrymandered effort to target all transactions utilizing cash value life insurance without regard to the facts of the transaction." *Id.* at PageID.135. Plaintiffs note that there are "no laws prohibiting the use of cash value life insurance with respect to welfare benefit plans" and that the legislative history "does not support the notion that cash value life insurance policies are prohibited in welfare benefit funds." *Id.*

As before, Plaintiffs rely on an untenable reading of the Notice. The first three pages of the Notice are spent illustrating the potential problem with cash value life insurance and offering

---

[12] Defendant's opening brief further recounts the history of tax shelter regulation and the role of the Notice. *See* ECF No. 15 at PageID.79–84.

the IRS rationale for challenging the listed transactions.[13] *See* I.R.S. Notice 2007-83, 2007-2 C.B. 960. While the Notice invariably designates many if not most transactions involving cash value life insurance, not every welfare benefit plan using cash value insurance is a listed transaction. For instance, if Mann Construction had not deducted its contributions to the DBT/RPT, or the transaction were structured pursuant to a collective bargaining agreement, the transaction would presumably not be listed.

More importantly, though, even if Plaintiffs' allegation were true, it would not establish that the Notice is arbitrary or capricious. The IRS has a rational and statutorily grounded interest in monitoring transactions with the potential to abuse the Code. Plaintiffs offer no support for the proposition that a reporting regime that sweeps more broadly than strictly necessary is arbitrary and capricious. Indeed, such a proposition would prove unworkable with the reporting regime under 26 U.S.C. § 6707A, which imposes penalties "even in cases involving an overpayment of tax." *Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 781 (7th Cir. 2017).

Plaintiffs next argue that the Notice "fail[s] to consider plans that are allowable for income tax purposes." Plaintiffs state,

> The Notice proclaims that it "informs taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes." (ECF No.1, Complaint¶ 21). Therefore, if a plan is allowable for federal income tax purposes, such as Plaintiffs 'Benefits Trust, then it cannot be "substantially similar" to the transactions described in the Notice because it is not expected to the obtain similar tax consequences or a similar tax strategy. Thus, by its own terms, the Notice should not apply to the Benefits Trust.

ECF No. 18 at PageID.136. It is unclear how Plaintiffs' argument is supposed to show that the Notice is arbitrary and capricious. Insofar as Plaintiffs object to the listing of seemingly "allowable" transactions, it would be nonsensical for the Notice to list only unlawful

---

[13] The IRS rationale is provided, in relevant part, in Section II.B., *supra*.

transactions. To begin, whether any given tax strategy is lawful is a legal determination that is made by a government body competent to do so, not individual taxpayers alone. Additionally, as Defendant notes, promoters may market any trust arrangement as lawful, regardless of whether it adopts an allowable tax strategy. More fundamentally, though, the task here is not to dissect the IRS rationale but to determine whether Plaintiffs have plausibly stated a defect in decision-making that renders the Notice arbitrary and capricious. Plaintiffs' allegation falls short.

Plaintiffs' third argument essentially restates the allegation regarding redefining "qualified cost" but frames the issue as relating to the rationality of the Notice. ECF No. 18 at PageID.137. As discussed above, the Notice does not redefine "qualified cost" nor negate any tax law. Clearly, Plaintiffs disagree with the reasoning that the IRS has offered for challenging transactions like the DBT/RPT. That reasoning, however, is not at issue here. For Count II to survive, the complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Perhaps, as Plaintiffs argue, the contributions to the DBT/RPT really were deductible and, at some point, a court of competent jurisdiction will agree. Assuming this is true, it does not make the Notice and its designation of listed transactions any less reasonable.

