UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MANN CONSTRUCTION, INC., et al.,

        Plaintiffs,                              Case No. 1:20-cv-11307

v.                                                Honorable Thomas L. Ludington
                                                      United States District Judge

UNITED STATES OF AMERICA,

        Defendant.
_____/

**OPINION AND ORDER (1) DISMISSING CASE AS MOOT, (2) SUSTAINING PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION, (3) ADOPTING REPORT AND RECOMMENDATION IN PART, AND (4) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

In 2019, the Internal Revenue Service (IRS) penalized Plaintiffs for failing to disclose certain employee-benefit-plan information in their tax returns, which violated IRS Notice 2007-83. After unsuccessfully attempting to settle their tax-penalty dispute, Plaintiffs paid the penalties and then sued the Government to recover the payments. Plaintiffs argued that Congress did not adequately exempt Notice 2007-83 from the Administrative Procedures Act's (APA) notice-and-comment procedures, thus asking this Court to vacate or otherwise set aside Notice 2007-83. At summary judgment, this Court concluded that Congress exempted Notice 2007-83 from APA's ordinary procedures when it enacted 26 U.S.C. § 6707A.

But later, the Sixth Circuit held that Congress's effort to exempt the Notice 2007-83 from the APA's procedures was inadequate. And the Sixth Circuit concluded that because Congress failed to adequately explain its Notice 2007-83 exemption, the notice must be "set aside." Following the Sixth Circuit's decision and mandate, this Court "set aside" Notice 2007-83 under 5 U.S.C. § 706(2)(D) and entered Judgment for Plaintiffs on January 18, 2023. The Government

appealed. On appeal, the Sixth Circuit vacated this Court's set-aside order. The Sixth Circuit declared that the case was now moot because the Government had refunded the imposed penalties and "agreed" not to enforce Notice 2007-83 against Plaintiffs and—apparently—anyone in the Sixth Circuit. So even though the Sixth Circuit had previously instructed that Notice 2007-83 must be set aside, it remanded the case with new instructions "to dismiss [the case] as moot." This Court will do so.

Also before this Court are Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation (R&R) recommending this Court deny Plaintiffs' Motion for Attorneys' Fees. Because the R&R misconstrued the relevant attorneys' fees statute, Plaintiffs' Objection will be sustained, the R&R will be adopted in part and overruled in part, and Plaintiffs' Motion for Attorneys' Fees will be granted.

I.

A.

The IRS enjoys an "arsenal of tools for identifying tax avoidance schemes." *Mann Constr. v. United States*, 27 F.4th 1138, 1141 (6th Cir. 2022). One of these tools is 26 U.S.C. § 6707A—a law permitting the IRS to impose monetary penalties and criminal sanctions on people who fail to provide information about "reportable" or "listed" transactions in their tax return. A "reportable transaction" is "any transaction . . . having a potential for tax avoidance or evasion." *Id.* at § 6707A(c)(1). A "listed transaction" is more narrow: it is one that "is the same as, or substantially similar to, a transaction" that the IRS deems a "tax avoidance transaction." *Id.* at § 6707A(c)(2).

In 2007, the IRS issued Notice 2007-83, deeming certain employee-benefit plans "listed transactions." Under Notice 2007-83, the IRS declared that employee-benefit plans featuring "cash-value life insurance policies," which "combine[] life insurance coverage with a cash-value

investment account[s]," warranted listed transaction status. *Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits: Notice 2007-83*, INTERNAL REVENUE SERV., https://www.irs.gov/pub/irs-drop/n-07-83.pdf (last visited Oct. 17, 2024) [https://perma.cc/7MW5-LNYZ]. In the IRS's view, cash-value life insurance policies invited tax avoidance, "allowing small business owners to receive cash and other property from the business on a tax-favored basis." *Mann Constr.*, 27 F.4th at 1142.