Plaintiffs' fourth argument is that the designation of "purported" welfare benefit funds was arbitrary and capricious. ECF No. 18 at PageID.137. Plaintiffs allege that the use of the term "purported" is misleading because it implies that taxpayers need not report transactions involving "actual" welfare benefit plans.[14] *Id.* This allegation is similarly insufficient. Indeed, most of Plaintiffs' discussion on this matter is related to the IRS decision to disallow deductions for Mann Construction's contributions to the DBT/RPT. *See id.* at PageID.137–38. Plaintiffs state no

---

[14] This argument resurfaces later in the briefs when Plaintiffs argue, with respect to Count IV, that the DBT/RPT was not a listed transaction. ECF No. 18 at PageID.147–49; *see also* Section III.B.1., *infra*.

clear reason why the use of the term "purported," even if misleading, renders the Notice arbitrary and capricious within the meaning of 5 U.S.C. § 706(2).

Plaintiffs also argue, more generally, that the Notice is "devoid" of factors that the IRS relied upon when promulgating it and that greater consideration of the administrative record cannot happen "at this stage." ECF No. 18 at PageID.138–39. Plaintiffs' first contention is refuted by the face of the Notice. As discussed above, the Notice recounts the history of abusive trust arrangements and why the IRS is targeting the transactions listed. *See* I.R.S. Notice 2007-83, 2007-2 C.B. 960. Plaintiffs' allegation that the Notice is "devoid" of supporting factors is conclusory and unfounded.

Similarly, Plaintiffs' contention that the necessary review of the administrative record is impossible "at this stage" is meritless. To survive a motion to dismiss, Plaintiffs are required to set forth allegations that, if assumed true, plausibly state a claim relief.  *Iqbal*, 556 U.S. at 678. Plaintiffs have identified no exception for APA actions. Of course, this Court is limited to consideration of the administrative record when deciding whether an agency action is arbitrary and capricious.[15] *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013) ("[O]ur role is limited to reviewing the administrative record to determine whether there exists a 'rational connection between the facts found and the choice made.") (internal quotation marks omitted). Even so, Plaintiffs must allege facts plausibly stating the claim that the Notice is arbitrary and capricious. Plaintiffs' allegations fall short. Accordingly, Count II will be dismissed.

---

[15] None of the parties address the rather unique posture of this case. In the ordinary case, the "administrative record" is, *inter alia*, the evidence presented at the administrative hearing in question. Here, the "agency decision" is not the product of an administrative hearing. It is an IRS notice—a form of tax guidance that has only recently been considered amenable to review under the APA. *See* Stephanie Hunter McMahon, *Pre-Enforcement Litigation Needed for Taxing Procedures*, 92 WASH. L. REV. 1317, 1319–20 (2017) (discussing the recent "wave of attacks against Treasury Department procedures that are argued not to comply with the APA").

**3.**

Count III alleges that the Notice violates the APA because it was issued without notice and comment. ECF No. 1 at PageID.27–28. The APA provides a three-step procedure for "notice-and-comment rulemaking" whereby agencies are required to (1) issue a general notice of proposed rulemaking, (2) allow interested persons an opportunity to participate, and (3) include in the final rule a "concise general statement of [its] basis and purpose." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (discussing the notice and comment procedure in 5 U.S.C. § 553). However, "[n]ot all 'rules' must be issued through the notice-and-comment process . . . [T]he notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Perez*, 575 U.S. at 96 (quoting 5 U.S.C. § 553(b)).

Put simply, "legislative rules" require notice and comment, and "interpretive rules" do not. The distinction, however, is not always clear. Generally, "a rule that 'intends to create new law, rights or duties' is legislative, while a rule that 'simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties' is interpretive." *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (quoting *Michigan v. Thomas*, 805 F.2d 176, 182–83 (6th Cir. 1986)). "If an agency attempts to issue a legislative rule without abiding by the APA's procedural requirements, the rule is invalid." *Tennessee Hosp. Ass'n*, 908 F.3d at 1042.

Plaintiffs contend that the Notice "qualifies as a 'substantive' or 'legislative-type' agency rule" because it "bind[s] both the IRS and taxpayers, produces legal consequences, and creates taxpayer obligations." ECF No. 1 at PageID.27; ECF No. 18 at PageID141. Defendant resists this characterization, arguing that the Notice "imposes no independent obligations or penalties on

the public." ECF No. 15 at PageID.94. The parties do not discuss perhaps the only opinion addressing whether an IRS notice is a "substantive rule," *Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009), *reh'g en banc granted in part, opinion vacated in part*, 599 F.3d 652 (D.C. Cir. 2010), *and on reh'g en banc in part*, 650 F.3d 717 (D.C. Cir. 2011).