Despite Notice 2007-83, Plaintiff Mann Construction—owned by Plaintiffs Brook Wood and Lee Coughlin—crafted a cash-value life insurance plan in 2013. *Id.* From 2013 to 2017, Mann Construction maintained this program. *Id.* Neither Mann Construction nor Wood or Coughlin reported the cash-value program to the IRS as a listed transaction. *Id.*

Because Plaintiffs did not report the plan, they had a run-in with the IRS and Notice 2007-83 in 2019. *Id.* Applying Notice 2007-83, the IRS concluded that Mann Construction's plan was a listed transaction. *Id.* This listed transaction status, coupled with Plaintiffs' nondisclosure, allowed the IRS to penalize Plaintiffs. *Id.* The IRS did so: it fined Mann Construction $10,000, Wood $8,642, and Coughlin $7,794. ECF No. 1 at PageID.2–3. In turn, Plaintiffs paid the fines and "sought administrative refunds, claiming the IRS lacked authority to penalize them." *Mann Constr.*, 27 F.4th at 1142. During an administrative back-and-forth with the IRS, Plaintiffs—adamant that they owed nothing—offered to settle the dispute for $1. *See* ECF Nos. 52 at PageID.645; 57 at PageID.802. The IRS let the offer lapse, effectively rejecting it. ECF No. 52 at PageID.658. And "[w]hen the administrative process for challenging the penalties" later "left the taxpayers empty-handed, they turned to federal court." *Mann Constr.*, 27 F.4th at 1142.

**B.**

In 2020, Plaintiffs sued the Government under the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et seq.*, and 26 U.S.C. § 6707A, challenging the validity of Notice 2007-83 and the penalties the IRS levied. ECF No. 1. These IRS actions, Plaintiffs claimed, were unlawful for four reasons: (1) the IRS failed to comply with notice-and-comment requirements when it promulgated Notice 2007-83; (2) Congress did not authorize the IRS to issue Notice 2007-83; (3) Notice 2007-83 was arbitrary and capricious; and (4) Mann Construction's plan was not a listed transaction under § 6707A. ECF No. 1 at PageID.23–29.

Soon after, the Government moved to dismiss Plaintiffs' Complaint. ECF No. 15. This Court dismissed all Plaintiffs' claims except their notice-and-comment claim. ECF No. 22. In so doing, this Court held that Plaintiffs had "plausibly alleged that [Notice 2007-83 was] a legislative rule" that required notice and comment. ECF No. 22 at PageID.255.

With the case narrowed to the notice-and-comment claim, the Government moved for summary judgment. ECF No. 38. This Court granted the Government's summary judgment motion, holding that Congress authorized the IRS to issue Notice 2007-83 without notice and comment. *Mann Constr. v. United States*, 539 F. Supp. 3d 745 (E.D. Mich. 2021). This Court determined that "the text, structure, and history of § 6707A and related Treasury regulations express[ed Congress's] clear intent that the APA notice and comment procedures need not be followed." *Id.* at 760 (noting Congress passed § 6707A after "IRS officials came and sat before Congress and asked for penalties to enforce their new reporting regime").

Plaintiffs appealed. The Sixth Circuit reversed. *Mann Constr.*, 27 F.4th at 1144–48. The Sixth Circuit reasoned that because § 6707A "addresses a 'which transactions' question, not a 'what process' question," Congress did not adequately exclude Notice 2007-83 from the APA's

notice-and-comment requirements. *Id.* at 1146–47. Thus, the Sixth Circuit held that Notice 2007-83 *must* be set aside under the APA, remanding the case for this Court to do so. *See Mann Constr. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022).

### C.

#### 1.

Three months later, Plaintiffs moved to enforce the Sixth Circuit's mandate. ECF No. 53. Plaintiffs sought an order that (1) vacated and set aside Notice 2007-83 given the Sixth Circuit's holding; (2) required the Government to refund Plaintiffs the penalties that they paid; and (3) required the Government to rescind any remaining penalties imposed on Plaintiffs. *Id.* at PageID.757–58. But then, the Government notified this Court that "all penalties and interest at issue in this action have been refunded or abated, as applicable." ECF No. 67 at PageID.873. Thus, the only outstanding issue was whether this Court was required to set aside Notice 2007-83 under the APA. *See Mann Constr., Inc. v. United States*, 651 F. Supp. 3d 871, 874 (E.D. Mich.), *vacated and remanded*, 86 F.4th 1159 (6th Cir. 2023).