In *Cohen*, taxpayers sought to invalidate IRS Notice 2006-50, alleging it was issued in violation of the APA. *Cohen*, 578 F.3d at 6. Notice 2006-50 was issued after the IRS lost a series of cases regarding the applicability of an excise tax on phone calls under I.R.C. § 4251. *Id.* at 3–4. Notice 2006-50 announced the discontinuation of the excise tax and set forth the refund process for erroneously collected taxes. *Id.* at 4. "Under Notice 2006–50, individual taxpayers had to request their refund or credit on their 2006 federal income tax returns. This requirement extended to individuals who otherwise did not need to file income tax returns." *Id.* (internal citations omitted). The D.C. Circuit noted that the "[t]he primary distinction between a substantive rule—really any rule—and a general statement of policy . . . turns on whether an agency intends to bind itself to a particular legal position." *Cohen*, 578 F.3d at 7 (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C.Cir.1997)). In holding that Notice 2006-50 was a "substantive rule," the D.C. Circuit noted that "Notice 2006–50 changes taxpayers' rights and obligations." *Id.* at 9. The refund limitation, for example, "present[ed] a hurdle taxpayers must surmount." *Id.*

While *Cohen* did not decide whether Notice 2006-50 violated the APA,[16] the district court on remand determined that because "Notice 2006–50 is binding"—as *Cohen* had

---

[16] *Cohen* is one decision in a lengthy and complex procedural history. *Cohen* was specifically addressing whether Notice 2006-50 was a reviewable agency action. *Cohen*, 578 F.3d at 6. Nonetheless, Cohen's essential holding that Notice 2006-50 bound the IRS was affirmed in subsequent decisions. *See Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011) ("Put simply, 'Notice 2006–50 binds the IRS.'"). Because Defendant has not claimed that the Notice is nonreviewable, the interplay between the jurisdictional question and the substantive APA claim, as seen in *Cohen*, has not emerged here.

determined—"the defendant was required to abide by the APA's notice-and-comment requirements." *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 853 F. Supp. 2d 138, 143 (D.D.C. 2012), *aff'd*, 751 F.3d 629 (D.C. Cir. 2014), *and aff'd*, 751 F.3d 629 (D.C. Cir. 2014). In other words, *Cohen* had resolved the substantive question in the process of deciding the jurisdictional question. Therefore, while *Cohen* is nonbinding, it is certainly persuasive.

Defendant is correct that the Notice is just one part of a broader reporting regime. The Notice has no effect on tax treatment, and neither the requirement to report nor the penalty for failing to do so derive from the Notice. Congress established the reporting requirement and the penalty by statute; the Treasury, by regulation, delegated the authority to list transactions; and the IRS, exercising its regulatory authority, lists transactions by notice. *See* 26 U.S.C. §§ 6707(a), 6707A, 6011; 26 C.F.R. § 1.6011-4.

That is not to say that the Notice is without legal consequence. The Notice, in effect, defines a set of transactions to which the statutory duty to report applies. The Treasury regulations do so as well, but only by reference to transactions that the IRS has "identified by notice, regulation, or other form of published guidance." 26 C.F.R. § 1.6011-4(b)(2). Thus, while the Notice does not create the duty to report listed transactions generally, it does create the duty to report transactions that meet the four elements described in the Notice. *See Tennessee Hosp. Ass'n*, 908 F.3d at 1042 ("[A] rule that 'intends to create new law, rights or duties' is legislative."). Defendant has not argued, and the Court finds no reason to hold, that Plaintiffs or any other taxpayers had a duty to report the transactions at issue before the issuance of the Notice. Like in *Cohen*, the Notice "changes taxpayers' rights and obligations." *Cohen*, 578 F.3d at 9. And the duty created is not inconsequential. Taxpayers who fail to comply are subject to substantial penalties.