The Government opposed this relief. *See* ECF No. 59. The Government argued that this Court's setting aside Notice 2007-83 would effectively impose an impermissible nationwide injunction, and, in any event, the Government had already remedied Plaintiffs' injuries when it refunded Plaintiffs and "promised" not to enforce Notice 2007-83 in the Sixth Circuit. *See id.* But this Court determined that the APA required reviewing courts to "set aside" or to vacate any unlawful regulation, regardless of whether the individual plaintiff's harms were remedied. *See Mann Constr., Inc. v. United States*, 651 F. Supp. 3d 871, 874 (E.D. Mich.), *vacated and remanded*, 86 F.4th 1159 (6th Cir. 2023). This Court focused on the text and history of the APA,

distinguishing an APA injunction from nationwide injunctions, noting that cases brought under the APA require district courts to determine whether the rule *itself* is lawful:

> The APA *requires* reviewing courts to "set aside" or to vacate any unlawful regulation. 5 U.S.C. § 706(2); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). This vacatur requirement exists regardless of whether Plaintiffs seek it. Thus, even if Plaintiffs "forfeited" their claim for declaratory relief, this Court may not ignore the edict of Congress: that is, that courts "shall" set aside any rule passed without notice and comment that Congress did not expressly exclude from the notice-and-comment requirements. 5 U.S.C. § 706(2).
>
> ***
>
> [D]espite *appearing* to have the same effect, APA vacatur is not a nationwide injunction, and there is no binding precedent in *any* circuit holding that the vacatur of administrative action under the APA applies to *only* the parties.
>
> Although injunctions are rooted in equity, APA vacaturs are actions at law. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("Our cases have long recognized the distinction between an action at law for damages . . . and an equitable action for specific relief . . . ." (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949))); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief . . . depend[s] on traditional principles of equity jurisdiction." (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2941, p. 31 (2d ed. 1995))); 1 WILLIAM BLACKSTONE COMMENTARIES ON THE LAWS OF ENGLAND 62 (4th ed. 1770) ("[L]aw, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion."); Preston, *supra*, at 38 ("It is not within the province of the federal judiciary to avoid such questions. Empowered by Article III, Congress explicitly assigned that duty to the federal courts through the APA." (internal footnote omitted)); *Nieves v. McHugh*, 111 F. Supp. 3d 667, 679–80 (E.D.N.C. 2015) ("Thus, in an APA claim, 'summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" (citations omitted)).

*Id.* at 875–76 (emphasis in original).

And again, the Sixth Circuit had already declared that Notice 2007-83 "must" be "set aside." *Id.* So, respecting the appellate court's authority, this Court did as the Sixth Circuit and the APA instructed and "set aside" Notice 2007-83. *Id.*

**2.**

The Government appealed. The Sixth Circuit vacated this Court's set-aside order, reasoning that the "dispute [was] moot." *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1161 (6th Cir. 2023). Even though this Court expressly stated that "APA vacatur is not a nationwide injunction," the Sixth Circuit stated that "the district court on remand proceeded to invalidate the regulation nationwide." *Id.* And even though the APA provides that "reviewing court[s] shall . . . set aside" unlawful agency actions, 5 U.S.C. § 706(2), the Sixth Circuit found that because the Government had refunded the penalties and "agreed" "not to apply [Notice 2007-83] to these taxpayers or anyone else within the Sixth Circuit," the case was moot and should be dismissed. *Mann Constr.*, 86 F.4th at 1162; *see also* Kellie Mejdrich, *6th Circ. Decision Sidesteps Broader Fight Over IRS Notices*, Law360 (Nov. 22, 2023), https://www.law360.com/articles/1769156/6th-circ-decision-sidesteps-broader-fight-over-irs-notices [https://perma.cc/F8H4-GGKU].

This Court must again follow the Sixth Circuit's instructions: the case in which Notice 2007-83 was vacated "is now moot" because of the "agreement" between the Government and the Sixth Circuit, providing that the Government will not enforce the notice in the Sixth Circuit. *Mann Constr.,* 86 F.4th at 1164.