Defendant's discussion of the legislative history behind IRS notices and the reporting regime misses the point. *See* ECF No. 15 at PageID.96–103. There is no controlling authority for an exception to notice and comment based on Congressional intent. Defendant's reliance on *Asiana Airlines v. F.A.A.*, 134 F.3d 393 (D.C. Cir. 1998), is misplaced. *Asiana Airlines* held that "when Congress sets forth specific procedures that 'express[ ] its clear intent that APA notice and comment procedures need not be followed,' an agency may lawfully depart from the normally obligatory procedures of the APA." *Asiana Airlines*, 134 F.3d at 398 (quoting *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1237 (D.C. Cir. 1994)). Contrary to Defendant's suggestion, *Asiana Airlines* does not seem to support some judicially crafted exception to notice and comment.[17] But even if it did, the instant case is distinguishable. *Asiana Airlines* concerned the effect of inconsistent statutory frameworks on Federal Aviation Administration rulemaking. *See Asiana Airlines*, 134 F.3d at 395–96. Essential to *Asiana Airlines* was the fact that "Congress specified procedures under § 45301(b)(2) that cannot be reconciled with the notice and comment requirements of § 553." *Id.* at 398. Defendant has not shown such "irreconcilable" requirements here. Accordingly, Plaintiffs have plausibly alleged that the Notice is a legislative rule that should be set aside for failure to comply with notice and comment. With respect to Count III, Defendant's motion will be denied.

**B.**

Count IV seeks a refund of the amount paid to satisfy the 6707A penalty for TY 2013. Plaintiffs raise two arguments in support: (1) that the DBT/RPT was not a "listed transaction" or substantially similar transaction; and (2) that 6707A penalty was time-barred. For the reasons stated below, Plaintiffs fail to plausibly state a claim. Count IV will therefore be dismissed.

---

[17] *Asiana Airlines* was partly based on D.C. Circuit precedent regarding the "good faith" exception to notice and comment, found in 5 U.S.C. § 553(b). Defendant does not specifically assert the good faith exception, and its requirements do not appear to be met here. *See* 5 U.S.C. § 553(b).

**1.**

Plaintiffs' primary allegation behind Count IV is that "[b]ased on the totality of all distinguishing features of the DBT/RPT and the transactions described in the Notice, the Mann DBT/RPT is not the same as or substantially similar to the transactions described in the Notice." ECF No. 1 at PageID.29.

Before considering whether Count IV states a claim, a jurisdictional issue must be addressed. District courts have no jurisdiction "over suits for the refund of penalty amounts paid until the taxpayer has paid the full amount of the contested penalty assessment and has filed a claim for refund which the IRS has either rejected or not acted upon in six months." *Thomas v. United States*, 755 F.2d 728, 729 (9th Cir. 1985) (internal citations omitted); 26 U.S.C. §§ 6532(a), 7422(a). Filing a Form 843 satisfies the administrative claim requirement. *See Thomas v. United States*, 166 F.3d 825, 831 (6th Cir. 1999) (finding that filing of Form 843 satisfied 26 U.S.C. §§ 6532(a), 7422(a)).

Plaintiffs received notice of the 6707A penalty on November 18, 2019. ECF No. 1 at PageID.2–3. Plaintiffs paid the penalty on November 26, 2019 and simultaneously filed a Form 843 to request a refund. *Id.* at PageID.3. As of May 26, 2019, when the complaint was filed, the IRS had not processed the refund claim. ECF No. 1 at PageID.23. Defendant has not raised the issue of jurisdiction. Plaintiffs have paid the amount contested, and at least six months have elapsed since Plaintiffs filed the Form 843. Accordingly, this Court has jurisdiction over Plaintiffs' refund claim.

With respect to whether Count IV states a claim, Plaintiffs seem to believe that the legal status of their tax strategy is relevant to the 6707A penalty. As repeated throughout this opinion, Plaintiffs' underlying tax treatment is irrelevant to whether the penalty was properly imposed.

*Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 781 (7th Cir. 2017) ("[6707A penalties] do not depend on a tax deficiency; indeed, the IRS will impose these penalties even in cases involving an overpayment of tax."). The question for Count IV is straight forward: have Plaintiffs alleged sufficient facts to show that the DBT/RPT was not a listed transaction or substantially similar transaction?

Defendant contends that the allegations in the complaint conclusively establish that the DBT/RPT was a listed transaction or substantially similar transaction. Whether a transaction is a listed transaction is governed by the four elements in the Notice. Defendant accurately summarized the elements in its opening brief:

1. The transaction involves a trust or other fund described in §419(e)(3) that is purportedly a welfare benefit fund . . .

2. Contributions are not made in accordance with a collective bargaining agreement . . .

3. The trust pays premiums on a life insurance policy that accumulates value either within the policy (*e.g.*, a cash-value life insurance policy) or outside the policy (*e.g.*, a side fund or agreement) . . .

4. The employer's deductions for contributions to the fund exceed, in the case of insured benefits, insurance premiums for the year (other than premiums for a policy described in element 3, *i.e.*, a cash-value policy) and administrative expenses . . . .

ECF No. 15 at PageID.105. A transaction is "substantially similar" to a listed transaction if it "is expected to obtain the same or similar types of tax consequences and [] is either factually similar or based on the same or similar tax strategy." 26 C.F.R. § 1.6011-4. "[T]he term substantially similar must be broadly construed in favor of disclosure." *Id.* Defendant's argument is convincing. The complaint's allegations regarding the DBT/RPT and Plaintiffs' conduct conclusively demonstrate that the DBT/RPT was a listed transaction.

Plaintiffs object that element one is not satisfied because the DBT/RPT is not a "purported" welfare benefit fund but an "actual" welfare benefit fund. ECF No. 18 at PageID.147–49. Plaintiffs' distinction is without merit. Merriam-Webster defines "purported" as synonymous with "alleged" and "reputed."[18] *Purported*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/purported [https://perma.cc/YH4Q-HQJG]. "Alleged," in turn, means "accused but not proven or convicted" or "asserted to be true or to exist." *Alleged*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/alleged [https://perma.cc/238J-9UG4]. Therefore, a transaction like the DBT/RPT might be both a purported welfare benefit fund and an actual welfare benefit fund. After all, the alleged offender is often the actual offender—it is often just too early to say. In this instance, "purported" seems consistent with the Service's intention to cast a wide net over an industry where listed transactions are not uniformly marketed. Accordingly, element one is satisfied.[19]

Plaintiffs do not contest element two, and the element is clearly satisfied. No party has alleged that the DBT/RPT was part of a collective bargaining agreement.

With respect to element three, Plaintiffs identify various "features" that, based on the IRS reasoning for challenging listed transactions,[20] a listed transaction must have. *Id.* at PageID.147. Plaintiffs deny that the DBT/RPT has any of these "features" because any income to Wood and Coughlin is subject to the Risk of Forfeiture, which is a "substantial risk of forfeiture within the

---

[18] Plaintiffs rely on Macmillan Dictionary to define "purported" as "to claim or seem to be something or to do something, especially when this is not possible or true." *Purported, Macmillian*, https://www.macmillandictionary.com/us/dictionary/american/purport_1 [https://perma.cc/E2LN-SFV3]. While this definition is more favorably worded for Plaintiffs, it does not support their narrow interpretation. A transaction can "claim" to be a welfare benefit fund and actually be a welfare benefit fund.

[19] Furthermore, even if Plaintiffs' interpretation were plausible, an "actual" welfare benefit fund would undoubtedly be substantially similar to a "purported" welfare benefit fund.