**D.**

Onto attorneys' fees.[1] After the Sixth Circuit determined that the Government did not satisfy the APA's notice-and-comment procedures, Plaintiffs moved for $220,482.50 in attorneys'

---

[1] Even though this Court will dismiss the case as moot, it still has jurisdiction to award attorneys' fees. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) ("[T]he fact that these suits became moot does not preclude recovery of attorneys' fees."); *see also Dahlem v. Bd. of Educ. of Denver Pub. Sch.*, 901 F.2d 1508, 1511 (10th Cir. 1990) (collecting cases) ("While a claim of entitlement to attorney's fees does not preserve a moot cause of action . . . the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred.").

fees and $1,355.90 in costs under 26 U.S.C. § 7430. ECF No. 52. This Court referred the Motion to Magistrate Judge Patricia T. Morris for a Report and Recommendation (R&R), ECF No. 74, and Judge Morris issued the R&R on June 14, 2023, ECF No. 82.

The R&R recommended that this Court deny Plaintiffs' Motion. ECF No. 82. The R&R first concluded that Plaintiffs "substantially prevailed on both the amount in controversy and the most significant set of issues." *Id.* at PageID.1160. The R&R also observed that Plaintiffs "ultimately owed less money" ($0) than "they offered to pay" to settle the tax dispute ($1). *Id.* at PageID.1172. But the R&R found that the "government's position in this matter was substantially justified," and Plaintiffs "did not tender a valid qualified [settlement] offer," reading into Congress's statute a "reasonableness requirement" and finding that Plaintiffs' $1 offer was insufficient. *Id.* at PageID.1160–80. Because Plaintiffs did not tender a qualified offer, the R&R explained, they were not "prevailing parties," barring them from collecting attorneys' fees. *Id.* at PageID.1160. Plaintiffs objected to the R&R, arguing that it erred in concluding that Plaintiffs did not make a qualified offer under § 7430 as a matter of law. ECF No. 83 at PageID.1186.

## II.

A party may object to and seek review of an R&R. *See* FED. R. CIV. P. 72(b)(2). If a party properly objects, then "[t]he district judge must determine de novo" the part of the R&R to which the objection pertains. FED. R. CIV. P. 72(b)(3). A party must object timely and with specificity—failure to do so waives any right of appeal. *Thomas v. Arn*, 474 U.S. 140, 151, 155 (1985) (citation omitted); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Likewise, parties may not "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge issues the R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence the parties presented to the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court can accept, reject, or modify the R&R. FED. R. CIV. P. 72(b)(3).

### III.

Since the 18th Century, the "American rule" for attorneys' fees has "dictate[d] that 'absent [a] statute or enforceable contract [providing otherwise], litigants pay their own.'" *State v. United States*, 986 F.3d 618, 631 (6th Cir. 2021) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). A tax-litigation-fee-shifting statute, 26 U.S.C. § 7430, provides otherwise. Indeed, under that statute, a court may award attorneys' fees and costs "paid or incurred" in specified tax litigation to parties who "substantially prevailed" on the case's "most significant issue" or "amount in controversy" if the Government's position was not "substantially justified." 26 U.S.C. § 7430(a)–(c); *Ekman v. Comm'r*, 184 F.3d 522, 526 (6th Cir. 1999). But there is an exception—the qualified offer rule. *See* 26 U.S.C. § 7430(c)(4)(E)(i). Under this rule, even if the Government's position was "substantially justified," a court may still award attorneys' fees to a prevailing litigant when (1) the litigant made a "qualified offer" to settle the case, and (2) the "judgment in the proceeding is equal to or less than the" taxpayer's liability had the Government accepted the offer. *Id.*

Here, only two issues remain because the Parties did not object to the R&R's findings that Plaintiffs substantially prevailed, that the Government's position was substantially justified, and that the Judgment ($0) was less than Plaintiffs' liability under their settlement offer ($1). The first issue is raised in Plaintiffs' Objection to the R&R: whether Plaintiffs made a "qualified" settlement

offer under § 7430. The second issue is raised in the Government's Response: whether Plaintiffs "paid or incurred" the fees they seek.[2] Plaintiffs prevail on both issues.