[20] These "features" include, for example, "that after a number of years the plan will be terminated and the cash value insurance policies, cash or other property . . . *will* be distributed to the employees," and "[d]epending on the facts and circumstances of a particular arrangement, the arrangement may properly be . . . a plan of deferred compensation." ECF No. 18 at PageID.147.

meaning of IRC § 83." *Id.* at PageID.147–48. Plaintiffs further emphasize that "[the Trustee] has sole and exclusive authority and an obligation to enforce the risk of forfeiture," and "[i]f the event giving rise to forfeiture occurs, the only beneficiary of the Restricted Property Trust is a charity—the employee and company then have zero rights under the Restricted Property Trust." ECF No. 18 at PageID.126. On this basis, Plaintiffs argue that element three is inapplicable.

Plaintiffs misread the Notice. As Defendant notes, element three is silent on the issue of "income" to participants, and the "features" that Plaintiffs rely upon are not part of the definition of a listed transaction, as provided in the Notice. Plaintiffs are, in effect, adding to the elements of a listed transaction. Plaintiffs' approach ignores both the plain language of the Notice and the basic distinction, revisited throughout this opinion, between challenging the underlying tax treatment and challenging the propriety of a penalty. Accordingly, the complaint clearly establishes that the DBT/RPT paid premiums on a cash value life insurance policy, so element three is satisfied.

Plaintiffs' objection to element four is similarly misguided. Plaintiffs contend that element four is inapplicable because "Plaintiffs only deducted insurance premiums equal in amount to the current cost of insurance plus administrative expenses for each year" while element four requires "a deduction that is in excess of the current cost of the insurance plus administrative expenses  for a given taxable year." ECF No. 18 at PageID.145. Plaintiffs are referring to subsection (b) of element four,[21] which applies when,

> The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts: . . .With respect to any insured benefits provided under the plan, . . . insurance premiums paid during the taxable year that are properly allocable to the taxable year (*other than premiums paid with respect to a policy described in (3)(a) or (b) above*) . . . .

---

[21] Subsections (a) and (c) of element four are inapplicable, and no party has contended otherwise.

I.R.S. Notice 2007-83, 2007-2 C.B. 960. Element three subsection (a) describes life insurance policies that accumulate value "within the policy (for example, a cash value life insurance policy)." *Id.* Therefore, element four is satisfied when the employer takes a deduction greater than the amount paid for insurance premiums, *except* premiums for cash value life insurance. In other words, welfare benefit plans where the employer takes a deduction for cash value life insurance premiums are almost always listed transactions, except in the isolated instances where the Notice creates an exception (*e.g.*, collective bargaining agreements)—an interpretation that coheres with the Service's intention to cast a wide net for reporting purposes.[22]

Confusingly, Plaintiffs acknowledge this interpretation of element four but argue that it is inconsistent with I.R.C. § 419. They state, "Element IV provides that if the premium is paid with respect to a policy described in Element III, then the amount allowed to be deducted cannot exceed $0." ECF No. 18 at PageID.146. Plaintiffs misstate the effect of the Notice. The Notice does not purport to disallow deductions, and even if Plaintiffs' deductions were consistent with I.R.C. § 419, the DBT/RPT would still be a listed transaction. Accordingly, the complaint clearly establishes that Mann Construction took a deduction in excess of premiums and expenses allowed under element four.

Plaintiffs also make a number of free-floating arguments not apparently directed at any specific element. Plaintiffs first argue that "no aspect of Notice 2007-83 describes a transaction providing only a current year death benefit, based on the current cost of such benefit, while providing a separate and distinct benefit, perfectly permissible under the Internal Revenue Code." ECF No. 18 at PageID.148. This is true but only trivially. The Code imposes penalties for

---

[22] Admittedly, the Service took a rather tedious and convoluted route to an otherwise simple objective.

failing to report "listed transactions" or "substantially similar" transactions. 26 U.S.C.§ 6707A. The Notice need not designate the DBT/RPT by exact operation.