### A.

### 1.

Plaintiffs' $1 offer was a "qualified offer" within § 7430's meaning. When interpreting statutes, courts must assume "that Congress says what it means and means what it says." *United States v. Jackson*, 995 F.3d 522, 523 (6th Cir. 2021). So a law's text reigns supreme, and "[t]hat is why statutory interpretation begins with the text." *Id.* (citing *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020)). Thus, if the text defines a term, courts must heed that definition. *Van Buren v. United States*, 593 U.S. 374, 387–88 (2021) (citing A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 73 (2012)). And here, § 7430 defines "qualified offer":

> The term "qualified offer" means a written offer [that]--
>
> (A) is made by the taxpayer to the United States during the qualified offer period;
>
> (B) specifies the offered amount of the taxpayer's liability (determined without regard to interest);
>
> (C) is designated at the time it is made as a qualified offer for purposes of this section; and
>
> (D) remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made.

---

[2] Plaintiffs argue that the Government waived this second issue because it did not object to the R&R. ECF No. 85 at PageID.1212. To that end, Plaintiffs contend that because the R&R, in passing, stated that "[Plaintiffs] move to recover the expenses they *incurred* in pursuit of their refund under 26 U.S.C. § 7430," ECF No. 82 at PageID.1156–57 (emphasis added), it determined that Plaintiffs incurred or paid the expenses they seek in their Motion. ECF No. 85 at PageID.1212. And because the R&R made this determination and the Government did not object to it, Plaintiffs argue, the Government waived the issue. *Id.* True, that is one way to think about this fleeting reference in the R&R, but this Court disagrees that the R&R reached the issue. Rather, as this Court reads the R&R, it implicitly assumed that Plaintiffs incurred the expenses because it recommended denying attorneys' fees on other grounds. So while the Plaintiffs ultimately prevail on the issue, *see infra* Section III.B., this Court will address the Government's argument.

26 U.S.C. § 7430(g).

Plaintiffs' $1 settlement offer satisfied this definition, rendering it a "qualified offer." Plaintiffs offered to settle in writing. *See* ECF No. 52 at PageID.658. They offered to settle during the relevant offer period. *See id.* They specified the amount of their purported liability. *See id.* They designated that they intended the offer to be a qualified one. *See id.* And they kept the offer open for the required period under § 7430. *See id.* The statute's definition requires nothing else for qualified offers—not a minimum amount nor a good-faith reasonableness requirement—full stop, end of inquiry. *See BASR P'ship v. United States*, 130 Fed. Cl. 286, 305 (2017), *aff'd*, 915 F.3d 771 (Fed. Cir. 2019) (awarding attorneys' fees under § 7430 when plaintiff made $1 qualified offer and had $0 of tax liability because "$1 is more than $0" and the statute's definition of qualified offer "does not require any minimum amount" or good-faith reasonableness requirement); *see also Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020) ("When a statute includes an explicit definition, [courts] must follow that definition.").

**2.**

But the Government and R&R persist. Notably, neither the Government nor the R&R dispute that the Plaintiffs' $1 offer satisfied the textual definition of a qualified offer. ECF No. 82 at PageID.1172. Rather, both bemoan the consequences flowing from the statute as written. *See id.* at PageID.1172–79; *see also* ECF No. 84 at PageID.1204–10. For its part, the R&R would have this Court "read a reasonableness requirement into the statute" that requires a qualified offer to be "reasonably calculated to justify serious consideration by the IRS" to avoid tax-litigants gaming the qualified offer rule with nominal offers like Plaintiffs' $1 offer. ECF No. 82 at PageID.1178–79 (cleaned up). Likewise, the Government argues that this Court should not reward a $1 "sham offer." ECF No. 84 at PageID.1209–10; *see also id.* at PageID.1204 ("Because Plaintiffs'

purported offer was a sham intended to manipulate the qualified offer rules rather than a good-faith attempt to resolve their tax liability, the Court should deny their request, as recommended by the [R&R].").