Plaintiffs also argue that the Notice is "ambiguous," pointing to the Notice's use of "purported," "abusive," and "premium." ECF No. 18 at PageID.149–54. Plaintiffs ultimately conclude that "a 'person of ordinary intelligence' could not understand the meaning of the Notice." *Id.* at PageID.152. Plaintiffs' argument mirrors one intended to prove that the Notice is void for vagueness, even while they claim, "[T]he Complaint does not allege that the Notice should be deemed void for vagueness." *Id.* at PageID.133; *see also Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) ("To withstand a facial challenge, an enactment must define the proscribed behavior with sufficient particularity to provide a *person of ordinary intelligence* with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision.") (emphasis added).

Plaintiffs have not alleged that the Notice is void for vagueness nor asked for leave to add such a claim. Accordingly, whether the Notice is vague or ambiguous is relevant only insofar as such ambiguity or vagueness would support the allegation that the DBT/RPT was not a listed transaction or substantially similar transaction. Plaintiffs, however, have not demonstrated that the Notice is vague or ambiguous. As discussed above, Plaintiffs' attack on the term "purported" is meritless. With respect to "abusive," Plaintiffs state,

> The term "abusive" is also ambiguous. Plaintiffs fully disclosed their participation in the Benefits Trust. The Benefits Trust is correct for federal income tax purposes. The Benefits Trust could only be characterized as "abusive" if Defendant is successful in a "form over substance" defense, which would be premised upon omitting and misrepresenting material terms of the Benefits Trust to recast the transaction without a risk of forfeiture. Discovery will determine if "abusive" transactions should include fully disclosed transactions that are permitted under the laws as enacted by Congress.

ECF No. 18 at PageID.150 (footnote and internal citations omitted). Plaintiffs' argument is difficult to follow. The term "abusive" appears only in the title of the Notice where it modifies the noun "trust arrangements." I.R.S. Notice 2007-83, 2007-2 C.B. 960. Therefore, the term "abusive" is wholly immaterial to the description of a listed transaction and could not affect whether Plaintiffs had a duty to disclose the DBT/RPT. Plaintiffs' allegations regarding a "form over substance defense" and so forth appear to misconstrue the issue.

Plaintiffs also contend that the term "premium" is ambiguous. The term "premium" is central to element four, the application of which turns on whether an employer has taken a deduction in excess of certain "premiums." Plaintiffs object to how "premium" in element four excludes, by parenthetical, premiums paid for a cash value life insurance policy. They ask, "How is a 'person of ordinary intelligence' to know that a 'premium' paid for an insurance policy is not actually a 'premium?'" ECF No. 18 at PageID.154. As discussed above, the language is convoluted but not beyond ordinary comprehension. Subsection (b) of element four describes "premiums" "other than premiums paid with respect to a policy described in (3)(a) or (b) above." Qualifying the word "premium" with a parenthetical does not make it ambiguous.

Plaintiffs also dispute that the Notice applies to lawful tax arrangements. They rely on a sentence in the preamble to the Notice that provides, "This notice informs taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes." R.S. Notice 2007-83, 2007-2 C.B. 960. From this, Plaintiffs conclude, "a plan is the same as or substantially similar to the transactions targeted by the Notice only if the tax benefits are not allowed for Federal income tax purposes."[23] ECF No. 18 at PageID.151.

---

[23] It is somewhat unclear whether Plaintiffs offer this argument as a genuine counterinterpretation or as another attempt to show that the Notice is ambiguous. The former argument seems more consistent with Plaintiffs' position throughout the brief, but the argument is uncompelling regardless.

Plaintiffs' interpretation is at odds with the plain language of 26 U.S.C. § 6707A and 26 C.F.R. § 1.6011-4, neither of which limit reporting to transactions with tax benefits that are "not allowed." Case law confirms that the duty to report is enforced regardless of underlying tax treatment. *See Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 781 (7th Cir. 2017). Plaintiffs' interpretation is also unsupported by the Notice. The quoted sentence is found in the preamble—a couple paragraphs before the "Background" section—and contributes in no apparent way to the four elements defining "listed transaction." The sentence instead seems to state the IRS position that the Code does not allow certain deductions promoted along with listed transactions.