Both the Government and the R&R summon *Delta Air Lines v. August*, 450 U.S. 346 (1981) for support. ECF Nos. 82 at PageID.1174–77; 84 at PageID.1208–10. There, the Supreme Court discussed nominal offers for offers of judgment under Civil Rule 68.[3] *Delta Air Lines,* 450 U.S. at 353–56. The lower courts in the case read into Civil Rule 68 a rule that parties must make reasonable, good faith offers of judgment to activate Civil Rule 68. *Id.* at 349–50. In dicta, the Supreme Court expressed concern that "nominal offers" and "sham offers" are "hardly fair" to trigger Civil Rule 68.[4] *Id.* at 355–56. But it avoided the issue and concluded that "the plain language of the Rule makes it unnecessary to read a reasonableness requirement into the Rule." *Id.* at 355. That is because, in the Court's view, Civil Rule 68's plain text applied only to a limited class of offers of judgment, draining the power of "sham offers." *Id.*

Spotting similarities between § 7430's qualified offer rule and Civil Rule 68, the Government and R&R argue that this *Delta Air Lines* dicta warrants augmenting § 7430's

---

[3] Civil Rule 68's offer of judgment rule operates largely like § 7430's qualified offer rule. *Compare* FED. R. CIV. P. 68 *with* 26 U.S.C. § 7430(c)(4)(E)(i). Indeed, under Civil Rule 68, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms," and when the opposing party rejects that offer, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." FED. R. CIV. P. 68.

[4] Given that these concerns appeared in dicta, they are no more binding than the dissent in that case. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) (citing *Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)) ("[O]nly holdings are binding, not dicta."). And the dissent noted that given "[the majority's] fondness for the 'plain meaning' canon," the dissent assumed the "[majority] would agree" if it reached the issue that "the best and shortest response to the Court of Appeals' suggestion that a Rule 68 offer must be 'reasonable' and made in 'good faith' is that Rule 68 simply does not incorporate such requirement." *Delta Air Lines*, 450 U.S. at 369 (Rehnquist, J., dissenting).

definition of "qualified offer" with reasonableness and good faith requirements. *See* ECF Nos. 82 at PageID.1177–79; 84 at PageID.1209–10. The Government contends that the Supreme Court's concerns about sham offers in *Delta Air Lines* apply equally to § 7430 as written: "Rewarding $1 sham offers provides an incentive for *every* taxpayer to make a $1 offer under Section 7430 as soon as any audit or tax litigation begins," thus "short-circuiting" the statute. ECF No. 84 at PageID.1209–10 (emphasis added). Likewise, the R&R noted that if a court does not read a reasonableness requirement into the statute and follows only § 7430's plain text, "it would be in the best interest of *every* taxpayer to immediately make a" nominal qualified offer "as soon as [the taxpayer] receives [a] letter of deficiency." ECF No. 82 at PageID.1177 (emphasis added). According to the R&R, this practice, against the concerns expressed in *Delta Air Lines*, allows all taxpayers to "recoup [their tax-litigation] expenses if [they] prevail, regardless of whether the [IRS's] position" was substantially justified." *Id.* As a result, the R&R reasonably express concern that taxpayers "can sidestep the substantial justification rule by making sham offers," rendering the substantial justification rule "inoperative." *Id.* at PageID.1177–79.

In the end, these perceived consequences do not warrant disregarding the text Congress chose in enacting § 7430 and reading a reasonableness or good-faith requirement into the statute.[5] *See Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (rejecting "raw consequentialist

---

[5] To be fair, the R&R's concern about rendering the "substantial justification rule" ineffective by allowing nominal qualified offers is not the same "raw consequentialis[m]," *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021), the R&R and the Government advance elsewhere. Rather, this concern implicates a textual consequence—statutory ineffectiveness—which is "relevant to a sound textual decision" rather than a raw policy consequence (*i.e.*, "Will this decision produce bad policy results?"). *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 352–53 (2012) (explaining the distinction between textual consequences and policy consequences). But, as explained, nominal qualified offers do not render the substantial justification rule altogether inoperative—just inapplicable when the statutory requirements for a qualified offer are met, which is the entire point of the qualified offer exception and exceptions generally. *See* 26 U.S.C. § 7430(a)–(c).

calculation[s]" when interpreting a statute). First, the Government and R&R overstate the risk nominal offers pose in tax litigation: they do not risk incentivizing "every" taxpayer to make a $1 offer, ECF No. 84 at PageID.1209–10; and they do not risk incentivizing "every" taxpayer to sidestep "the substantial justification rule," rendering it inoperative, ECF No. 82 at PageID.1177–79. Indeed, for the qualified offer rule to apply, a taxpayer must earn a judgment "equal to or less than the" taxpayer's liability had the Government accepted the offer. 26 U.S.C. § 7430(c)(4)(E)(i). As a result, if taxpayers want to recover attorneys' fees, the statutory incentive is to make a realistic settlement offer *equal to or greater than* their anticipated tax liability. In this way, rational taxpayers seeking attorneys' fees will only make nominal settlement offers when they anticipate securing a judgment that imposes nominal tax liability. So where is the ruinous risk of sham offers in that framework? Simply put, it does not exist under the statute.[6] Thus, even if the sham-offer concerns expressed in *Delta Air Lines*'s dicta were valid under Civil Rule 68, those concerns do not apply to § 7430's qualified offer scheme.