Based on the foregoing, Defendant is correct that, according to the complaint, DBT/RPT was a listed transaction or substantially similar transaction. Plaintiffs' various arguments to the contrary are uncompelling.

## 2.

Plaintiffs' final argument in support of a refund is that the 6707A penalty was time-barred. "Section 6501(c)(10)(A) provides that the IRS must assess a penalty against a taxpayer who fails to disclose a listed transaction within one year of the date that 'the Secretary is furnished the information so required.'" *May v. United States*, 691 F. App'x 334, 335 (9th Cir. 2017). Plaintiffs disclosed the existence of the DBT/RPT on a Form 8275 attached to their Form 1120S for TY 2013. It is undisputed that the 2013 1120S was filed several years before Plaintiffs received notice of the 6707A penalty for TY 2013. Plaintiffs contend that the Form 8275 was the "information so required" under 26 U.S.C. § 6501(c)(10). Defendant argues that Plaintiffs could only start the statutory period by filing a Form 8886, the form designated by 26 C.F.R. § 1.6011-4(d).

Plaintiffs' reliance on *May v. United States* is misplaced. As Defendant notes, the Ninth Circuit in *May* adopted Defendant's position "that a taxpayer disclosing a listed transaction [must] do so on Form 8886 and send a completed copy of that disclosure to the OTSA." *May*, 691 F. App'x at 336. While Plaintiffs are correct that Judge Clifton, in his dissent, criticized the majority's interpretation of § 6501(c)(10) as "exalt[ing] form over substance," he nonetheless rejected Plaintiffs' position. According to Judge Clifton, "[a]n interpretation that started the limitations period as soon as some IRS office, somewhere, had the information or as soon as IRS agents collectively had the information would be both illogical and open to abuse." *Id.* at 337.

Defendant and the Ninth Circuit present a more persuasive reading of the statute. Section 6501(c)(10)(A) refers to information "which is required under section 6011 to be included with such return or statement." Section 6011 states that taxpayers "shall make a return or statement according to the forms and regulations prescribed by the Secretary." The Secretary has, by regulation, prescribed Form 8886 as the form by which a taxpayer must disclose a listed transaction to the OTSA. 26 C.F.R. § 1.6011-4(d). Therefore, Plaintiffs' filing of the Form 8275 did not start the statutory period, and the 6707A penalty for TY 2013 was not time-barred. Accordingly, Plaintiffs have failed to plausibly state a claim for a refund of the 6707A penalty. Count IV will be dismissed.

## V.

At the end of their responsive brief, Plaintiffs ask for leave to amend the complaint if any of the counts are dismissed. ECF No. 18 at PageID.160. Counts I, II, and IV will be dismissed for failure to state a claim. Plaintiffs may no longer amend the complaint as a matter of course, so the only way to amend the complaint is with Defendant's consent or by leave of this Court. Fed R. Civ P. 15(a)(1)(B) (limiting amendment as matter of course to 21 days after service of a

motion under Rule 12(b)). While Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," "the decision as to when 'justice requires' an amendment is within the discretion of the trial judge." *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986).

Local Rule 15.1 states, "A party who moves to amend a pleading shall attach the proposed amended pleading to the motion." E.D. Mich. L.R. 15.1 Plaintiffs have not filed a proposed amended complaint, so it cannot be determined whether "justice so requires" any given amendment. *See Martin*, 801 F.2d at 248 ("[I]t is well settled law that the district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss."). Accordingly, Plaintiffs' request for leave to amend the complaint is denied without prejudice.

## VI.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss. ECF No. 15, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Counts I, II, and IV are **DISMISSED**.

It is further **ORDERED** that Plaintiffs' Request for Leave to Amend the Complaint is **DENIED WITHOUT PREJUDICE**. Plaintiffs may move to amend the complaint but must comply with Local Rule 15.1 and attach a copy of the proposed amended complaint.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File a Surreply Brief, ECF No. 20, is **DENIED AS MOOT**.


Dated: October 20, 2020                                  s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judged