Second, while the Government and R&R use *Delta Air Lines* to support their arguments—*Delta Air Lines* undermines them. The Supreme Court decided *Delta Air Lines* in 1981. Yet years later, in the Internal Revenue Service Restructuring and Reform Act of 1998, Congress added the qualified offer rule to § 7430 without a reasonableness requirement, legislating against *Delta Air Lines'*s sham-offer concerns. *See* Pub. L. No. 105-206, §§ 3101(e)(1), (2). This statutory history[7]

---

[6] This incentive framework probably explains why this Court, despite its best efforts, found only one other case featuring a $1 settlement offer in the § 7430 context, *BASR P'ship v. United States*, 130 Fed. Cl. 286, 305 (2017), *aff'd*, 915 F.3d 771 (Fed. Cir. 2019), which ultimately rejected the statutory arguments the Government and R&R make here.

[7] Statutory history is "the record of enacted changes Congress made to the relevant statutory text over time, the sort of textual evidence everyone agrees can sometimes shed light on meaning." *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (cleaned up) ("To be clear, the statutory history I have in mind here isn't the sort of unenacted legislative history that often is neither truly legislative (having failed to survive bicameralism and presentment) nor truly

suggests that Congress's omission of a reasonableness requirement from § 7430's definition of a qualified offer was intentional. After all, courts must "'assume' Congress was "'aware of relevant judicial precedent'" when forging a statute. *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 2506 (2023) (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233 (2020)).

And third, even if this Court agreed with the Government and R&R that a reasonableness requirement would better arrange § 7430's incentives, this Court cannot rewrite the statute and deal the Government a "get-out-of-text-free" card, *W. Virginia v. EPA*, 597 U.S. 697, 779 (2022) (Kagan, J., dissenting). *In re Davis*, 960 F.3d 346, 357 (6th Cir. 2020) ("Whatever the wisdom of [a statute's] policies, [courts may] not substitute [their] "drafting pen" for Congress's."). Indeed, "no amount of policy-talk can overcome a plain statutory command" and justify securing every potential path for procedural mischief in a statute when Congress did not. *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021).

One more point on this issue: The Government seemingly recognizes that § 7430's qualified offer definition torpedoes its position. *See* ECF No. 84 at PageID.1204 n.1. The Government therefore invites this Court to adopt the R&R's reasoning without reading into the statute a reasonableness requirement but instead denying attorneys' fees using this Court's discretion under the statute. *Id.* The invitation will be declined. For starters, the Government provides no evidence of bad faith other than that Plaintiffs' offer was $1—which, simply on its face, is insufficient to impute bad-faith conduct. *See BASR P'ship v. United States*, 915 F.3d 771, 783 (Fed. Cir. 2019) (holding that a district court's award of attorneys' fees to plaintiff for a $1

---

historical (consisting of advocacy aimed at winning in future litigation what couldn't be won in past statutes)."); *see also Snyder v. United States*, 144 S. Ct. 1947, 1955 (2024) (using a statute's enacted amendment history as a permissible indicator of Congress's policy decisions).

qualified offer was not an abuse of discretion when the offer met all statutory requirements under § 7430). Further, as the R&R recognized, the Plaintiffs made the $1 offer because—as the $0 liability judgment reinforces—they believed they had no tax liability. See ECF Nos. 52 at PageID.645; 57 at PageID.802; 82 at PageID.1173. And at bottom, accepting the Government's invitation, in this case, would require this Court to speak with a forked tongue: it would at once admonish potential statutory gamesmanship of the qualified offer rule while expressly using its discretion to circumvent § 7430's statutory definition of a qualified offer.

In sum, the Plaintiff's $1 settlement offer was a valid qualified offer under § 7430. The statute defines a qualified offer as (1) a written offer, (2) made during the "qualified offer period," (3) designated as a "qualified offer," (4) specifying the amount of the taxpayer's purported liability, and (5) remaining open until the date of trial, the rejection date, or until 90 days have elapsed, whichever occurs first. 26 U.S.C. § 7430(g). A taxpayer's settlement offer must satisfy those elements—nothing more, nothing less. Because Plaintiffs' $1 settlement offer meets that definition's elements—rendering it a qualified offer under § 7430—the only remaining issue is whether Plaintiffs "paid or incurred" the expenses they seek.

**B.**

And Plaintiffs incurred the fees and costs they seek. The Government argues that Plaintiffs provide no evidence they "incurred" their requested expenses. ECF No. 84 at PageID.1203–04. To recover attorneys' fees "under § 7430, a prevailing party must actually incur the costs." *Est. of Palumbo v. United States*, 675 F.3d 234, 239 (3d Cir. 2012). Litigants incur attorneys' fees under § 7430 when they have "a legal obligation to pay them." *Id.* at 239–40 (cleaned up); *see also Morrison v. Comm'r*, 565 F.3d 658, 662 (9th Cir. 2009).

Here, Plaintiffs provide ample evidence that they incurred the requested fees and costs. Plaintiffs provide twenty-one billing invoices from the relevant billing period, totaling $226,182.90. ECF No. 52-5 at PageID.677–755. They also provide a sworn statement verifying the accuracy and validity of those invoices. *Id.* at PageID.675–76. And they provide an engagement letter from their attorneys showing that they have a legal obligation to pay these fees. ECF No. 57-1.

Still, the Government speculates that Plaintiffs might have had a third party pay their fees and costs, negating a finding that they incurred these expenses. ECF No. 84 at PageID.1202. But this argument lacks merit. Indeed, even if a third party fronted Plaintiffs' fees, that does not prevent Plaintiffs from recovering them under § 7430. *Morrison*, 565 F.3d at 662 ("That the debt is to a third party who has fronted the fees rather than to the attorneys who provided the services fully comports with the statutory language [under § 7430], which does not specify to whom the debt for reasonable fees must be paid or owed."). Accordingly, because the record does not support the Government's assertion that a third party may have paid Plaintiffs' fees, and Plaintiffs' engagement letter places the legal obligation to pay the fees on them, this Court is satisfied that Plaintiffs "incurred" the fees they seek in their motion.[8]

In short, because Plaintiffs incurred the $220,482.50 in attorneys' fees and $1,355.90 in costs that they request and meet all statutory requirements to recover these expenses under § 7430, Plaintiffs' Motion for Attorneys' Fees, ECF No. 52, will be granted. Accordingly, the R&R, ECF No. 82, will be (1) adopted in part to the extent it concludes that the Government's position was

---

[8] Of course, if a third party *did* pay some or all Plaintiffs' fees, *Morrison* requires that the Plaintiffs use their attorneys' fees award to refund any fronted fees. *Id.* at 662.

substantially justified and the Plaintiffs substantially prevailed, and (2) overruled to the extent it concludes that Plaintiffs did not make a qualified offer and are thus not entitled to attorneys' fees.

**IV.**

Accordingly, it is **ORDERED** that the above-captioned case is **DISMISSED AS MOOT**.

Further, it is **ORDERED** that Plaintiff's Objection, ECF No. 83, is **SUSTAINED**.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 82, is **ADOPTED IN PART**, to the extent it concludes that the Government's position was substantially justified and Plaintiffs substantially prevailed.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 82, is **OVERRULED IN PART**, to the extent it concludes that Plaintiffs did not make a qualified offer and are thus not entitled to attorneys' fees.

Further, it is **ORDERED** that Plaintiffs' Motion for Attorneys' Fees, ECF No. 52, is **GRANTED**.

Further, it is **ORDERED** that Plaintiffs are **AWARDED** $220,482.50 in attorneys' fees and $1,355.90 in costs under 26 U.S.C. § 7430.

**This is a final order and closes the above-captioned case.**

Dated: November 1, 2024								s/Thomas L. Ludington
												THOMAS L. LUDINGTON
												United States District Judge